SHEPPARD MULLIN RICHTER & HAMPTON LLP
JAY T. RAMSEY Cal. Bar. No. 273160
1910 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:  310.228.3701
Email:        jramsey@sheppardmullin.com

KLEIN, MOYNIHAN, TURKO LLP
NEIL ASNEN (Pro Hac Application Forthcoming)
450 7th Ave.
New York, New York 10123
Telephone:  212.246.0900
Email:        nasnen@kleinmoynihan.com

*Attorneys for Defendant What If Holdings,
LLC d/b/a C4R Media Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHAT IF HOLDINGS, LLC d/b/a C4R MEDIA CORP., and ACTIVEPROSPECT, INC.<br><br>Defendants. | Case No. 3:22-cv-3780-WHA<br><br>*Assigned to the Hon. William Alsup*<br><br>**DEFENDANT WHAT IF HOLDINGS, LLC d/b/a C4R MEDIA CORP.'S MOTION TO COMPEL ARBITRATION AND/OR DISMISS**<br><br>Date:         December 15, 2022<br>Time:         8:00 a.m.<br>Courtroom:  12, 19th Floor<br><br>Complaint Filed:     June 27, 2022<br>Trial Date:            None Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................... 1

ISSUES TO BE DECIDED ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.     INTRODUCTION ............................................................................ 1

II.    LEGAL STANDARD ....................................................................... 3

III.   PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY
       ARBITRATION .............................................................................. 4

       A.     The Arbitrator, Not The Court, Should Determine Arbitrability ............ 5

       B.     Even If The Court Reaches Questions Of Arbitrability, It Must
              Compel Arbitration .................................................................... 6

              1.     There is a Valid Agreement to Arbitrate ............................... 7

              2.     Plaintiff's claims are subject to the arbitration provision ............. 9

              3.     The arbitration clause is presumed valid and enforceable ......... 10

IV.    THE COMPLAINT MUST BE DISMISSED AS A MATTER OF
       LAW ........................................................................................... 12

       A.     Plaintiff Consented To The Conduct At Issue ................................. 12

       B.     The Complaint Does Not State A Valid CIPA Claim ......................... 13

       C.     The Complaint Fails To State A Claim For Violation Of The
              California Constitution's Right To Privacy .................................... 18

       D.     Plaintiff Has No Standing For Her Unfair Competition Law
              Claim ..................................................................................... 20

V.     CONCLUSION .............................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**<u>Federal Cases</u>**

*Allied-Bruce Terminix Cos. V. Dobson*
    513 U.S. 265 (1995) ................................................................7

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................4

*Beattie v. Credit One Bank*
    2016 U.S. Dist. LEXIS 104456 (N.D.N.Y. Aug. 9, 2016)................................11

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................4

*Birdsong v. Apple, Inc.*
    590 F.3d 955 (9th Cir. 2009) ................................................20

*Cairo, Inc. v. Crossmedia Servs., Inc.*
    2005 U.S. Dist. ................................................................9

*Chavarria v. Ralphs Grocery Co.*
    733 F.3d 916 (9th Cir. 2013) ................................................10

*Clark v. Countrywide Home Loans, Inc.*
    732 F.Supp.2d 1038 (E.D. Cal. 2010) ................................20

*Cline v. Reetz-Laiolo*
    329 F.Supp.3d 1000 (N.D. Cal. 2018)................................15

*Cox v. Ocean View Hotel Corp.*
    533 F.3d 1114 (9th Cir. 2008) ................................................6

*Crawford v. Beachbody, LLC*
    2014 U.S. Dist. LEXIS 156658 (S.D. Cal. Nov. 5. 2014)................................9

*Dean Witter Reynolds, Inc. v. Byrd*
    470 U.S. 213 (1985) ................................................................3

*Ehret v. Uber Tech., Inc.*
    68 F.Supp.3d 1121................................................................20

*In re Facebook Privacy Litig.*
  791 F. Supp. 2d 705 (N.D. Cal. 2011), aff'd 572 F. App'x 494 (9th Cir. 2014) ................................................................................................ 20

*In re Facebook, Inc. Internet Tracking Litig.*
  956 F.3d 589 (9th Cir. 2020) ............................................... 17, 18, 19

*Fteja v. Facebook, Inc.*
  841 F.Supp. 2d 829 (S.D.N.Y. 2012) ................................................ 9

*In re Gilead Scis. Sec. Litig.*
  536 F.3d 1049 (9th Cir. 2008) ........................................................... 4

*In re Google Inc.*
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................................ 15

*In re Google Location Hist. Litig.*
  428 F.Supp.3d 185 (N.D. Cal. 2019) ............................................... 19

*In Re Google Private Litigation*
  457 F.Supp.3d 797 (N.D. Cal. 2020) .......................................... 15, 16

*Graham v. Noom, Inc.*
  53 F.Supp.3d 823 (2021) ......................................... 13, 16, 17

*Graham v. Noom, Inc.*
  533 F.Supp.3d 823 (N.D. Cal. 2021) ............................................... 16

*Howsam v. Dean Witter Reynolds, Inc.*
  537 U.S. 79 (2002) ............................................................................. 5

*In re iPhone Application Litig.*
  844 F.Supp.2d 1040 (N.D. Cal. 2012) ............................................ 18

*Javier v. Assurance IQ, LLC*
  2022 WL 1744107 (9th Cir. May 31, 2022) .................................... 13

*Kai Peng v. Uber Techs.*
  237 F. Supp. 3d 36 (E.D.N.Y. 2017) ............................................... 11

