**KELLEY DRYE & WARREN LLP**
Becca J. Wahlquist (SBN 215948)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*Pro Hac Vice forthcoming*)
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com

*Attorneys for Defendant ActiveProspect, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Loretta Williams,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**What If Holdings, LLC d/b/a C4R Media Corp.,** and **ActiveProspect, Inc.,**<br><br>Defendants. | Case No. 3:22-cv-03780-WHA<br><br>[Assigned to Hon. William Alsup]<br><br>**DEFENDANT ACTIVEPROSPECT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>[Request for Judicial Notice, and Proposed Order filed concurrently]<br><br>Hearing: December 15, 2022<br>Time: 8:00 a.m.<br>Location: Courtroom 12 |

CASE NO. 3:22-CV-03780-WHA
DEFENDANT ACTIVEPROSPECT, INC.'S MOTION TO DISMISS COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 15, 2022, at 8:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 12 of the United States District Court for the Northern District of California, before the Honorable William Alsup, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Defendant ActiveProspect, Inc. ("ActiveProspect") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing the Complaint and claims therein of Plaintiff Loretta Williams ("Plaintiff") with prejudice for failure to state a claim upon which relief may be granted.

The basis for this Motion is that it is clear from the face of the Complaint, the documents referenced therein, and judicially noticeable materials that Plaintiff: (1) failed to adequately plead a claim under Section 631 of the California Invasion of Privacy Act ("CIPA"); (2) failed to adequately plead a claim of Unfair Competition Law ("UCL") under California Business Professions Code 17200, et seq.; and (3) failed to adequately plead a claim for invasion of privacy.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all other materials supporting the Motion or the Reply filed in support thereof, and such arguments and authorities as may be presented at or before the hearing.


DATED: September 12, 2022          KELLEY DRYE & WARREN LLP

                                   /s/ *Becca J. Wahlquist*
                                   Becca J. Wahlquist (SBN 215948)
                                   Lauri A. Mazzuchetti (*Pro Hac Vice* forthcoming)

DEFENDANT ACTIVEPROSPECT, INC.'S MOTION TO DISMISS COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(B)(6)

1

**KELLEY DRYE & WARREN LLP**
Becca J. Wahlquist (SBN 215948)

2

350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071

3

Telephone: (213) 547-4900
Facsimile: (213) 547-4901

4

bwahlquist@kelleydrye.com

5

**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*Pro Hac Vice forthcoming*)

6

One Jefferson Road, 2nd Floor
Parsippany, NJ 07054

7

Telephone: (973) 503-5900
Facsimile: (973) 503-5950

8

lmazzuchetti@kelleydrye.com

9

*Attorneys for Defendant ActiveProspect, Inc.*

10

**UNITED STATES DISTRICT COURT**

11

**NORTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| **Loretta Williams,** individually and on behalf of all others similarly situated, | Case No. 3:22-cv-03780-WHA |
| | [Assigned to Hon. William Alsup] |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| **What If Holdings, LLC d/b/a C4R Media Corp.,** and **ActiveProspect, Inc.,** | |
| Defendants. | [Request for Judicial Notice, and Proposed Order filed concurrently] |
| | Hearing: December 15, 2022 |
| | Time: 8:00 a.m. |
| | Location: Courtroom 12 |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

MEMORANDUM OF POINTS AND AUTHORITIES

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................................1

II. FACTUAL BACKGROUND.............................................................................................2

    A.   ActiveProspect's TrustedForm Software ................................................2

    B.   Plaintiff's Visit to The Website Owner's Page ......................................4

III. ARGUMENT ...................................................................................................................6

    A.   Plaintiff Fails to State a Valid Claim Under Section 631 ....................7

        1.   Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a Communication While In Transit .............................7

            (a)    No Unauthorized Connection.......................................8

            (b)    No Interception While In Transit .................................9

            (c)    No Communication ......................................................12

        2.   Plaintiff Has Not Pled Use of a Telegraph or Telephone........................12

        3.   Plaintiff Otherwise Fails to State a Claim under CIPA............................13

        4.   Plaintiff Consented under CIPA.............................................................14

    B.   Plaintiff Fails to State a Valid Claim for Unfair Competition Under California Business Professions Code........................................16

    C.   Plaintiff Fails to State a Valid Claim for Invasion of Privacy Under the California Constitution ..........................................................16

        1.   Plaintiff Has Not Adequately Pled That She Had a Reasonable Expectation of Privacy ...............................................17

        2.   Plaintiff Has Not Adequately Pled That ActiveProspect's Conduct Amounts to a Serious Invasion of a Protected Privacy Interest ...............17

IV. CONCLUSION .................................................................................................................19

MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Allied Ins. Co.*,
   No. EDCV-14-0424, 2014 WL 12591844 (C.D. Cal. Aug. 19, 2014)....................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 6

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ....................................................................................16

*Clark v. California Dep't of Forestry and Fire Prot.*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016) ................................................................. 6, 7

*In re Facebook, Inc. Secs. Litig.*,
   477 F. Supp. 3d 980 (N.D. Cal. 2020) ........................................................................ 2

*Folgelstrom v. Lamps Plus, Inc.*,
   125 Cal. Rptr. 3d 260, 195 Cal. App. 4th 986 (Cal. Ct. App. 2011)................................. 18, 19

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*,
   868 F. Supp. 2d 983 (E.D. Cal. 2012) ......................................................................... 2

*Garcia v. Enter. Holdings, Inc.*,
   78 F. Supp. 3d 1125 (N.D. Cal. 2015) ................................................................. 14, 15

*In re Gilead Scis. Secs. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)...................................................................................... 7

*Global Policy Partners, LLC v. Yessin*,
   686 F. Supp. 2d 631 (E.D. Va. 2009)........................................................................ 10

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................................................... 14, 16

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................................................................... 13

*In re Google Inc.*,
   No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sep. 26, 2013) .......................... 7, 12

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................................... 1, 8, 9, 12

*Greenberg v. Amazon.com, Inc.*,
   No. 20-CV-02782, 2021 WL 7448530 (N.D. Cal. May 7, 2021) .......................................... 15

*Harris v. County of Orange*,
   682 F.3d 1126 (9th Cir. 2012) ............................................................................................. 5