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*
  174 F.3d 907 (1999) ........................................................................... 3

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
  519 F.3d 1025 (9th Cir. 2008) ........................................................... 4

*Mastel v. Miniclip SA*
    549 F.Supp.3d 1129 (E.D. Cal. 2021) ...............................................14, 15, 18, 20

*Matera v. Google, Inc.*
    2016 WL 8200619 (N.D. Cal. Aug. 12, 2006) ....................................................15

*Mendiondo v. Centinela Hosp. Med. Ctr.*
    521 F.3d 1097 (9th Cir. 2008) .............................................................................4

*Meyer v. Uber Techs., Inc.*
    868 F.3d 66 (2d Cir. 2017) ...................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ............................................................................................4, 9

*In re Nickelodeon Consumer Priv. Litig.*
    2014 WL 3012873 (D.N.J. July 2, 2014) ............................................................15

*Oracle Am., Inc. v. Myriad Group A.G.*
    724 F.3d 1069 (9th Cir. 2013) .............................................................................5

*Rent-A-Center, W., Inc. v. Jackson*
    130 S.Ct. 2772 (2010) .........................................................................................5

*Revitch v. New Moosejaw, LLC*
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................................................17

*Shearson/Am. Exp., Inc. v. McMahon*
    482 U.S. 220 (1987) ...........................................................................................10

*Starkey v. G Adventures, Inc.*
    796 F.3d 193 (2d Cir. 2015) .................................................................................9

*Swift v. Zynga Game Network, Inc.*
    805 F. Supp. 2d 904 (N.D. Cal. 2011)..................................................................9

*Uptown Drug Co. v. CVS Caremark Corp.*
    926 F.Supp.2d 1172 (N.D. Cal. 2013)................................................................12

*Velez v. Credit One Bank*
    2016 U.S. Dist. LEXIS 8782 (E.D.N.Y. Jan. 25, 2016)....................................11

*Weisbuch v. Cty. Of Los Angeles*
    119 F.3d 778 (9th Cir. 1997) ...............................................................................4

*In re Yahoo Mail Litig.*
  7 F.Supp.3d 1016 (N.D. Cal. 2014)................................................................ 15

*Yoon v. Lululemon USA, Inc.*
  549 F.Supp.3d 1073 (C.D. Cal. 2021) .......................................................... 19

*In re Zynga Privacy Litigation*
  750 F.3d 1098 (9th Cir. 2014) ...................................................................... 15

State Cases

*Archer v. United Rentals, Inc.* (2011)
  195 Cal. App. 4th 807 ................................................................................... 20

*Gillman v. Chase Manhattan Bank*
  534 N.E.2d 824 (N.Y. 1988) ................................................................... 10, 12

*Hill v. Nat'l Collegiate Athletic Ass'n* (1994)
  7 Cal. 4th 1 ................................................................................................... 19

*King v. Fox*
  851 N.E.2d 1184 (N.Y. 2006) ....................................................................... 11

*Rogers v. Ulrich* (1975)
  52 Cal.App.3d 894 ........................................................................................ 14

*Tavernetti v. Superior Court* (1978)
  22 Cal.3d 187 ............................................................................................... 14


**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

47 CFR § 64.1200 ................................................................................................. 2

9 U.S.C. §§ 3, 4 ............................................................................................... 3, 6

15 U.S.C. § 7001(a)(1) ........................................................................................ 6

18 U.S.C. § 2510 ................................................................................................ 15

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 4

1

2

**<u>State: Statutes, Rules, Regulations, Constitutional Provisions</u>**

3

Cal. Bus. & Prof. Code § 17200 *et seq.*......................................................................20

4

Civ. Code § 3515 ......................................................................................12

5

Penal Code § 631(a)..............................................................13, 14, 17

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4877-0705-6179.1
WHAT IF'S MOTION TO COMPEL ARBITRATION AND/OR DISMISS

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, on December 15, 2022, at 8:00 a.m., before the Honorable William Alsup of the United States District Court for the Northern District of California, San Francisco Division, Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant What If Holdings, LLC d/b/a C4R Media Corp. ("WIH"), will, and hereby does, move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and/or 12(b)(6), and Sections 2 and 4 of the Federal Arbitration Act ("FAA") 9 U.S.C. §§ 3, 4, for an order compelling arbitration of the claims alleged by Plaintiff, or in the alternatively dismissing those claims for failure to state a claim.  This Motion is based on this Notice of Motion, the below Memorandum of Points and Authorities, the affidavit of Ben Zitter, the exhibits accompanying that declaration, and the entire record in this action.

## ISSUES TO BE DECIDED

1.      Whether the Court should compel arbitration of Plaintiff's Complaint.

2.      Whether Plaintiff has stated facts sufficient to constitute a cause of action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The Complaint contains an explicit admission that Plaintiff visited claim.foundmoneyguide.com/api/offer (the "Website"), a website owned and operated by C4R Media.  *See Complaint* ¶ 21.  While Plaintiff alleges that a software product offered by ActiveProspect purportedly captured her keystrokes and clicks on the Website, as well as the date and time of her visit, the browser and operating system used during the visit, the geographic location, and the name, address, date of birth, phone number, and act of clicking the "I CONFIRM" and "CLAIM YOUR CASH!" buttons to provide consent to be contacted in accordance with the requirements of the Telephone Consumer Protection Act,   *Id*. ¶¶ 22-27, an

implicit truth of Plaintiff's allegations is that by reaching the part of the Website described in paragraphs 24 through 26 of the Complaint, she necessarily navigated through a page earlier in the Website on which she manifested her assent to the Website Terms and Conditions and Privacy Policy.