*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1, 865 P.2d 633 (Cal. 1994) ................................................................. 16, 17, 18

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................ 17, 18

*Javier v. Assurance IQ, LLC*,
   No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ............................................. 8, 15

*Johnson v. Blue Nile, Inc.*,
   No. 20-cv-08183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ............................................. 8

*Khoja v. Orexigen Therapuetics, Inc.*,
   899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S.Ct.
   2615 (2019) ........................................................................................................................... 2

*Konop v. Hawaii Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ......................................................................................... 10, 11

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................ 16, 178

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ......................................................................*passim*

*Matera v. Google Inc.*,
   No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ................................. 2, 12, 13

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012) ............................................................................. 10

*Mireskandari v. Daily Mail*,
   No. 12-cv-02943, 2013 WL 12129559 (C.D. Cal. Jul. 30, 2013) .......................................... 9

*Mitchell v. Regional Serv. Corp.*,
   No. C 13-042212-JSW, 2014 WL 12607809 (N.D. Cal. Apr. 23, 2014) ............................... 19

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................................ 9, 10

*Phillips v. Archstone Simi Valley LLC*,
   No. 15-cv-5559, 2016 WL 400100 (C.D. Cal. Feb. 1, 2016) ............................................... 19

*Pioneer Elecs. (USA), Inc. v. Superior Court of Los Angeles County*,
    150 P.3d 198, 40 Cal. 4th 360 (Cal. 2007) ................................................................ 16

*Popa v. Harriet Carter Gifts, Inc.*,
    45 F. 4th –, No. 21-2203, 2022 WL 3366425 (3d Cir. June 8, 2022) ...................... 9

*Ribas v. Clark*,
    38 Cal. 3d 355, 696 P.2d 637 (Cal.1985) ................................................................ 7

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) *aff'd*, 380 Fed. App'x. 689 (9th Cir.
    2010) ......................................................................................................................... 18

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ..................................................................... 9

*Tavernetti v. Superior Court of San Diego County*,
    22 Cal. 3d 187, 583 P.2d 737 (Cal. 1978) ............................................................... 7

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ..................................................................................... 5

*In re Vizio, Inc. Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................ 9, 11, 12

*Weisbusch v. County of Los Angeles*,
    119 F.3d 778 (9th Cir. 1997) ..................................................................................... 7

*Williams v. DDR Media, LLC et al.*,
    No. 4:22-cv-03789 (N.D. Cal.) .................................................................................. 4

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................... 14, 17

*Yale v. Clicktale, Inc.*,
    No. 20-cv-07575, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ............................. 8

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................................. 12

**Statutes**

Cal. Bus. & Prof. Code § 17204 ...................................................................................... 16

Cal. Penal Code § 631(a) .......................................................................................... *passim*

**Other Authorities**

California Constitution ............................................................................................... 16, 18

Fed. R. Civ. Pro. Rule 12(b)(6) ........................................................................ 2, 5, 6, 11

*Webster's Ninth New Collegiate Dictionary* 630 (1985) ................................................ 9

CASE NO. 3:22-CV-03780-WHA
MEMORANDUM OF POINTS AND AUTHORITIES

## I. <u>INTRODUCTION</u>

This action seeks to expand the scope of California's Invasion of Privacy Act ("CIPA") to convert a website owner's election to use ActiveProspect's TrustedForm software into "wiretapping." Plaintiff's suit asserts that ActiveProspect's TrustedForm software was used by co-defendant What If Holdings, LLC d/b/a C4R Media Corporation ("C4R Media" or "Website Owner") in capturing the information provided by consumers to that Website Owner – but this allegation concerning the use of an ActiveProspect software tool to support the Website Owner's own business does not remotely resemble the type of conduct targeted by CIPA. Courts confronted with similar allegations, including the Northern District of California just last year in *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), have dismissed such claims, because, among other reasons, CIPA does not apply when a website owner uses a third-party's software tool in the operation of its website. Moreover, a website owner's decision to use such a third-party service provider does not render that service provider – here, ActiveProspect – an "interceptor" of communications as required under CIPA. Nor do Plaintiff's allegations give rise to any other violation of law, even if those allegations are taken as true. That the Website Owner used a third-party software, for its own purposes, that allowed it to gather information as it was provided by the consumer (which is all that Plaintiff alleges), does not impact Plaintiff's purported privacy interests. For these reasons and others, the Complaint should be dismissed.

*First*, Plaintiff has not stated a valid CIPA claim. Section 631 of CIPA, which prohibits "wiretapping," applies only to the unauthorized interception of an electronic communication while it is in transit. Plaintiff has not plausibly alleged that ActiveProspect acted as a third-party that "eavesdropped" on any communications, as required to trigger CIPA. Plaintiff herself alleges only that the Website Owner elected to use ActiveProspect's TrustedForm software in aid of the conduct of its own business, which is fatal to her CIPA claim. Indeed, there are no allegations that ActiveProspect intercepted a communication, let alone a communication during its transmission to the Website Owner, nor has she alleged that ActiveProspect made an unauthorized connection to a telephone or telegraph. All she alleges is that ActiveProspect's software tool "recorded" her provision of information to the Website Owner. In similar circumstances, courts have granted

CASE NO. 3:22-CV-03780-WHA
MEMORANDUM OF POINTS AND AUTHORITIES

1    motions under Rule 12(b)(6) finding it insufficient to claim that such activity was contemporaneous

2    or intercepted. Further, providing personal information on a website to a company by entering

3    information into fields on that website is not the same thing as providing personal information on a

4    phone call when a consumer may not know that the call is being recorded; courts in the Ninth Circuit

5    have uniformly concluded that a plaintiff does not have a privacy interest in information she

6    knowingly provided over the internet. Plaintiff's CIPA claims should, therefore, be dismissed as a

7    matter of law on these grounds alone, and further should be dismissed because Plaintiff consented

8    to the Website Owner's privacy policy that disclosed that information she provided could be shared

9    with third-party service providers such as Active Prospect.

10        *Moreover*, Plaintiff's unfair competition claim fares no better because Plaintiff does not (and

11    cannot) state an economic harm. Plaintiff's constitutional claims also fails because there is no valid

12    expectation of privacy where she concedes that she knowingly provided her information to the

13    Website Owner over the internet. Consistent with controlling precedent, Plaintiff's unfair

14    competition and invasion of privacy claims fail on their face.