By virtue of Plaintiff's assent to the Website Terms and Conditions and Privacy Policy, the following is also true: (1) the parties' expressly agreed that the claims at issue are subject to mandatory arbitration; and (2) Plaintiff provided prior express consent to the exact recording for which she complains.

While the foregoing are sufficient bases for the Court to grant Defendant's Motion, there are myriad additional substantive bases that ultimately must guide the Court to dismiss the Complaint against WIH in its entirety in the event that the Court opts not to compel the matter to arbitration.

First, as indicated above, by agreeing to the Website Privacy Policy, Plaintiff explicitly agreed that "[w]here you provide "prior express consent" within the meaning of the Telephone Consumer Protection Act (47 USC § 227), and its implementing regulations adopted by the Federal Communications Commission (47 CFR § 64.1200) . . . you understand and agree that we may use a third party vendor to record and store your registration and consent for compliance purposes."  Zitter Decl. ¶ 7; Ex. C.  This agreement provides a complete defense to all of Plaintiff's claims.

Moreover, Plaintiff's claims for alleged violation of the California Invasion of Privacy Act ("CIPA") fail for a variety of reasons, including the following: (a) the purported communication allegedly recorded was not transmitted with a telegraph or telephone wire; (b) the information allegedly captured (name, address, IP address, keystrokes, page views, etc.) is record information, not "contents;" and (c) the TrustedForm product is merely an instrument to permit a party to a communication to record its own communication, no different than a tape recorder.

1    Furthermore, Plaintiff's claim that her State constitutional right to privacy is

2  without merit for the following reasons: (a) WIH did not use the information

3  recorded for an improper purpose, but instead used it to maintain compliance with

4  federal telemarketing law (as admitted in paragraph 5 of the Complaint); and (b)

5  Plaintiff has no reasonable privacy interest in the information allegedly recorded.

6    Finally, Plaintiff's claim for alleged violation of California's Unfair

7  Competition Law ("UCL") must be dismissed because the Complaint contains no

8  factual allegations purporting to detail any economic injury that Plaintiff allegedly

9  suffered as a result of the conduct at issue.  Accordingly, she lacks UCL standing, a

10  principle distinct from Article III standing, and cannot assert the claim as a result.

11    For the foregoing reasons, as detailed further below, WIH respectfully

12  requests that the Court grant the Motion and issue an Order: (i) compelling

13  Plaintiff's claims to arbitration; or, alternatively (ii) dismissing the Complaint

14  against WIH in its entirety.

15  **II.    LEGAL STANDARD**

16    The Federal Arbitration Act ("FAA") provides that "upon being satisfied that

17  the making of the agreement for arbitration or the failure to comply therewith is not

18  an issue, the court *shall* make an order directing the parties to proceed with

19  arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4 (emphasis

20  added).  Thus, a court's role under the FAA is limited to determining: (1) whether a

21  valid agreement to arbitrate exists and if it does; (2) whether the agreement

22  encompasses the dispute at issue.  *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,

23  174 F.3d 907, 909 (1999).  If the response is affirmative on both counts, then the

24  FAA requires the court to enforce the arbitration agreement in accordance with its

25  terms.  9 U.S.C. §§ 3, 4; *see also Kiefer* at 909.  The FAA "leaves no place for the

26  exercise of discretion by a district court, but instead mandates that district courts

27  shall direct the parties to proceed to arbitration on issues as to which an arbitration

28  agreement has been signed. *Dean Witter Reynolds, Inc. v. Byr*d, 470 U.S. 213, 218

(1985).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Additionally, WIH moves to dismiss pursuant Fed. R. Civ. P. 12(b)(6). Dismissal thereunder is appropriate where the pleading lacks either a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, in order to survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that end, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, even where facts are acceptable as true, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on [her] . . . claim." *Weisbuch v. Cty. Of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted). Likewise, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III.   PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION

The Court should compel arbitration of this dispute for at least two independent reasons: (1) the arbitrator, not the Court, should determine arbitrability; and (2) even if the Court reaches the questions of arbitrability, it must still compel arbitration.

### A.   <u>The Arbitrator, Not The Court, Should Determine Arbitrability</u>

Federal law permits parties to arbitrate the two threshold questions of arbitrability, namely whether the arbitration agreement is valid and whether its scope covers the claims at issue. *Rent-A-Center, W., Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate to whether their agreement covers a particular controversy."). To do so, the parties must "clearly and unmistakably" express an intent to arbitrate gateway questions of arbitrability in their agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).

Here, the arbitrator, not the Court, should decide whether the parties entered into a valid arbitration agreement and the scope of the agreement because the language of the pertinent arbitration clause is "clear and unmistakable" evidence of the parties' intend to arbitrate threshold questions of arbitrability. This is the case because the parties' incorporation of the AAA's Commercial Arbitration rules into the arbitration clause is clear and unmistakable evidence of their intent to leave threshold arbitrability determinations to the arbitration. Ex. B.

Courts routinely hold that by explicitly incorporating the rules of the AAA into an arbitration agreement, the parties clearly and unmistakably agreed to submit the threshold questions of arbitrability to arbitration. In fact, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). The AAA rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a).

The Terms and Conditions explicitly incorporate the AAA's arbitration rules in the arbitration agreement. Specifically, the arbitration provision provides, *inter*

*alia*, as follows: "Should a dispute arise concerning the Website, Promotions, Content, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties in new York, New York, in accordance with the then-current Commercial Arbitration rules of the American Arbitration Association." Ex. B. As such, the issue of whether a valid arbitration agreement exists is expressly left for the arbitrator to resolve, and this Motion must be granted accordingly.