15        For each of these reasons, detailed below, this Court should dismiss the Complaint.

16    **II.  FACTUAL BACKGROUND**

17        **A.   ActiveProspect's TrustedForm Software[1]**

18        ActiveProspect offers a product to lead generators and telemarketers known as

19    "TrustedForm." (Compl. ¶ 5.) The TrustedForm software enables users (website owners/operators)

20

---

21   [1] The Court can consider documents incorporated by reference into Plaintiff's Complaint, which are

22   attached as Exhibits 1 and 2 to the Request for Judicial Notice ("RJN"). *See Khoja v. Orexigen Therapuetics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139

23   S.Ct. 2615 (2019). Similarly, the Court may take judicial notice of the Website's Pricy Policy, attached to the RJN as Exhibit 3, and ActiveProspect's patent, attached to the RJN as Exhibit 4. *Id.*

24   at 1001 ("The [patent] application is [] verifiable with certainty, and of the same type as other governmental documents which courts have judicially noticed.") (internal citations omitted); *Foster*

25   *Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("[c]ourt[s] have [] found the contents of patents to be the appropriate subject of judicial notice")

26   (collecting cases); *In re Facebook, Inc. Secs. Litig.*, 477 F. Supp. 3d 980, 1009-10 (N.D. Cal. 2020)

27   ("It is common for courts to take judicial notice of a company's historical privacy policies.") (citing *Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *5 (N.D. Cal. Aug. 12, 2016) (taking

28   judicial notice of multiple versions of Google's privacy policy, including archived versions).

to validate customer leads that are developed through these websites as legitimate leads and to assist businesses in complying with the Telephone Consumer Protection Act ("TCPA") and other consumer protection statutes. (RJN Ex. 2; Compl. ¶ 5.) TrustedForm provides unbiased third-party documentation of consent and real-time actionable insights about the leads that are acquired. (Compl. ¶ 7; RJN Ex. 2.) ActiveProspect is a service-provider. (Compl. ¶¶ 8-11.) Plaintiff makes no allegation that ActiveProspect makes commercial use of the data collected via its software tool (nor could she). (*See generally id.*)

To use the software, the owner of a website embeds ActiveProspect's JavaScript on its website. (Compl. ¶ 9; *see also* RJN Ex. 4, at 6 ("the lead generator . . . executes a script that was embedded in the form by the lead vendor").) When a person (the website visitor) visits a website on which the TrustedForm script is embedded, the script runs and issues a certificate of authenticity demonstrating when and where the website visitor completed the web form, as well as what screens and information the website visitor saw when visiting the webpage. (Compl. ¶ 12; RJN Ex. 4.) This is important because, when TCPA claims are asserted, questions often arise about what a website visitor actually saw, and whether a web form prominently displayed legal disclosures and consent language when the website visitor completed a form. (RJN Ex. 2; Compl. ¶ 5.)

As Plaintiff's Complaint asserts, TrustedForm software can also document a website visitor's key strokes and mouse movements showing whether and how the consumer completed a web form, and can create a visual reproduction (often referred to as a "video replay") of a website visitor's interaction with a webpage. (Compl. ¶ 7.) The website owner/operator decides how it wants to use the software and has the ability to flag any sensitive fields on its web form, which results in the TrustedForm software suppressing the transfer of certain fields or information (rather than recording the website visitor's actual entries). (RJN Ex. 4 ("According to certain configurations, the verification server may ignore or actively avoid collecting any personally identifiable information about the visitor in order to maintain privacy and integrity.")) Importantly, Plaintiff alleges no facts to support her contention that TrustedForm does or can intercept communications in transit. (Compl. ¶¶ 7-8; *see also* RJN Ex. 4 at Abstract).

CASE NO. 3:22-CV-03780-WHA
MEMORANDUM OF POINTS AND AUTHORITIES

**B.**   <u>**Plaintiff's Visit to The Website Owner's Page**</u>

Plaintiff alleges that she visited the C4R Media Website on or around December 24, 2021. (*Id.* ¶ 21.) Plaintiff alleges that she is a citizen of the State of California, but she does not allege her physical location when she visited the Website. (*Id.* ¶ 15, *see generally id.*)

Plaintiff does not – and cannot – allege that the Website required a password, username, or was otherwise shielded from general public access. (*See generally id.*) According to Plaintiff, "[d]uring that visit, the TrustedForm replay function created a video that captured Williams' keystrokes[,] clicks on the website[,] the date and time of the visit, the browser and operating system used by Williams during the visit, and her geographic location." (*Id.* ¶ 22.) Plaintiff alleges "that screenshots of the TrustedForm related to [her] visit" are depicted in the Complaint. (*Id.* ¶¶ 24-26.) Plaintiff alleges the screenshots capture her "personal information" while the "I CONFIRM" button is not clicked. (*Id.* ¶ 25.) Plaintiff alleges she then clicked the "I CONFIRM" button. (*Id.*)

Plaintiff alleges TrustedForm "captures a copy of the web page viewed by the visitor and the user events that took place on the page including form inputs, mouse movements and clicks. It plays these events back as a screen capture of how the user interacted with the page." (*Id.* ¶ 8.) Plaintiff further alleges that ActiveProspect "enters into partnerships with various telemarketers and lead generators [… and] provides its software and scripts to those partners." (*Id.* ¶ 9.) Plaintiff alleges one such partner is C4R Media and that, pursuant to an agreement, C4R Media embedded the TrustedForm code on the Website. (*Id.* ¶¶ 10, 12.) Plaintiff alleges ActiveProspect and C4R Media recorded her "interaction (including her keystrokes and mouse movement and clicks)." (*Id.* ¶ 27.) Plaintiff, however, does not allege that any purported communication was intercepted in transit, nor does she allege that ActiveProspect made any commercial use of her information. (*See generally* Compl.)