### B.   Even If The Court Reaches Questions Of Arbitrability, It Must Compel Arbitration

The arbitration agreement objectively indicates a "clear and unmistakable" intent on the part of Plaintiff and WIH to arbitrate threshold questions of arbitrability.   Nonetheless, should the reach that issue itself, it should still grant WIH's Motion.

The FAA limits the Court's involvement on a motion to compel arbitration to determining whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute at issue.  *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1119 (9th Cir. 2008).  When these conditions are satisfied, the Court *must* enforce the agreement to arbitrate.  9 U.S.C. §§ 3, 4.  As demonstrated herein, these conditions are satisfied because the FAA applies to the agreement, it is valid and enforceable, and the instant dispute falls squarely within its scope.

The FAA applies to the subject arbitration provision as it is a written provision in a contract involving commerce within the meaning of Section 2 of the statute.  A "written provision . . . in a contract" includes electronic contracts such as the Website's Terms and Conditions.  *See* 15 U.S.C. § 7001(a)(1) ("a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form").  Moreover, the Supreme Court has interpreted the phrase "involving commerce" broadly, holding

that it extends beyond persons and activities within the flow of interstate commerce, and that it includes anything that affects commerce.  *Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 277 (1995).  Here,  it is clear that the Website Terms and Conditions affect commerce, as Plaintiff's interactions with the Website were in furtherance of her efforts to seek out financial opportunities, and she affirmatively provided express written consent to be contacted by certain marketers and sellers as part of that effort.

### 1.     There is a Valid Agreement to Arbitrate

Both the Complaint and the accompanying affidavit of Ben Zitter confirm that Plaintiff visited foundmoneyguide.com on December 24, 2021, and that she progressed far enough  through the Website's flow that she reached the TCPA consent page.  It is her interactions with the TCPA consent page the Complaint describes in paragraphs 24 through 26 as having purportedly been recorded by ActiveProspect's TrustedForm product.  As indicated in the Zitter declaration, a Website user cannot reach that TCPA consent page without first interacting with a page earlier in the flow which contained an agreement to the Website Terms and Conditions (and Privacy Policy).  Zitter Decl. ¶ 8. Those Terms and Conditions contain an explicit agreement to arbitrate, to which Plaintiff assented.  The arbitration agreement, provided, *inter alia*, as follows:

DISPUTE RESOLUTION PROVISIONS:

Should a dispute arise concerning the Website, Promotions, Content, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties in New York, New York, in accordance with the then-current Commercial Arbitration Rules of the American Arbitration Association . . . The parties agree that the arbitrator shall not consolidate more than one person's claims, and shall not otherwise preside over any form of representative or class proceedings.  For claims of Ten Thousand Dollars ($10,000) or less, you can choose whether the arbitration proceeds in person, by telephone or based only on submissions.  If the arbitrator awards you relief that is

> greater than our Final Settlement Offer, then we will pay all filing, administration and arbitrator fees associated with the arbitration, and if you retained an attorney to represent you in connection with the arbitration, we will reimburse any reasonable attorneys' fees that you incurred for investigating, preparing and pursuing the claim in arbitration.  Any award rendered shall be final and conclusive to the parties and a judgment thereon may be entered in any court of competent jurisdiction . . . Although we may have a right to an award of attorneys' fees and expenses if we prevail in arbitration, we will not seek such an award from you unless the arbitrator determines that your claim was frivolous.

Inquiry notice of the Terms and Conditions, inclusive of the foregoing arbitration agreement, was provided to Plaintiff as she navigated her way to the TCPA consent page at issue in her complaint.  As indicated in the screenshot of the webpage on which the agreement was reached, represented by Exhibit A, the conspicuousness of its placement both directly below the box in which Plaintiff typed her email address and directly above the button that she pressed to continue navigating the Website, the customary blue font indicating that Terms and Conditions term was a clickable hyperlink, and the color contrast of the dark font against a light background, all serve to draw Plaintiff's attention and notice to the Terms and Conditions.  It was neither buried at the bottom of the webpage nor was the hyperlink intermingled with other irrelevant hyperlinks.  It is clear, conspicuous and located directly above the call-to-action button required to be pressed in order to continue through the Website and included within a notice that disclosed to Plaintiff that by signing up, she was agreeing to the Website Privacy Policy and Terms and Conditions.  Plaintiff's submission of her email address and clicking the button to continue using the Website manifested her assent to those agreements.

Similar agreements formed on the Internet are routinely enforced under analogous circumstances.  *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (finding that the entire screen was visible and the terms of service appeared directly below the registration button and that the relevant language was in "dark print contrast[ed] with the bright white background, and the hyperlinks are in blue

and underlined"); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 197 (2d Cir. 2015) (multiple bolded, capitalized headings alerting customers of terms and conditions was sufficiently reasonable notice); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) (concluding that where a user was provided with an opportunity to review the terms of service in the form of a blue hyperlink immediately below the acceptance button, the user had agreed to the terms and was bound by them); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 U.S. Dist. LEXSI 8450 (N.D. Cal. Apr. 1, 2005) (enforcing forum selection clause in website's terms of use where website had textual notice that read: "By continuing past this page and/or using this site, you agree to abide by the Terms of Use of this site; *Crawford v. Beachbody, LLC*, 2014 U.S. Dist. LEXIS 156658 (S.D. Cal. Nov. 5. 2014) (forum selection clause in website's terms and conditions enforceable where textual notice that consumer agreed to terms and conditions was located directly above the "place order" button); *Fteja v. Facebook, Inc.*, 841 F.Supp. 2d 829 (S.D.N.Y. 2012) (terms of use enforced where plaintiff was informed of the consequences of his assenting click and was shown immediately below where to click in order to understand those consequences).