The Website Owner's Privacy Policy was visibly referenced and hyperlinked on the Website's landing page.[2] (RJN Ex. 1.) As reflected in the landing page, it appears Plaintiff agreed to

---

[2] This Court may consider and take judicial notice of the Website, including the Privacy Policy, on this Motion because Plaintiff incorporates the Website into her Complaint and it is central to her

the Privacy Policy when she entered her email address and clicked "SEARCH FOR YOUR CASH" to move to the next form in the Website that is featured in the Complaint. (Compl. ¶ 23.) The Privacy Policy in effect on that date of the visit stated that:

> We collect PII when you register or sign up to be a Commenter, Contributor and/or for Found Money Guide offerings. PII includes any information that can be used to identify or locate a particular person or entity. The PII that we request in connection with the registration process may include, but is not limited to, your: (a) full name; (b) e-mail address; (c) mailing address; (c) daytime and/or cellular telephone numbers; (d) date of birth; and/or (e) any other information requested on the applicable form. *We may also collect your PII when you otherwise agree to the terms of this Privacy Policy, but do not complete the applicable registration process in full.*
> …
> We may collect certain Non-Personally Identifiable Information ("Non-PII") about you when you visit any of the Site's pages, such as the type of browser you are using (e.g., Internet Explorer, Google Chrome), the type of operating system you are using, (e.g., Windows, IOS) and the domain name of your Internet service provider (e.g., Verizon, Time Warner).
> …
> We allow third-party companies to collect certain information when users visit our Site. These third party entities may utilize cookies, pixels or other tracking technologies to collect and use both personally identifiable information (e.g., your name, phone number, physical or electronic address) and non-personally identifiable information (e.g., click stream information, browser type, time and date, subject of advertisements clicked or scrolled over) during your visits to the Site and other websites in order to serve you with advertisements about goods and services likely to be of greater interest to you.

(RJN Ex. 3 (emphasis in original).)

---

claims. *See, e.g.*, Compl., ¶¶ 21-26 (incorporating Website); *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citation omitted) ("Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents"); *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (the court may consider unattached evidence on a Rule 12(b)(6) motion to dismiss "if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.").

On June 27, 2022, Plaintiff filed the instant lawsuit against ActiveProspect and C4R Media.[3] (Compl., Dkt. No. 1.) Plaintiff alleges that "[b]y using TrustedForm, Defendants intentionally tapped the lines of communication between Plaintiff (and absent Class Members) and C4R Media's websites." (Compl. ¶ 45.) Plaintiff further alleges that ActiveProspect "lack[ed] prior express consent from Plaintiff and the Class for Defendants to 'read or attempt to read or learn the contents or meaning' of their electronic communications being made in the State of California." (*Id.* ¶ 46.)

Plaintiff makes conclusory allegations that TrustedForm is used for "wiretapping," (*id.* ¶¶ 1-2, 13, 28, 31, 34, 56, 59), and asserts – without factual support – that it was used to "intercept" the putative Class Members' internet communications. (*Id.* ¶ 32.) The Complaint, however, fails to plead any factual allegations that, if proven, would support that Plaintiff's communications were intercepted while the communications were in transit. (*See generally id.*) As further detailed below, Plaintiff does not plead how or when such communications were supposedly intercepted, nor does she plead any facts that show that such communications were actually intercepted while in transit from Plaintiff to the Website Owner. In sum, Plaintiff does not make any factual allegations that, even if proven, could support her conclusory allegations of wiretapping; instead, she merely parrots the statutory definition of "wiretapping." (*Id.* ¶¶ 44, 46.) Nor does Plaintiff allege she suffered any economic injury. (*See generally id.*)

## III.  <u>ARGUMENT</u>

Rule 12(b)(6) requires dismissal where a complaint fails to allege sufficient facts "to state a claim to relief that is plausible on its face" and presents nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is facially plausible when a plaintiff pleads 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. California*

---

[3] On the same day that she filed the instant suit, Plaintiff also sued DDR Media, LLC, and Lead Intelligence, Inc. d/b/a Jornaya. *See Williams v. DDR Media, LLC, et al.*, No. 4:22-cv-03789 (N.D. Cal.). In that action, Plaintiff asserts the same claims against the defendants, including a Jornaya, a service-provider that provides a product similar to ActiveProspect's TrustedForm. That action is pending before Judge Illston.

*Dep't of Forestry and Fire Prot.*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016) (quoting *Ashcroft*, 556 U.S. at 678). "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). "And even where facts are accepted as true, 'a plaintiff may plead [her]self out of court' if [s]he 'pleads facts which establish that [s]he cannot prevail on h[er] . . . claim.'" *Id.* (quoting *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

Applying this standard, Plaintiff's claims should be dismissed with prejudice.

### A.    Plaintiff Fails to State a Valid Claim Under Section 631

The California Supreme Court has explained that CIPA Section 631(a) makes unlawful "three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping [with any telegraph or telephone],' (2) 'willfully attempting to learn the *contents* or meaning of a *communication in transit* over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Superior Court of San Diego County*, 22 Cal. 3d 187, 192, 583 P.2d 737 (Cal. 1978) (emphasis added); *see also* Cal. Penal Code § 631(a); *accord In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sep. 26, 2013)). Section 631(a) includes a fourth basis for liability, for anyone "'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a)).

Plaintiff's Section 631 claim should be dismissed because she has not pled facts that support a violation of any of these provisions of CIPA.

### 1.    Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a Communication While In Transit

Under Section 631(a)'s second clause, which is the apparent focus of the Complaint, a plaintiff must allege that defendant "willfully and without the consent of all parties to the communication, or in any *unauthorized manner*, read, or attempted to read, or to learn the contents or meaning of any message, report, or communication while the same was *in transit* or passing over

7

any wire, line, or cable, or was being sent from, or received at any place within California." *Mastel*, 549 F. Supp. 3d at 1136 (emphasis added) (quoting Cal. Penal Code § 631(a)).

### (a)     No Unauthorized Connection

Section 631 provides a cause of action only for "eavesdropping"—that is, "the secret monitoring of conversations by *third parties*." *Ribas v. Clark*, 38 Cal. 3d 355, 359, 696 P.2d 637 (Cal. 1985) (emphasis added). Plaintiff's CIPA claim is predicated entirely upon the theory that ActiveProspect qualifies as a "third-party" for purposes of any alleged communications that Plaintiff had with the Website Owner. (Compl. ¶¶ 22-27.) This claim lacks merit.