Owing to the clear, express, and conspicuous notice provided to Plaintiff at the time of registration that such registration indicated an agreement to the Website Terms and Conditions (and Privacy Policy), in addition to the fact that the arbitration agreement's language is also clear and conspicuous in binding Plaintiff to arbitrate all of her claims against Defendant that concern the Website, a valid and enforceable agreement to arbitrate exists, and it mandates that the Motion be granted.  Ex. A.

### 2. *Plaintiff's claims are subject to the arbitration provision*

The scope of the arbitration provision should be interpreted liberally and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24 (1983).  The arbitration agreement requires that disputes "concern[ing] the Website" be submitted to arbitration.  Zitter Decl. ¶ 6; Ex. B.

Plaintiff's claims fall squarely within the Arbitration Provision.  Her claims are that her interaction with the Website and the information that she submitted thereon were allegedly recorded by "computer code on CR4 Media's websites" in violation of California law.  *Complaint* ¶ 2.  Her claims, therefore, concern the Website and thus fall centrally within the scope of the arbitration provision.  They must be arbitrated accordingly.

### 3. The arbitration clause is presumed valid and enforceable

Arbitration provisions, such as the one at issue here, are "presumed to be valid and enforceable" by the FAA.  *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 26-27 (1987).  Though the FAA applies, the statute is construed to permit the application of state law to invalidate arbitration agreements under certain limited circumstances, such as "fraud, duress, or unconscionability."  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921-22 (9th Cir. 2013).   Because the Complaint admits that Plaintiff voluntarily visited the Website and provided her identifying information thereon, there is no plausible argument that her agreement to the Website Terms and Conditions was a result of either fraud or duress, leaving only unconscionability.

The Terms and Conditions provide that "[t]he Agreement shall be treated as though it were executed and performed in New York, New York and shall be governed and construed in accordance with the laws of the State of New York (without regard to conflict of law principles).  Zitter Decl. ¶ 6; Ex. B.   Under New York law, "[a] determination of unconscionability generally requires a showing that [a] contract was both procedurally and substantively unconscionable when made."  *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988). That is, there must be some showing of "an absence of meaningful choice on the part of one . . . .part[y] together with contract terms which are unreasonably favorable to the other."

*King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006). Here, any argument concerning unconscionability lacks merit.

Courts applying New York law have consistently rejected challenges to arbitration agreements founded upon procedural unconscionability where the agreement contains an opt-out provision. *See e.g., Kai Peng v. Uber Techs.*, 237 F. Supp. 3d 36, 55 (E.D.N.Y. 2017) ("Courts applying New York law have considered an opt-out provision as an *important, if not dispositive,* factor in rejecting challenges of procedural unconscionability.") (emphasis added). Here, the arbitration provision specifically provided Plaintiff with such an opt-out option, stating, "You may opt-out of these dispute resolution provisions by providing written notice of your decision within thirty (30) days of the date that you first access the  Website." Zitter Decl. ¶ 6; Ex. B.   This option provided Plaintiff with the unconditional right to opt-out of the dispute resolution provisions of the Terms and Conditions, inclusive of the Arbitration Agreement. The notice of the 30-day right of opt-out is expressly provided to users such as Plaintiff and is a material term of the agreement.  Any argument that the contract is procedurally unconscionable is ultimately undermined by the Terms and Conditions allowing Plaintiff the right to opt-out of the agreed-upon dispute resolution provisions.

Moreover, the procedural element of unconscionability focuses chiefly on the contract formation process and the alleged lack of meaningful choice. [T]ake it or leave it" arbitration provisions are not procedurally unconscionable, irrespective of inequality in bargaining power. *Beattie v. Credit One Bank,* 2016 U.S. Dist. LEXIS 104456, *9 (N.D.N.Y. Aug. 9, 2016). Here, oppression is plainly not present, as Plaintiff was under no duress to accept the Terms and Conditions, or its Arbitration Provision, nor was she fraudulently induced into doing so.  Any purported failure by Plaintiff to read the Terms and Conditions and/or Arbitration Provision does not invalidate the contract. *See Velez v. Credit One Bank*, 2016 U.S. Dist. LEXIS 8782, *11 (E.D.N.Y. Jan. 25, 2016).

Because the arbitration provision is not procedurally unconscionable, the Court need not address whether it is substantively unconscionable, as a finding of unconscionability requires a showing of both procedural and substantive unconscionability.  *See Gillman*, 534 N.E.2d at 828; *see also Uptown Drug Co. v. CVS Caremark Corp.*, 926 F.Supp.2d 1172, 1181 (N.D. Cal. 2013) (finding that because plaintiff "has not shown that the arbitration clause is procedurally unconscionable to any degree, the court need not inquire into whether the agreement is substantively unconscionable").  Because the arbitration agreement is not unconscionable, it is valid and enforceable and mandates arbitration of Plaintiff's claims.

## IV.   THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW

While Plaintiff's claims against WIH are jurisdictionally deficient for having been brought in a judicial, rather than arbitral, forum, they are also subject to dismissal for the following substantive reasons: (1) Plaintiff consented to the recording of which she complains; (2) CIPA is inapplicable because (a) no communications were transmitted over telephone or telephone wires; and (b) no content of any communications were intercepted; (3) Plaintiff has not suffered any economic harm associated with the alleged recording; and (4) Plaintiff had no reasonable expectation of privacy in the information allegedly recorded.