In *Graham v. Noom, Incorporated*, Judge Beeler addressed a similar theory that attempted to hold a vendor – similar to ActiveProspect – liable under Section 631 of CIPA, arguing that the vendor qualified as a "third-party" for purposes of CIPA. 533 F. Supp. 3d at 831. The court recognized that defendant Noom was using "a vendor that provides a software service" and there were "no allegations [] that [the vendor] intercepted and used the data itself." 533 F. Supp. 3d at 832. Accordingly, the court dismissed the CIPA claim at the pleading stage for failure to state a claim. *Id.* at 834; *see also Yale v. Clicktale, Inc.*, No. 20-cv-07575, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same).

The same result should be reached here. In this case, Plaintiff alleges only that "ActiveProspect offers a product to lead generators and telemarketers known as 'TrustedForm'" that records evidence of prior express written consent to be contacted by visitors to the Website. (Compl. ¶ 5.) The Website Owner – not ActiveProspect – installed the TrustedForm software on its Website. (*Id.* ¶¶ 2, 7.) There is no allegation that ActiveProspect used any information entered by Plaintiff for its own purposes.[4] (*See generally* Compl.) Instead, as Plaintiff herself alleges, ActiveProspect merely

---

[4] The Ninth Circuit's unpublished decision in *Javier v. Assurance IQ, LLC* has no application here, because in that case, the court specifically declined to address this question, given that it was not reached by the district court, which dismissed the case based on the website owner's privacy policy. No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e [] do not reach Defendants' other arguments, including whether . . . ActiveProspect is a third party under Section 631(a)").

1    provides a "tool" to aid the Website Owner in the conduct of its own business.[5] *Graham*, 533 F.

2    Supp. 3d at 832. Therefore, the CIPA claim should be dismissed on this ground alone.

3                    **(b)      No Interception While In Transit**

4            Courts in California have found that the second clause of CIPA "only imputes liability when

5    the defendant reads, or attempts to read, a communication that is '*in transit* or *passing* over any wire,

6    line, or cable, *or is being sent from, or received* at any place within' California."[6] *Mastel*, 549 F.

7    Supp. 3d at 1136; *see also Mireskandari v. Daily Mail*, No. 12-cv-02943, 2013 WL 12129559, *10

8    n.44 (C.D. Cal. Jul. 30, 2013) (finding that plaintiff had failed to plausibly allege CIPA claim under

9    second clause because complaint failed "plausibly to plead that [defendant] intercepted any

10   electronic communication while it was in transit; at most, he alleges the illegal disclosure of data

11   [defendant] held in storage").

12          In order for a "wiretap" to occur, a communication must be "intercepted" while it is "in

13   transit or passing over a wire, line or cable." Cal. Penal Code § 631(a). In interpreting Section 631,

14   courts have generally construed it "as coextensive with the [federal] Wiretap Act." *In re Vizio, Inc.,*

15   *Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (citing *Sunbelt Rentals,*

16   *Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *NovelPoster v. Javitch Canfield Grp.*,

17   140 F. Supp. 3d 938, 954 (N.D. Cal. 2014)); *see also* Electronic Communications Privacy Act of

18   1986, 18 U.S.C. §§ 2510-2523 ("Wiretap Act").

19

20

21   _____

     [5] Casting ActiveProspect into the role of third-party eavesdropper would be the equivalent of holding
22   a security camera manufacturer responsible for monitoring what occurs in its client's department
     store. ActiveProspect provides a tool and service to business owners and is not an uninvited
23   eavesdropper.

24   [6] The Third Circuit in *Popa v. Harriet Carter Gifts, Inc.*, 45 F. 4th –, No. 21-2203, 2022 WL
     3366425, at *3-5 (3d Cir. June 8, 2022), recently interpreted the definition of the term "intercept"
25   under Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") and
     reversed an award of summary judgment in defendants' favor. That case is inapposite here because
26   the appellate court relied upon specific statutory language in Pennsylvania's WESCA to reach its
     conclusion. It does not excuse Plaintiff's failure to allege interception entirely, and such failure
27   further supports dismissal of the CIPA claim.

28

                                                    9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In *Konop v. Hawaiin Airlines, Incorporated*, the Ninth Circuit held that for a communication "to be 'intercepted' in violation of the [federal] Wiretap Act, it must be acquired during transmission, not while it is in electronic storage." 302 F.3d 868, 878 (9th Cir. 2002). The Court in *Konop* explained that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* 630 (1985)).

Courts applying Section 631 and the federal Wiretap Act have acknowledged that, given the speed of modern internet communications, "the Wiretap Act's application to that form of electronic communication is undoubtedly limited."[7] *NovelPoster*, 140 F. Supp. 3d at 951 (dismissing Wiretap Act and Section 631 claims related to email communications). That is because internet communications, including email, travel so quickly that there is only an incredibly narrow window during which an interception could occur. *See id.* at 951-52. For example, numerous courts have held that while emails may be improperly accessed either on the originating or receiving end, they are not typically intercepted *during transmission. Id.*; *see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (granting summary judgment to defendants where "[t]he undisputed facts [ ] show that Defendants did not access, disclose, or use any emails that had been acquired during transmission. Rather, the emails Defendants viewed were stored on Gmail."); *see also Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) ("a qualifying 'intercept' under the [Wiretap Act] ... can only occur where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server"). The Ninth Circuit has confirmed that "the existing statutory framework is ill-suited to address modern forms of communication[.]" *Konop*, 302 F.3d at 874.

TrustedForm was deployed by the Website Owner itself on the Website; it is not possible for ActiveProspect to "intercept" any interactions with the users of the Website, and Plaintiff does not

---

[7] Again, while the Ninth Circuit in *Javier* recognized that "Section 631(a) applies to Internet communications" it did not address the requirement that a communication must be intercepted "in transit" and, as noted, the Ninth Circuit explicitly reserved decision on issues not addressed by the district court. 2022 WL 1744107, at *1-2.

allege that any such interception in transit occurred. (*Id.* ¶¶ 2, 7.) And, the TrustedForm patent makes clear that it does not intercept in-transit communications – instead, TrustedForm maintains a record of information provided by a website user only after that information was submitted to a website owner. (RJN Ex. 4 at Figures 1-4.)