### A.   Plaintiff Consented To The Conduct At Issue

He who consents to an act is not wronged by it.  Civ. Code § 3515.

As demonstrated, above, Plaintiff manifested her assent to the Website Terms and Conditions and Privacy Policy as part of her interactions thereon.  The Privacy Policy contains an express provision which provides, *inter alia*, as follows:

> Where you provide "prior express consent" within the meaning of the Telephone Consumer Protection Act (47 USC § 227), and its implementing regulations adopted by the Federal Communications Commission (47 CFR § 64.1200) . . . you understand and agree that we may use a third party vendor to record and store your registration and consent for compliance purposes.

1   Zitter Decl. ¶ 7; Ex. C.

2       By virtue of agreeing to the foregoing *prior* to reaching the Website's TCPA

3   consent page, on which Plaintiff asserts that her communications were allegedly

4   illegally recorded, Plaintiff cannot state a viable claim of any kind purporting to

5   arise from the recording that occurred subsequent to that provision of consent.[1]

6   Not only is the *absence* of consent an element of a claim pursuant to CIPA § 631(a),

7   but Plaintiff also cannot plausibly allege a violation of a constitutional right to

8   privacy when the allegedly intrusive act was one to which she consented.

9   **B.    The Complaint Does Not State A Valid CIPA Claim**

10      California's Penal Code § 631(a), coding the California Invasion of Privacy

11  Act ("CIPA"), generally attaches liability to a person if that person secretly listens to

12  another's conversations.  *See Graham v. Noom, Inc.*, 53 F.Supp.3d 823, 832 (2021).

13  Specifically, the statute provides, *inter alia*, as follows:

> Any person who, by means of any machine, instrument, or
> contrivance, or in any other manner, intentionally taps, or
> makes any unauthorized connection, whether physically,
> electrically, acoustically, inductively, or otherwise, with
> any telegraph or telephone wire, line, cable, or instrument,
> including the wire, line, cable, or instrument of any
> internal telephonic communication system, or who
> willfully and without the consent of all parties to the
> communication, or in any unauthorized manner, reads, or
> attempts to read, or to learn the contents or meaning of any
> message, report, or communication while the same is in
> transit or passing over any wire, line, or cable, or is being
> sent from, or received at any place within this state; or
> who uses, or attempts to use, in any manner, or for any
> purpose, or to communicate in any way, any information
> so obtained, or who aids, agrees with, employs, or
> conspires with any person or persons to unlawfully do, or
> permit, or cause to be done any of the acts or things
> mentioned above in this section, is punishable by a fine
> not exceeding two thousand five hundred dollars ($2,500).

---

[1]     The consent that Plaintiff provided *prior* to the recording is notably contrasted with the retroactive consent that was recently deemed insufficient to preclude a CIPA claim by the Ninth Circuit in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022).

The California Supreme Court has explained that this provision contains three operative clauses, which cover "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping"; (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, (1978) 22 Cal.3d 187, 192.

Only a third party can listen to a conversation secretly. *Rogers v. Ulrich*, (1975) 52 Cal.App.3d 894, 897-899. A party to a communication can record it (and is not eavesdropping when it does). *Id*. As a result, because the information submitted to the Website was communicated by Plaintiff to WIH, the first three aforementioned patterns of conduct do not apply to WIH. Consequently, only §631(a)'s fourth basis for liability applicable to anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be any of the" other three bases of liability could feasibly apply to WIH. Nevertheless, because ActiveProspect's conduct does not plausibly fit into any of the three bases, then logically there is no basis with which to hold WIH liable.

*There was no Intentional Wiretapping:* Plaintiff's allegations are insufficient to invoke the first basis of liability, intentional wiretapping, because that portion of the statute explicitly only applies to telephones or telegraphs and does not extend to Internet communications. The Website is not a "telephone instrument" anymore than the operating system of an iPhone is. Nonetheless, it was recently held that a mobile application's accessing a user's copy and paste iOS functionality, "Pasteboard," was not covered by the "intentional wiretapping" basis of §631(a) liability notwithstanding the conduct unquestionably occurring on a person's telephone. *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1136 (E.D. Cal. 2021). *Mastel* explicitly rejected the notion that because courts interpreting CIPA extended CIPA's second clause to technologies beyond telephone or telegraphs for purposes of the second clause of CIPA, the same must be true with respect to CIPA's first

clause.  *Mastel* approvingly cited to *Matera v. Google, Inc.*, 2016 WL 8200619, *18 (N.D. Cal. Aug. 12, 2006), *In re Google Inc.*, 2013 WL 5423918, *20 (N.D. Cal. Sept. 26, 2013), and *In Re Google Private Litigation*, 457 F.Supp.3d 797, 799, 826 (N.D. Cal. 2020) in support of its conclusion that the first prong of CIPA is limited solely to communications passing over telegraph or telephone wires.  For the reason that communications on the Website were did not pass over telegraph or telephone wires, the first clause of CIPA does not apply.

<u>*There was no Willful Attempt to Learn Contents of the Communication:*</u> Moreover, the second basis of CIPA liability, "willfully attempting to learn the contents or meaning of a communication in transit over a wire," is inapplicable for the simple fact that the information that Plaintiff complains was purportedly recorded on the Website does not constitute "content" of a communications for purposes of CIPA.