Moreover, Plaintiff's own pleading confirms that there are no allegations of the "interception" of a communication in transit. The only time the word "intercept" even appears in the Complaint is in the class definition. (Compl. ¶ 32 ("Plaintiff brings this action … on behalf of herself and a Class defined as follows: All persons in California who: … (4) who had their electronic communications *intercepted* and/or recorded by ActiveProspect")). In fact, Plaintiff's own allegations underscore that there is no "interception" of a communication in transit. For example, Plaintiff alleges that "[t]he wiretaps are embedded in the computer code on C4R Media's websites and are used by Defendants to covertly observe and record visitors' keystrokes and clicks in real time." (Compl. ¶ 2.) Plaintiff also alleges that "[w]hen the TrustedForm script is *loaded on a page*, the HTML (technically the DOM) is *collected and stored*, as well as all the 'event data' such as mouse movements and clicks, and key presses, as well as changes to the DOM right up to the point the user leaves the page, which is typically upon submitting the form. Whatever the user does on the page is captured, including changes and corrections to the information entered in the form." (*Id.* ¶ 7 (emphasis added).) Plaintiff alleges that ActiveProspect "records," "collects," "captures," or "observes" but never alleges that it "intercepts." (*See generally* Compl.)

In the *Vizio* litigation, Judge Staton granted a defendant's Rule 12(b)(6) motion to dismiss the plaintiffs' federal Wiretap Act and Section 631 claims where the plaintiffs similarly made only conclusory allegations of an interception in transit. *See In re Vizio*, 238 F. Supp. 3d at 1227-28. There, the court held that:

> Plaintiffs have not articulated with sufficient clarity when Vizio supposedly intercepted their communications. Besides their conclusory allegation that Vizio intercepted their electronic communications "during transmission" . . . While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications.

*Id.* Here, as in *Vizio*, Plaintiff does not plausibly allege when or how ActiveProspect intercepted Plaintiff's communications. Instead, she recites the bare elements of the statute and uses legal terms of art without factual allegations that, if proven, could support her claim. That is insufficient and Plaintiff's Section 631 claim should be dismissed for failure to adequately plead interception.

### (c)     No Communication

In addition, Section 631(a) prohibits only the unauthorized access to the "content of communications," which "does *not* include record information regarding the characteristics of the message that is generated in the course of the communication such as the name, address and subscriber number or identity of a subscriber or customer." *Graham*, 533 F. Supp. 3d at 833 (emphasis added) (internal quotations omitted) (dismissing Section 631(a) claims to the extent it is predicated on non-content information); *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Content is "the intended message conveyed by the communication." *Id.*

Plaintiff alleges that ActiveProspect's software tool embedded by the Website Owner captured, "the date and time of the visit, the browser and operating system used by Williams during the visit, [] her geographic location[,]" and her "keystrokes and mouse movement and clicks[.]" (Compl. ¶¶ 22, 27.) None of this conduct, even if true, records the "content" of any communication. As the court recognized in *Graham*, all of these items are record information regarding the characteristics of a message and are not an intended message conveyed by communication. 533 F. Supp. 3d at 833. Plaintiff does not allege any contents of communication were intercepted; therefore, her claim must fail.

### 2.     Plaintiff Has Not Pled Use of a Telegraph or Telephone

Section 631(a)'s first clause makes unlawful, "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, . . . with any *telegraph or telephone wire, line, cable, or instrument*, including the wire, line, cable, or instrument of any internal telephonic communication system …" Cal. Penal Code § 631(a) (emphasis added).

California Courts have held the first prong is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables." *Mastel*, 549 F. Supp. 3d at 1135 (quoting *Matera*,

2016 WL 8200619, at *18). "While it is true that several federal courts interpreting the CIPA have held that the statute may apply to technologies beyond telephones or telegraphs, those holdings have largely been limited to the statute's *second* clause, which prohibits persons from reading, or attempting to read, the 'contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable' without consent or authorization." *Id.*; *see also In re Google Inc.*, 2013 WL 5423918, at *20 (explaining that the first prong of CIPA is "limited to communications passing over 'telegraphic or telephone' wires, lines, or cables"); *accord In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 799, 826 (N.D. Cal. 2020) ("Google Assistant") (holding that CIPA claim under first clause must be dismissed if allegations do not show that technology at issue "operates using telegraph or telephone wires").

Here, Plaintiff does not and cannot plead that ActiveProspect's conduct utilizes telegraph or telephone wires, lines, or cables. Instead, Plaintiff's claim arises entirely out of internet activity. (*See, e.g.*, Compl. ¶¶ 2, 5). Therefore, the first prong of CIPA does not apply to Plaintiff's claims.

### 3. Plaintiff Otherwise Fails to State a Claim under CIPA

Clauses 3 and 4 of Section 631(a) restrict any person from using, or attempting to use, "in any manner, or for any purpose, or to communicate in any way, any information so obtained or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a).

As set forth above, Plaintiff does not and cannot plead a claim under Clause 1 or 2 of CIPA Section 631(a); therefore, Plaintiff's claims under Clause 3 and 4 fail as a matter of law. *See Mastel*, 549 F. Supp. 3d at 1137 ("Because the court concludes that [plaintiff] has failed to state a claim under either clause 1 or 2, his claim that [defendant] violated § 631(a)'s third clause fails as a matter of law… Likewise, because [plaintiff] has failed to establish an underlying violation, [plaintiff] cannot maintain a claim against [defendant] under the fourth clause because none of the alleged conduct that [defendant] allegedly 'agreed to' or 'aided' violated § 631(a)."); *see also Google Assistant*, 457 F. Supp. 3d at 827. Therefore, Plaintiff's CIPA claim should be dismissed.

1

### 4.    Plaintiff Consented under CIPA

2

Finally, even if Plaintiff had otherwise stated a valid CIPA claim (and she has not), Section

3

631 of CIPA prohibits certain activities only where no consent has been given. Section 631 holds

4

liable anyone "who willfully *and without the consent of all parties to the communication*, *or in any*

5

*unauthorized manner*, reads, or attempts to read, or to learn the contents or meaning of any message,

6

report, or communication while the same is in transit or passing over any wire, line, or cable, or is

7

being sent from, or received at any place within this state . . . ." Cal. Pen. Code § 631(a).