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."  *Cline v. Reetz-Laiolo*, 329 F.Supp.3d 1000, 1051 (N.D. Cal. 2018).  The Wiretap Act defines the term "contents" as "any information concerning the substance, purport, or meaning of that communication."  18 U.S.C. § 2510.  The Ninth Circuit has held that "contents" means the "intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message that is generated in the course of communication."  *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014).  The Ninth Circuit has further explained that record information "includes the name, address, and subscriber number or identify of a subscriber or customer."  *Id.*  Additionally, it has also been held that email address, and phone number are not content, *see In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1034 (N.D. Cal. 2014), nor are IP addresses and/or URLs content.  *See In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, *15 (D.N.J. July 2, 2014).

Plaintiff alleges that the following was recorded by the TrustedForm technology: keystrokes, mouse movements, clicks, name, address, date of birth, and phone numbers. *See Complaint* ¶ 22, 23, 27.   None of these pieces of data constitutes a communication's content.  They are all record information.  As a result, the Complaint does not state a claim for violation of CIPA.

*CIPA's Third Clause does not apply:* Because Plaintiff has failed to state a valid CIPA claim pursuant to either the first or second clause of the statute, she has necessarily failed as a matter of law to assert a violation of CIPA's third clause.  *See In re Google Assistant Priv. Litig.,* 457 F.Supp. 3d at 827 ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses.  Because plaintiffs have not done so, they have also failed to plead a violation of the third clause.").

For the foregoing reasons, Plaintiff's CIPA claims fail as a matter of law and must be dismissed accordingly.

While the foregoing analysis demonstrates that the Complaint fails to allege a CIPA claims as a matter of law, it is also worth noting that technology such as ActiveProspect's TrustedForm has previously been deemed to be no more than an instrument to permit a party to a communication to record its own communications. *Graham v. Noom, Inc.*, 533 F.Supp.3d 823 (N.D. Cal. 2021) provides the most appropriate guidance given the nearly identical fact pattern.  In *Noom*, the plaintiffs claimed that a software as a service provider, FullStory, eavesdropped on their communications with Noom by embedding code on Noom's website to capture data such as keystrokes, mouse clicks, page scrolling, all of which were associated with the website visit and which could be viewed through a playback function called Session Replay.  Additional information captured was the date and time of the visit, duration of the visit, IP addresses, locations at the time of visit, browser types, and the operating system of the device used to access the website, in addition to the personally identifiable information and protected health information that users

submit to Noom's website.  The *Noom* Court conclusively found that the FullStory product did not illegally eavesdrop on the plaintiffs' communications in violation of Cal. Penal Code § 631(a) nor invade any reasonably protected privacy interest in violation of the California Constitution by finding that  FullStory was not a third-party eavesdropper.  Instead, the *Noom* Court correctly concluded that it was simply a vendor that allowed Noom to capture Noom's own data for future internal analysis.  In effect, FullStory's software was the equivalent of a tape recorder which permitted Noom to record its own data and to subsequently analyze its own data.

The *Noom* Court comprehensively distinguished the relevant facts from inapposite cases in which Internet-related activity was deemed to be illegal eavesdropping. Examples of the illegal Internet-based eavesdropping included *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), in which a third-party's computer code was embedded on an online retailer's website, but the purpose of capturing data was exclusively to the benefit of the code-provider to create its own marketing database, not to benefit any party to the underlying website-based communication.  More notoriously, In re *Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), Facebook code was embedded on third party websites which tracked users of those third party websites even when they were not signed into Facebook. Facebook was then able to assemble a cradle to grave history of the users browsing activity to sell that data to advertisers.

Notably, the *Noom* Court drew a clear line of demarcation between the data mining operations of third-party code providers, which could plausibly give rise to a CIPA claim by virtue of the profit generating marketing purposes for which the data had been captured, with the legal data capturing software in *Noom* which allow parties to the communication utilize their own data.  ActiveProspect's TrustedForm product clearly falls into the latter category, by permitting companies such as WIH to use the recordings to demonstrate compliance with the federal telemarketing statute, a fact acknowledged by the Complaint.  *Complaint*  ¶ 5.

1    **C.**     **The Complaint Fails To State A Claim For Violation Of The**
2            **California Constitution's Right To Privacy**

3        To state a claim under the California constitutional right to privacy, a plaintiff

4   "must show that (1) [she] posses[es] a legally protected privacy interest, (2) [she]

5   maintain[s] a reasonable expectation of privacy, and (3) the intrusion is 'so serious .

6   . . as to constitute an egregious breach of the social norms' such that the breach is

7   'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d

8   589, 601 (9h Cir. 2020) (*quoting Hernandez v. Hillsides, Inc.*, (2009) 47 Cal.46th

9   272, 286).

10       The case law makes clear that while courts analyzing the sufficiency of a

11  California constitutional right to privacy claim are reticent to make an empirical

12  judgment as to what conduct is egregious, offensive, or violates social norms, there

13  is nonetheless an objective factor that courts can use to analyze the sufficiency of

14  the claim at the pleading stage.  An "important factor that courts often rely on is

15  whether the plaintiff alleges that the defendant <u>used</u> the private or confidential

16  information obtained for some improper purpose." *Mastel*, 549 F.Supp.3d at 1140.

17  Here, the Complaint not only does not allege that the recordings of Plaintiff's

18  interactions with the Website were used for an improper purpose, it affirmatively

19  acknowledges that ActiveProspect's TrustedForm "product is designed to allow []

20  lead generators and telemarketers to attempt compliance with the federal Telephone

21  Consumer Protection Act by documenting alleged evidence of prior express consent

22  to receive telemarketing calls provided on websites."  *Complaint* ¶ 5.  It is difficult

23  to conceive of a *less* improper purpose for use of the alleged recordings than for

24  maintaining compliance with federal law.  Moreover, it has been held that the *theft*

25  of even "highly personal information, including social security numbers, does not

26  approach [the] standard of actionable conduct under the California Constitution and

27  thus does not constitute a violation of" a plaintiff's right to privacy.  *In re iPhone*

28  *Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012).