8

"Where lack of consent is an express element of a claim, as is the case here, it must be alleged

9

in the complaint," and may be challenged on a motion to dismiss. *Garcia v. Enter. Holdings, Inc.*,

10

78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015). While Plaintiff alleges in her Complaint that she did

11

not consent (Compl. ¶¶ 13, 28, 46), "the Court need not accept as true any allegations contradicted

12

by matters properly subject to judicial notice or that are merely conclusory, unwarranted deductions

13

of fact, or unreasonable inferences." *Garcia*, 78 F. Supp. 3d at 1136 (internal quotations removed).

14

Here, the Website's Privacy Policy was conspicuously hyperlinked on the landing page of

15

the Website. (*See* RJN at Ex. 1.) It appears that consent was given to the Privacy Policy must be

16

consented to in order to access the next page, which requests the information Plaintiff alleges was

17

captured. (Compl. ¶¶ 23-26.) Through the Website's Privacy Policy, Plaintiff was on notice that the

18

Website used third-party technologies such as TrustedForm and that the Website "collect[s] your PII

19

when you otherwise agree to the terms of this Privacy Policy, but do not complete the applicable

20

registration process in full." (RJN at Ex. 3); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016,

21

1030 (N.D. Cal. 2014) (granting Yahoo's motion to dismiss claim under Wiretap Act because email

22

users agreed to terms of use and privacy policy); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d

23

1078, 1092 (N.D. Cal. 2018) (dismissing invasion of privacy claim where it was not reasonable to

24

expect geolocation data would not be shared with others). Plaintiff apparently first encountered the

25

landing page when navigating to the Website includes the disclaimer:

26

> By signing up, I agree to the FoundMoneyGuide Privacy Policy and
> Terms and Conditions and to receive daily email from

27

> FoundMoneyGuide, Fortifynance, Credit Card Committee, and
> Bethea which I can unsubscribe from at any time; I am over 18.

28

(RJN at Ex. 1.) The Privacy Policy is linked twice on this landing page, once in the disclaimer above the submit button, and again at the bottom of the page. (*Id.*) To continue to the next page of the Website, Plaintiff would have entered a valid email address and clicked the green "SEARCH FOR YOUR CASH" button. (*See id.*) Clicking this button manifests agreement to the terms available at the hyperlink, including the Privacy Policy. *See, e.g.*, *Greenberg v. Amazon.com, Inc.*, No. 20-CV-02782, 2021 WL 7448530, at *4 (N.D. Cal. May 7, 2021). According to Plaintiff, she entered the information alleged in the Complaint in Paragraphs 24-26, which would have occurred after agreeing to the Privacy Policy. Because Plaintiff consented to the Privacy Policy on the Website using TrustedForm and input her information to the web form, she has no valid CIPA claim.[8]

Further, Plaintiff cannot rely upon the Ninth Circuit's decision in *Javier* to avoid dismissal based upon her own provision of consent. In *Javier*, the Ninth Circuit held that a party cannot *retroactively* consent under CIPA, and instead, a defendant would need to secure express prior consent to recording of communications to use that privacy policy as a defense to CIPA claims. 2022 WL 1744107, at *5. Here, it appears Plaintiff's consent was obtained on the landing page of the Website prior to her entering any information alleged and depicted in the Complaint, and therefore the consent was not retroactive. (Compl. ¶¶ 23-26; *see* RJN Exs. 1-2.) Only Plaintiff's e-mail address could have been entered prior to securing consent, but Plaintiff does not allege that her e-mail address was captured or that any "wiretapping" of her email address took place. (*See generally* Compl.) Thus, dismissal of the CIPA claim ground because of Plaintiff's clear acceptance of the Privacy Policy is also appropriate.

---

[8] To the extent Plaintiff claims that she did not affirmatively consent to the Website's terms by clicking "SEARCH FOR YOUR CASH", that argument also fails. The terms of the Privacy Policy are binding, even if the Plaintiff did not review them, provided that the Website put "a reasonably prudent user on notice of the terms of the contract." *Garcia*, 78 F. Supp. 3d at 1137 (internal quotations and citations omitted). The Website did exactly that here, by providing two separate hyperlinks to the Privacy Policy.

1

2

**B.**   **Plaintiff Fails to State a Valid Claim for Unfair Competition Under California Business Professions Code**

3

4

To establish a defendant violated Unfair Competition Law ("UCL") under the California Business Professions Code Section 17200, a plaintiff must first demonstrate UCL standing, which is distinct from Article III standing. *Mastel*, 549 F. Supp. 3d at 1144. To establish UCL standing, a plaintiff must show more than an injury in fact:  she "must establish that [she] (1) suffered an injury in fact *and* (2) lost money or property as a result of the unfair competition." *Id.* (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009)) (emphasis added); *see also* Cal. Bus. & Prof. Code § 17204.

5

6

7

8

9

Plaintiff has not alleged any economic injury as a result of ActiveProspect's conduct. Plaintiff did not allege that her personal information has economic value. *See Mastel*, 549 F. Supp. 3d at 1144 ("Numerous courts have held that disclosure of personal information alone does not constitute economic or property loss sufficient to establish UCL standing, unless the plaintiff provides specific allegations regarding the value of the information.") Because Plaintiff has failed to plead any allegations concerning the economic value of the personal information allegedly obtained by ActiveProspect, the court should dismiss Plaintiff's claim for violations of the UCL.

10

11

12

13

14

15

16

17

**C.**   **Plaintiff Fails to State a Valid Claim for Invasion of Privacy Under the California Constitution**

18

19

"To establish a valid claim under the California Constitution's right to privacy, a plaintiff must first demonstrate three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Armstrong v. Allied Ins. Co.*, No. EDCV-14-0424, 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014). It is well settled that to get past the pleading stage on a motion to dismiss for such a claim, a plaintiff must pass a "high bar." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *see also Pioneer Elecs. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360, 370, 150 P.3d 198 (2007)). Plaintiff's Complaint does not meet that "high bar" because it fails to allege a valid, reasonable expectation of privacy in the information that Plaintiff elected to provide to the Website Owner or that ActiveProspect's conduct of "recording"

20

21

22

23

24

25

26

27

28

16

the entry of that information via its software tools employed by the Website Owner amounts to a serious invasion of a protected privacy interest. Even if she did, however, dismissal is still appropriate on the ground that Plaintiff voluntarily engaged with the Website.