Plaintiff's constitutional claim also suffers from an even more fundamental problem, however.  She has not alleged a privacy interest sufficient to invoke the constitutional right.  Under the California Constitution, "[l]egally recognized privacy interests are generally of two classes: (1)  interests precluding the dissemination or misuse of sensitive and confidential information ("informational privacy"); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ("autonomy privacy").  *Hill v. Nat'l Collegiate Athletic Ass'n*, (1994) 7 Cal. 4th 1, 35-37.  Courts have not extended the body-centric concept of autonomy to data autonomy. *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1086 (C.D. Cal. 2021) (*citing In re Google Location Hist. Litig.*, 428 F.Supp.3d 185, 198 (N.D. Cal. 2019).  In contrast with *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602-03 (9th Cir. 2020), in which the Ninth Circuit held that Facebook users had a cognizable informational privacy interest in browsing data secretly collected by Facebook across the Internet even after logging out of Facebook, courts have been less willing to find that users have a cognizable informational privacy interest in browsing data collected only while interreacting with the website of the defendant.  *Yoon*, 549 F.Supp.3d at 1086.  *See also In Re Google Location Hist. Litig.*, 428 F.Supp.3d at 198 (no privacy interest where Google "only tracked and collected data during use of Google services").   The Complaint makes clear that Plaintiff's claim concerns only her interactions while on WIH's website.

Because (i) the recording of the information purportedly captured on the Website does not rise to the level of action conduct recognized by the constitutional right to privacy, (ii) its intended use for an appropriate purpose, and (iii) Plaintiff had no reasonably privacy interest in the information collected, Plaintiff has failed to state a plausible claim for violation of her constitutional right to privacy, and it must be dismissed accordingly.

1

### D.   Plaintiff Has No Standing For Her Unfair Competition Law Claim

2    Plaintiff claims that Defendants' conduct violated the California Unfair

3    Competition Law ("UCL"), which prohibits any unlawful, unfair, or fraudulent

4    business act or practice.  *See Clark v. Countrywide Home Loans, Inc.*, 732

5    F.Supp.2d 1038, 1049 (E.D. Cal. 2010) (*quoting Hall v. Time, Inc.*, (2008) 158

6    Cal.App. 4h 847, 849); *see also* Cal. Bus. & Prof. Code § 17200 *et seq*.  In order to

7    properly bring an UCL claim, a plaintiff must have UCL standing, a separate and

8    distinct concept from Article III standing.  *See Ehret v. Uber Tech., Inc.*, 68

9    F.Supp.3d 1121, 1132 (N.D. Cal. Sept. 17, 2014 ("[A] federal plaintiff's [Article III]

10   'injury in fact' may be tangible and need not involve lost money or property . . .  a

11   UCL plaintiff's 'injury in fact' [must] specifically involve lost money or property.")

12   Thus, to establish standing under the UCL, a plaintiff "must establish that [she] (1)

13   suffered an injury in fact and (2) lost money or property as a result of the unfair

14   competition."  *Birdsong v. Apple, Inc*., 590 F.3d 955, 959 (9th Cir. 2009) (*citing*

15   Cal. Bus. & Prof. Code § 17204).

16   Plaintiff has failed to allege any economic injury as a result of the conduct

17   described in the Complaint.  Not only does Plaintiff not mention or describe the

18   alleged economic value of the information recorded on the Website, but courts

19   routinely that "disclosure of personal information alone does not constitute

20   economic or property loss sufficient to establish UCL standing, unless the plaintiff

21   provides specific allegations regarding the value of the information."  *Mastel*, 549

22   F.Supp.3d at 1144 (*citing See, e.g.,  In re Facebook Privacy Litig.,* 791 F. Supp. 2d

23   705, 714 (N.D. Cal. 2011), aff'd 572 F. App'x 494 (9th Cir. 2014) ("A plaintiff's

24   'personal information does not constitute property under the UCL."); *Archer v.*

25   *United Rentals, Inc.,* (2011) 195 Cal. App. 4th 807, 816 (dismissing UCL invasion

26   of privacy claim because "plaintiffs have failed to demonstrate how ... unlawful

27   collection and recordation of personal information ... translates into a loss of money

28   or property").

1       Here, not only did WIH not disclose to a third-party Plaintiff's personal

2   information, but the Complaint is completely devoid of any allegations concerning

3   the economic value of that information or the extent of Plaintiff's monetary or

4   property loss associated with the recording.  That is fatal to the UCL claim, and

5   warrants dismissal accordingly.

6   **V.**    <u>**CONCLUSION**</u>

7       For the foregoing reasons, WIH is entitled to an order providing it relief as

8   follows: (1) compelling Plaintiff's claims to arbitration; or, in the alternatively, (2)

9   dismissing the Complaint against WIH in its entirety.  WIH respectfully requests

10  that the Court grant the Motion accordingly.

11  Dated:  September 12, 2022   SHEPPARD, MULLIN, RICHTER, & HAMPTON LLP

12

13      By   _____   */s/ Jay T. Ramsey*
        JAY T. RAMSEY

14

15      *Attorneys for Defendant*

16      WHAT IF HOLDINGS, LLC

17

18

19

20

21

22

23

24

25

26

27

28