### 1.    Plaintiff Has Not Adequately Pled That She Had a Reasonable Expectation of Privacy

A "reasonable" expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37, 865 P.2d 633 (1994). When deciding whether a plaintiff has met the pleading standard to assert a constitutional privacy claim, a court "must take into account any 'accepted community norms,' advance notice to Plaintiff . . ., and whether Plaintiff had the opportunity to consent to or reject the very thing that constitutes the invasion." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037 (citation omitted); *see also Gonzales*, 305 F. Supp. 3d at 1092 (finding no reasonable expectation of privacy in Plaintiff's geolocation data that Plaintiff "consented to the sharing of [] with perfect strangers (Lyft riders)"). Plaintiff's allegations must show that she conducted "herself in a manner consistent with an actual expectation of privacy, i.e., . . . she must not have manifested by . . . her conduct a voluntary consent to the invasive actions of defendant." *Id.* at 1037-38. In *Yahoo*, for example, the court found that there is no "legally protected privacy interest and reasonable expectation of privacy in emails as a general matter[.]" *Id.* at 1041.

Similarly here, Plaintiff could not have a reasonable expectation of privacy when she voluntarily input information into the a web form, such as on the Website. (*See* Compl. ¶¶ 22-26.) Plaintiff also consented to the Privacy Policy, which disclosed that third-party technologies were utilized to document interactions with the Website, and Plaintiff voluntarily inputted her information after consenting. Thus, Plaintiff's constitutional invasion of privacy claim should fail.

### 2.    Plaintiff Has Not Adequately Pled That ActiveProspect's Conduct Amounts to a Serious Invasion of a Protected Privacy Interest

Moreover, Plaintiff does not (and cannot) validly allege that the use of TrustedForm amounted to a "serious invasion" of her privacy. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an *egregious*

17

*breach* of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill*, 7 Cal. 4th at 26, 37). Thus, the alleged breach must not be slight or trivial in nature. *Hill*, 7 Cal. 4th at 37. "Even disclosure of personal information, including social security numbers, does not constitute an egregious breach of the social norms to establish an invasion of privacy claims." *Low*, 900 F. Supp. 2d at 1025 (citations omitted); *see In re iPhone Application Litig.,* 844 F. Supp. 2d at 1064 ("Here, the information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices. Even assuming this information was transmitted without Plaintiffs' knowledge and consent, a fact disputed . . . such disclosure does not constitute an egregious breach of social norms."); *Ruiz v. Gap, Inc*., 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) *aff'd*, 380 Fed. App'x. 689 (9th Cir. 2010) (holding that the theft of a retail store's laptop containing personal information, including the social security numbers, of job applicants did not constitute an egregious breach of privacy and therefore was not sufficient to state a valid claim under the California Constitutional right to privacy); *Mastel*, 549 F. Supp. 3d at 1142 (dismissing claim for invasion of privacy under the California Constitution because allegations that defendant may have access to personal contact information and the like "simply do not approach the sort of 'egregious' or 'highly offensive' conduct which courts have typically permitted to proceed beyond the motion to dismiss stage").

Here, there is nothing offensive or egregious about the use of TrustedForm software tool on the Website to verify consumers' responses and consent to be contacted in compliance with various privacy laws – a purpose that Plaintiff explicitly pleads. (Compl. ¶ 5 ("[The TrustedForm] product is designed to allow . . . lead generators and telemarketers to attempt compliance with the federal Telephone Consumer Protection Act by documenting alleged evidence of prior express consent to receive telemarketing calls provided on websites.") Given such allegations in the Complaint, Plaintiff does not, and cannot, allege that the Website's use of TrustedForm lacked a legitimate business purpose. Thus, Plaintiff does not and cannot plead that ActiveProspect's provision of its software was a highly offensive, egregious breach of the social norms. *See, e.g.*, *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993, 125 Cal. Rptr. 3d 260 (Cal. Ct. App. 2011) ("[W]e

have found no case which imposes liability based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the *use* of plaintiff's information was highly offensive."); *Mitchell v. Regional Serv. Corp.*, No. C 13-042212-JSW, 2014 WL 12607809, at *5 (N.D. Cal. Apr. 23, 2014) (holding that trespassing onto plaintiff's property and observing personal activities of plaintiff did not amount to a serious invasion of privacy because defendant had legitimate business and legal reason for doing so); *Phillips v. Archstone Simi Valley LLC*, No. 15-cv-5559, 2016 WL 400100, at *9 (C.D. Cal. Feb. 1, 2016) (dismissing invasion of privacy claim because plaintiff failed to allege how purported intrusions were egregious and serious in nature). The mere observation and confirmation of information (even if accepted as personal) is not sufficient to satisfy the requirement for alleging the highly offensive, egregious conduct required to state a valid claim for invasion of privacy. Thus, Plaintiff's invasion of privacy claim fails as a matter of law and should be dismissed.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, ActiveProspect respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety. Further, because Plaintiff cannot amend her Complaint to assert viable causes of actions, given her own allegations to date, the documents referenced in her Complaint, and judicially noticeable documents, the dismissal should be with prejudice.

MEMORANDUM OF POINTS AND AUTHORITIES

1

DATED: September 12, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ *Becca J. Wahlquist*

Becca J. Wahlquist (SBN 215948)
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901
bwahlquist@kelleydrye.com

Lauri A. Mazzuchetti (*Pro Hac Vice forthcoming*)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
lmazzuchetti@kelleydrye.com

*Attorneys for Defendant ActiveProspect, Inc.*

CASE NO. 3:22-CV-03780-WHA

MEMORANDUM OF POINTS AND AUTHORITIES

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that, on September 12, 2022, I electronically filed the foregoing

3

DEFENDANT ACTIVEPROSPECT, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT

4

TO FED. R. CIV. P. 12(B)(6) with the United States District Court for the Northern District of

5

California by using the CM/ECF system, which will send a notice of filing to all registered users,

6

including counsel for all parties.

7

DATED: September 12, 2022

Respectfully submitted,

8

*/s/ Becca J. Wahlquist*

9

Becca J. Wahlquist (SBN 215948)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21