Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison, Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Loretta Williams**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**What If Holdings, LLC**, d/b/a **C4R Media Corp.**, and **ActiveProspect, Inc.**,<br><br>Defendants. | Case No. 3:22-cv-03780-WHA<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND/OR DISMISS**<br><br>Date: Dec. 14, 2022<br>Time: 8:00 a.m.<br>Courtroom: 12 |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.  INTRODUCTION..................................................................................................1

II. BACKGROUND ...................................................................................................1

III. ARGUMENT .........................................................................................................2

    A.  WIH Did Not Adequately Notify Or Obtain Assent From Williams Or The Class Members To Support Enforcement Of Its Website Terms, Including The Clause Mandating Arbitration.......................................................................2

    B.  ActiveProspect Is Not Entitled To Enforce Arbitration As A Non-Signatory Third Party To The Supposed Hybridwrap Agreement WIH Seeks To Enforce. ...................................................................................................................6

    C.  Plaintiff Has Adequately Stated Her Claims For Relief To Survive A Motion To Dismiss.............................................................................................................8

        1.  Plaintiff did not consent to the wiretapping at issue...............................9

        2.  Plaintiff has adequately stated a claim for relief against Defendants for violation of CIPA's wiretapping prohibitions. .......................................11

            *Interception of Transmission*..............................................................11

            *Content of Communication* ................................................................14

            *ActiveProspect's Involvement*............................................................15

        3.  Plaintiff has stated a claim for relief for invasion of privacy pursuant to the California Constitution. ..............................................................18

IV. CONCLUSION ...................................................................................................20

# **TABLE OF AUTHORITIES**

*Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019).........................4

*Arnold v. Arnold Corp.—Printed Comms. For Bus.*, 920 F.2d 1269 (6th Cir. 1990).....................8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................9

*Berman v. Freedom Fin. Network, LLC*, Case No. 18-cv-01060-DMR,

      2018 WL 2865561 (N.D. Cal. June 11, 2018) ["*Berman I*"]..................................................3

*Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR,

      2020 WL 5210912, (N.D. Cal. Sept. 1, 2020) ["*Berman II*"].....................................3, 4–5

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)....................................................................8

*Bradley v. Google, Inc.*, No. C 06-05289 WHA,

      2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ...................................................................12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000)................................3

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................................9

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014).........................................3

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................16, 17, 18

*Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106 (9th Cir. 2019) ....................................................9

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) .......................18–19, 20

*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 539 (9th Cir. 2020).......12, 18, 19, 20

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ..............................................................14

*Javier v. Assurance IQ, LLC*, No. 21-16351,

      2022 WL 1744107 (9th Cir. May 31, 2022) ...............................................................10–11

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013)................................................7, 8

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021)..............................................12, 13

*Matera v. Google Inc.*, No. 15-CV-04062-LHK,

      2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .................................................................12

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ...........................................................................9

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ...........................................3, 4, 10

*Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)...........................................................17, 20

*Ribas v. Clark*, 38 Cal. 3d 355, 696 P.2d 637 (1985) ..........................................................17, 18

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) ...........................................................17

*Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 85 Cal.Rptr.2d 909, 978 P.2d 67 (1999) ...............19

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021) ...............................................................................18

*Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO,
    2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ......................................................................4

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) .............................................3

*Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 583 P.2d 737 (1978) ...........................................16–17

*United States v. Reed*, 575 F.3d 900 (9th Cir. 2009) .....................................................................14

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021).........................................18

**STATUTES, RULES, SECONDARY SOURCES**

Cal. Bus. Prof. Code § 17200, *et seq.* .............................................................................................8

Cal. Penal Code § 631, *et seq.* .............................................................................................. *passim*

1

## I.    INTRODUCTION

This case challenges Defendants What If Holdings, LLC, d/b/a C4R Media Corp.'s ("WIH") and ActiveProspect, Inc.'s ("ActiveProspect") (collectively "Defendants") violations of the California Invasion of Privacy Act, Cal. Penal Code 631 ("CIPA"). Specifically, Plaintiff alleges that Defendants have conspired and engaged in serial wiretapping of the electronic communications of visitors to WIH's websites. In response to Plaintiff's complaint, WIH has filed a motion to compel arbitration and/or dismiss Plaintiff's complaint (dkt. 25), and ActiveProspect has likewise moved to dismiss for failure to state a claim. (Dkt. 26.) However, none of the arguments presented in the motions wins the day—the purported arbitration agreement is not enforceable against Williams by either WIH or ActiveProspect because she did not manifest assent to the "sign-in wrap" terms and conditions on WIH's website. Further, Plaintiff has adequately stated claims for relief against Defendants for violating CIPA by wiretapping communications. As such, and as explained further below, the Court should deny both WIH's motion to compel or dismiss and ActiveProspect's motion to dismiss in their entirety.

## II.    BACKGROUND

On June 27, 2022, Williams filed her Complaint, alleging that WIH and ActiveProspect violated the CIPA by wiretapping Plaintiff's communications on the WIH website and alleging that they thereby also violated California's constitutional right to privacy and unfair competition law. (*See* Compl., dkt. 1 at ¶¶ 1–3, 13–14.) As will be proven at the appropriate time following necessary discovery, Plaintiff seeks to certify a class action on behalf of all consumers who, like Plaintiff, made communications to WIH through its websites that were unlawfully intercepted or recorded without consent. (*Id.* ¶¶ 30, 32.) To redress Defendants' unlawful conduct, Plaintiff seeks statutory damages for herself and the class, as well as injunctive relief requiring Defendants to cease their practice of wiretapping electronic communications without consent. (*Id.* ¶ 31.)

In response to Plaintiff's Complaint, Defendants have each filed motions—WIH filed a motion to compel arbitration or dismiss, and ActiveProspect filed a motion to dismiss. (Dkt. 25,

26.) In support of its motion, WIH submitted a Declaration of Ben Zitter, WIH's chief compliance

officer. (Dkt. 25-1.) In his declaration, Zitter sets forth a screenshot of WIH's

claim.foundmoneyguide.com website, which shows an email address input page with a button that

reads "SEARCH FOR YOUR CASH." (*Id.* at ¶ 4.) In the smallest font on the page, barely legible

in WIH's own screenshot when zoomed to 400%, the website states that by "signing up," a person

agrees to a privacy policy and terms and conditions, which seem to be hyperlinked. (*Id.*) Zitter

states that Plaintiff could not have proceeded further in the website without clicking the

"SEARCH FOR YOUR CASH" button, and he further contends that Williams "affirm[ed] her

assent" to the hyperlinked policy and terms by pressing the button. (*Id.* at ¶¶ 8–9.) Relevant to

WIH's motion are two provisions that appear in the terms and conditions and privacy policy

respectively: the first is a purported agreement by both parties that any disputes related to the

website or its terms and condition would be submitted to arbitration. (*Id.* ¶ 6.) The second

provision, from WIH's privacy policy, reads as follows:

> Where you provide "prior express consent" within the meaning of the Telephone
> Consumer Protection Act (47 USC § 227), . . . you understand and agree that we
> may use a third party vendor to record and store your registration and consent for
> compliance purposes. Please note that you are not required to provide this consent
> in order to obtain access to the offerings, and your consent simply allows us to
> contact you via these means.

(*Id.* ¶ 7.) Shortly after Defendants filed their individual motions, ActiveProspect filed to join

WIH's motion to compel as a non-signatory seeking to uphold the purported agreement to

arbitrate. (Dkt. 29.)

## III.   ARGUMENT

### A.   WIH Did Not Adequately Notify Or Obtain Assent From Williams Or The Class Members To Support Enforcement Of Its Website Terms, Including The Clause Mandating Arbitration.

Defendant WIH's motion to compel asks the Court to subject Plaintiff's claims to

mandatory arbitration, along with threshold issues of arbitrability. (Dkt. 25 at 4–12.) However, as

a prerequisite to any attempt to enforce arbitration, the Court must first determine whether an agreement to arbitrate was entered in the first place. WIH has submitted the Zitter Declaration in an attempt to evince such an agreement, but the screenshots included with the declaration do just the opposite—WIH's website did not provide Plaintiff with adequate notice of the terms to which it now seeks to bind her, and the site likewise did not obtain assent to those terms.

In general, the Federal Arbitration Act ("FAA") embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Berman v. Freedom Fin. Network, LLC*, Case No. 18-cv-01060-DMR, 2018 WL 2865561, at *1 (N.D. Cal. June 11, 2018) [hereafter *Berman I*] (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)). Arbitration is a matter of contract, but because the FAA leaves courts with little discretion to preside over matters covered by a valid agreement to arbitrate, "[t]he court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at *1 (N.D. Cal. Sept. 1, 2020) [hereafter *Berman II*] (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014)) (emphasis in original). Even in the context of internet commerce, the basic principles of contract law remain the same: a mutual manifestation of assent "is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *see also Berman I*, 2018 WL 2865561, at *4 ("There is no contract until there is mutual consent of the parties.").

Broadly speaking, internet contracts often fall into one of two categories: clickwrap agreements, where users are required to click on an "I Agree" box after being presented with terms and conditions; and browsewrap agreements, where terms and conditions are posted via hyperlink at the bottom of a webpage. *Nguyen*, 763 F.3d at 1175–76. In some cases, websites present a hybrid of these two categories (sometimes referred to as "hybridwrap" or "sign-in wrap"

agreements) by notifying the user of the existence of terms of conditions and, "instead of providing an 'I agree' button, advis[ing] the user that he or she is agreeing to the terms of service when registering or signing up." *Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995, at *3 (N.D. Cal. Sept. 2, 2021); *see also Berman II*, 2020 WL 5210912, at *2. In *Nguyen*, the Ninth Circuit considered a hybrid agreement, to which it applied browsewrap principles:

> Courts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website.
> . . .
> But where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage.

*Nguyen*, 763 F.3d at 1176–77 (citations omitted). The "Terms of Use" link was presented near a button to proceed with checkout, but "the proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice." *Id.* at 1178. The same issues of notice and assent applicable to browsewrap agreements are determinative for hybrid agreements:

> Courts typically "will give effect to hybridwrap terms where the button required to perform the action manifesting assent … is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms." "The more the hybridwrap design diverges from this basic layout—such as by placing the notice further away from the action button, cluttering the screen with potentially distracting content, or omitting the language explicitly saying that by performing action the user agrees to be bound by the terms—the less likely courts are to find that inquiry notice has been provided."

*Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213, at *4 (N.D. Ill. June 28, 2019) (citations omitted). The same logic was applied in *Berman II*, where the Court found that the defendant failed to meet its burden to demonstrate assent to terms where "[t]here is no tickbox or 'I agree' button for the Terms & Conditions," and "[a]lthough the user must interact with the page and click a button to continue using it, that click is completely divorced from an expression of assent

to the Terms & Conditions or to mandatory arbitration." *Berman II*, 2020 WL 5210912, at \*3. The Court likewise found that the formatting undercut notice and assent, as the font indicating the existence of terms and conditions was "exceedingly small compared to the larger, more colorful and high-contrast fonts on the rest of the page, making it difficult to read on a large, high-resolution monitor, much less a mobile device." *Id.*

Here, WIH contends by declaration that Plaintiff "affirm[ed] her assent" to the hyperlinked policy and terms by pressing the clicking the "SEARCH FOR YOUR CASH" button on its website. (Dkt. 25-1 at ¶ 9.) The website layout as demonstrated in WIH's screenshot is similar to that analyzed in *Berman II*. The webpage contains a number of statements in large, bold, yellow and red fonts set on a black background; below the bolded fonts is a grey box containing the heading "CONFIRM YOUR EMAIL" and a large, green "SEARCH FOR YOUR CASH" button. (*Id.* at ¶ 4.) Between the heading and large button, in small, dark grey font—barely legible in WIH's screenshot when zoomed to 400%—is the statement "By signing up, I agree to the FoundMoneyGuide Privacy Policy and Terms and Conditions and to receive daily email from FoundMoneyGuide, Fortifynance, Credit Card Committee, and Bethes which I can unsubscribe from at any time. I am over 18." (*Id.*) This layout would be considered a "hybrid" or "sign-in wrap" presentation of terms and conditions, but there is no admonition or notice to consumers that they must review the terms, nor is there any indication that clicking the "SEARCH FOR YOUR CASH" button constitutes assent to the terms. As in *Berman II*, it is apparent that a website user must click the large "SEARCH FOR YOUR CASH" button to continue, but that click is divorced from an expression of assent to the terms, and otherwise does not indicate that a user has "signed up" such that the terms may be applied to them. Further, the hyperlinks to the terms and conditions and privacy policy appear in blue font, but they are otherwise contained in the smallest font on a page otherwise cluttered by larger, distracting content. Together, all of these formatting elements prevent WIH's website from adequately achieving notice or assent to its purported "sign-in wrap" agreement.

1        In an attempt to enforce its alleged form agreement to arbitrate, WIH has provided a

2  website screenshot that features hyperlinks to terms and conditions in the smallest, least

3  conspicuous font on the page; the text states that by "signing up" a user agrees to the terms, but

4  there is no check box or button manifesting notice of or assent to the terms—there is only a large,

5  green "SEARCH FOR YOUR CASH" button below the text. But as the Ninth Circuit held in

6  *Nguyen*, proximity is not enough. The hyperlinked terms and conditions are not conspicuous to

7  support a finding of notice, and the nearby button to proceed with the website does not indicate

8  assent or acknowledgement of the terms. As such, WIH did not provide Williams or other users

9  with adequate notice of its terms (including the mandatory arbitration clause), and likewise

10  Williams could not and did not manifest assent to those terms. Without adequate notice and a

11  manifestation of assent, there is no enforceable agreement to arbitrate Plaintiff's claims.

12  Accordingly, WIH's Motion to compel arbitration should be denied.

13      **B.**    **ActiveProspect Is Not Entitled To Enforce Arbitration As A Non-Signatory**

14               **Third Party To The Supposed Hybridwrap Agreement WIH Seeks To**

15               **Enforce.**

16        Following Defendants' filing of their respective motions, ActiveProspect filed joinder of

17  WIH's motion, asserting that Plaintiff's claims against ActiveProspect should also be decided in

18  arbitration. (Dkt. 29 at 2.) To be sure, and as detailed above, Williams did not agree to arbitrate

19  any claims—WIH has failed to meet its burden to demonstrate notice and assent, as the webpage

20  provided did not properly notify Plaintiff or other visitors of the terms and conditions and did not

21  properly produce assent to the terms. Nevertheless, even if the Court were to find that Plaintiff

22  entered an agreement to arbitrate her claims against WIH (she did not), ActiveProspect cannot

23  enforce the arbitration clause as a non-signatory third party to the purported agreement.

Under California law,[1] a non-signatory may enforce an arbitration agreement as a function of the doctrine of equitable estoppel, applicable under two circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, . . . and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (citations omitted) (alterations in original). In either of the two circumstances, the claims at issue must be intimately related to obligations set forth in the agreement:

> In *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause.* In other words, allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement

*Id.* at 1133 (emphasis in original). In other words, equitable estoppel only applies when the signatory to a valid agreement containing an arbitration clause must rely on the terms of the agreement in asserting its claims against the non-signatory. *Id.* at 1129.

ActiveProspect cites to *Kramer* in support of its assertions, but it does not argue that Plaintiff's claims against ActiveProspect rely upon the terms of the WIH's purported terms and conditions. Indeed, it cannot do so—Plaintiff's claims are based on the California Constitution and California statutes. She has not asserted any breach of contract, and in fact disputes the

---

[1] "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

existence of any alleged agreement between herself and WIH. While she may have alleged concerted misconduct between Defendants, this alone is "not enough" to support equitable estoppel for a non-signatory to enforce arbitration against her. *See Kramer*, 705 F.3d at 1133. This is not an attempt by Williams to "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties." (Dkt. 29 at 2) (citing *Arnold v. Arnold Corp.—Printed Comms. For Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990)). Rather, Plaintiff asserts that no such agreement exists, and that, as explained above, WIH did not adequately notify Plaintiff of the terms by which it now seeks to bind her, and it did not obtain a manifestation of her assent to any such terms.

In short, Plaintiff did not enter into an agreement to arbitrate her claims against WIH. Even if she had done so, her claims against ActiveProspect are not "intimately connected" with any obligations established by the terms and conditions that WIH contends are applicable to this case. Plaintiff's claims against Defendants are independent of any supposed agreement containing an arbitration clause—and, in fact, no such enforceable agreement exists. Accordingly, ActiveProspect's joiner in the motion to compel is fruitless, and the Court should likewise reject the attempt to compel Plaintiff to arbitrate her claims against ActiveProspect.

### C.   Plaintiff Has Adequately Stated Her Claims For Relief To Survive A Motion To Dismiss.

In addition to seeking to compel arbitration (to which Plaintiff did not agree), Defendants ask the Court to dismiss each of Plaintiff's various claims. (Dkt. 25 at 12–21; Dkt. 26 at 7–19.) As explained below, Defendant's arguments for dismissal fail—Plaintiff did not consent to Defendants' wiretapping of her communications, and she has adequately stated claims for relief under California law.[2] Further, in the event the Court finds that Plaintiff lacks allegations as to

---

[2] With respect to Plaintiff's second cause of action, brought under California's Unfair Competition Law, CAL. BUS PROF. CODE § 17200, et seq., Plaintiff concedes that she did not experience a loss of money or property to support standing for said claim. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).

any particular claim for relief, Plaintiff should be granted leave to amend her complaint as necessary. Put simply, Defendants' motions to dismiss should be denied.

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 555. In ruling on a motion to dismiss, the court's task is to test the legal sufficiency of claims: "a claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  In making the determination, the court must accept all factual allegations and draw every reasonable inference from those facts in favor of the non-moving party. *Id.*; *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019).

### 1.    Plaintiff did not consent to the wiretapping at issue.

WIH's first argument for dismissal is based on the contention that Williams "consented" to the conduct at issue in this case. (Dkt. 25 at 12–13.) Its brief consent argument is based upon WIH's privacy policy and the same sign-in wrap agreement with which it seeks to compel Plaintiff to arbitrate her claims. But WIH's argument fails in the same way that it does for arbitration, in addition to failing as a result of the policy's own language.

 First, the privacy policy by which WIH hopes to bind Williams was presented in the same manner as the terms and conditions—by a hyperlink hidden in small font above a large "SEARCH FOR YOUR CASH" button. (Dkt. 25-1 at ¶ 9.) WIH again contends that Plaintiff "manifested her assent" to the terms by visiting the webpage and clicking the button, but the analysis above is applicable here as well. WIH's own screenshot demonstrates that the hyperlinks to terms and conditions are featured in the smallest, least conspicuous font on the page, with no admonition to review the terms and no check box or button manifesting notice of or assent to the terms. The hyperlinks are merely in close proximity to the large, green "SEARCH FOR YOUR

CASH" button below the text, but "proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice." *Nguyen*, 763 F.3d at 1178. There is no indication that pressing the "SEARCH FOR YOUR CASH" button manifests assent to the hyperlinked terms and conditions. As such, just as Plaintiff did not agree to binding arbitration, she did not agree to be bound by WIH's privacy policy.

Nevertheless, even if the Court were to find that Williams was both adequately notified of the terms and manifested assent thereto, the terms of the privacy policy defeat WIH's claim for prior consent to the wiretapping. The relevant portion, as excerpted by WIH in its motion, reads as follows:

> **Where you provide "prior express consent" within the meaning of the Telephone Consumer Protection Act** (47 USC § 227), and its implementing regulations adopted by the Federal Communications Commission (47 CFR § 64.1200) . . . you understand and agree that we may use a third party vendor to record and store your registration and consent for compliance purposes.

(Dkt. 25 at 12) (citing Dkt. 12-1 at ¶ 7) (emphasis added). By the policy's own terms, consent to the recording of a consumer's registration occurs when the consumer provides prior express consent for TCPA purposes. WIH contends that Plaintiff agreed to these terms on the page "prior to reaching the Website's TCPA consent page," but as the terms specify, the purported agreement to record her terms is not applicable until she provides TCPA consent. (*See* Dkt. 25 at 13.) Plaintiff's contention is that her communications with WIH's TCPA page were wiretapped—the page on which she would provide TCPA consent. That is, before she provided any TCPA consent (and thus before the purported consent to recording would occur), Defendants began recording her keystrokes and wiretapping her communications with WIH's website. Put another way, if Williams had reached the page on which they could provide TCPA consent and chose not to provide any such consent, Defendants would have already been recording her keystrokes and mouse clicks and the communication she was making to WIH—even though no TCPA consent would have been provided.

This scenario resembles that in *Javier*, where the Ninth Circuit held that prior express

consent—not retroactive consent—was required for wiretapping, and just as was the case here, "ActiveProspect was recording [Plaintiff's] information as [s]he was providing it" and before any supposed consent was effectively obtained. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022). Here, Defendants began recording Plaintiff's communications before she consented for TCPA purposes, which, according to WIH's own privacy policy, was a prerequisite to any agreement to record.

As explained above, WIH's website presents a hybridwrap agreement that is not sufficient to establish an enforceable agreement—Plaintiff was not adequately notified of the terms, and her interaction with a "SEARCH FOR MY CASH" button did not amount to a manifestation of assent to unknown terms. Thus, Plaintiff did not agree to be bound by WIH's privacy policy. Further, even if the privacy policy were to apply to her actions, the policy's terms reveal that Defendants began recording Plaintiff's communications before the point at which any consent would have been effective. Accordingly, Plaintiff did not consent to the wiretapping conduct at issue in this case.

### 2.    Plaintiff has adequately stated a claim for relief against Defendants for violation of CIPA's wiretapping prohibitions.

Defendants first seek dismissal of Plaintiff's CIPA wiretapping claim, contending for various reasons that her claim cannot proceed. Defendants broadly seek to discredit the claim in three ways: they argue (1) that the recording of Williams' activity and submission on WIH's website does not quality as a wiretap or interception subject to CIPA; (2) that the recording was not "content of communications" made by Plaintiff; and (3) that ActiveProspect's involvement in the recording should be considered a tool used by WIH, rather than a third party wiretapping the communications. As explained below, each of these arguments lacks weight, and Plaintiff has adequately stated a claim on which she should be permitted to proceed.

***Interception of Transmission***

The first basis by which Defendants seek dismissal of Plaintiff's CIPA claim is that there

was supposedly no "interception" of a communication in transit passing through a wire or cable. Both Defendants contend that the conduct at issue lacked a telegraph or telephone wire or instrument, and ActiveProspect argues that the communications were not intercepted during transmission. Neither of these arguments wins the day.

First, as noted in the complaint, Section 631(a) of CIPA is not limited to phone lines. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (finding that CIPA applies to "new technologies," including email and similar internet communication technologies); *Bradley v. Google, Inc.*, No. C 06-05289 WHA 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (finding that CIPA applies to interception of "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 539, 606–09 (9th Cir. 2020) (reversing dismissal of CIPA claims based on Facebook's collection of consumers' internet browsing history). The "paramount objective of the [Electronic Communications Privacy Act, which amended the Wiretap Act] is to protect effectively the privacy of communications," and the plain language of CIPA was drafted broadly to apply to wiretapping performed with "any machine, instrument, or contrivance, or in any other manner," and to communications transmitted "over any wire, line, or cable." *Id.* at 608; CAL. PENAL CODE § 631(a).

Defendants eagerly cite to *Mastel* to highlight a distinction between treatment of the first and second clauses of Section 631(a)—that application of CIPA to electronic, non-telephonic communications has occurred as a function of the second clause (for willfully and without consent reading or attempting to learn the contents of a communication in transit) rather than the first clause (for intentionally tapping any telegraph or telephone wire, line, cable, or instrument). *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). This distinction is of little use here, where Plaintiff has made allegations to support a violation of the second clause of Section 631(a), including that Defendants "lack prior express consent" to read or attempt to read or learn the communications transmitted by Plaintiff and the Class. (*See* Dkt. 1 at ¶¶ 1–2, 22–27,

45–46.) Each of the four clauses in Section 631(a) are distinct bases for liability; Plaintiff need not plead violation of multiple subsections to maintain a claim against Defendants. (*See id.* ¶ 42.) Further, WIH's attempt to liken the facts of this case to *Mastel* are fruitless, as *Mastel* concerned a mobile application accessing the copy and paste clipboard of a cellphone. (Dkt. 25 at 14) (citing *Mastel*, 549 F. Supp. 3d at 1136). The information in *Mastel* was, at most, former communications in a pasteboard that were not "in the process of being sent or received", wholly distinguishable from Plaintiff's communications, which were in the process of being transmitted to WIH while they were recorded. *See Mastel*, 549 F. Supp. 3d at 1136.

Second, ActiveProspect's assertion that there was no "interception" of communication while being sent is flawed. CIPA's second clause prohibits attempts to read or learn the contents of a communication "while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within [California]." CAL. PENAL CODE § 631(a). Here, Plaintiff has plainly alleged that, while she was transmitting her personal information to WIH, her keystrokes and clicks were being recorded by ActiveProspect, a third party to whom she was not transmitting her information. (*See* Dkt. 1 at ¶¶ 21–28.) Williams alleges that the recording and interception "began the moment [she] and other members of the alleged Class visited the webpage," and continued until at least the moment when she appeared to click on the "CLAIM YOUR CASH!" button. (*Id.* ¶¶ 26, 28.) During the recording, Plaintiff was sending and communicating her information to WIH, and her actions and the content of her communication were simultaneously being recorded by ActiveProspect without her knowledge. ActiveProspect would have the Court believe that Plaintiff did not allege interception because she used words like "record," "collect," "capture," and "observe" with more frequency than "intercept." (*See* Dkt. 26 at 11. Leaving aside that the word "intercept" does not even appear in Section 631(a) of CIPA, Plaintiff has alleged unlawful interception, regardless of what words were used—Defendants' surreptitious recording of Williams' communication with WIH's website "in real time" amounts to interception. (*See* Dkt. 1 at ¶ 2.)

Plaintiff has alleged that Defendants worked together to intercept her communications as she made them to WIH. The fact that her communications took place over the internet rather than a phone does not disqualify her from CIPA protection—the law has been applied to modern technology, and it should apply with equal force here. Likewise, though the word "intercept" may not have been used as often as ActiveProspect would like, Plaintiff has alleged interception of the communications while they were in the process of being sent to WIH. If the word "intercept" is in fact required to appear with greater frequency in Williams' allegations, she should be permitted to amend her complaint.

### *Content of Communication*

Defendants next argue that Plaintiff's CIPA claim fails because they contend that the information intercepted amounts only to record information, rather than the contents of Plaintiff's communication. Record information, as opposed to the contents of a message, is "data that is incidental to the use of a communication device and contains no 'content' or information that the parties intended to communicate." *United States v. Reed*, 575 F.3d 900, 916 (9th Cir. 2009); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (describing record information as "information regarding the characteristics of the message that is generated in the course of the communication"). Thus, whether a piece of data is record information is determined in relation to the medium of communication, and it is distinct from the intended message. *Id.*

Defendants cite to several cases in which, for example, name, email address, and phone number data were found to be record information. (Dkt. 25 at 15; Dkt. 26 at 12.) Such data can be record information, particularly in cases regarding communications transmitted via phone or email, but that is not the case here. As Plaintiff alleges, her communication with WIH consisted of the submission and confirmation of Williams' personal information in order to receive some offering. (Dkt. 1 at ¶¶ 21–27.) Plaintiff's personal information and details included in the screenshots provided in the complaint were not "incidental" to her use of the website—they were, in fact, the contents of her communication with WIH. The "record information" incidental to her

visit to the website, as noted in the complaint, include "the date and time of the visit, the browser and operating system used by Williams during the visit, and her geographic location." (*Id.* ¶ 22.) Plaintiff did not intend to communicate that information to WIH; rather, it was generated as a result of the medium of communication and merely detailed characteristics of her communication. Her personal information—name, address, date of birth, and phone number—was the content of her communication with WIH, and the message she intended to communicate. The mere fact that such types of data may be record information in other cases does not necessarily make them so here. By Defendants' logic, divulging personal information such as name or address could never be protected, even if it were the sole content and purpose of a communication.

Defendants' position is untenable. Phone numbers and email addresses may be record information when related to phone calls and email exchanges, but they are not categorically excluded from being "contents" of a communication. Plaintiff communicated with WIH, and the content of her message included her name, address, date of birth, and phone number. The record information in this instance was the date and time of her visit, browser information, and geographic location—not the very information that she intended to convey to WIH. Accordingly, Defendants' arguments that only record information was recorded or intercepted is without merit.

### *ActiveProspect's Involvement*

The final basis for dismissal that Defendants argue is that ActiveProspect supposedly does not qualify as a third party that intercepted or tapped the communications between Plaintiff and WIH—according to Defendants, the use of ActiveProspect's "TrustedForm" software to record Plaintiff's communications should be treated akin to a party to the communications using a tape recorder, rather than a third-party eavesdropper. Defendants' argument is predicated on logic that would completely nullify the fourth clause of CIPA's Section 631(a), and otherwise the issue of whether ActiveProspect may be treated as a tape recorder or an eavesdropper is a factual question best answered after discovery.

The fourth clause of Section 631(a) imposes liability on anyone who "aids, agrees with,

1   employs, or conspires with any person" to engage in "any of the acts or things" prohibited by the

2   previous three clauses of the section. CAL. PENAL CODE § 631(a). Thus, if ActiveProspect is liable

3   for willfully learning the contents of Plaintiff's communication while it was transmitted to WIH,

4   then WIH may be held liable for employing or conspiring with ActiveProspect to do so—Plaintiff

5   has alleged precisely that scenario. (Dkt. 1 at ¶¶ 45–47) ("[WIH] partnered with (and conspired

6   with) ActiveProspect to achieve the unlawful conduct described herein."). Though

7   ActiveProspect's code was implemented on WIH's website, Plaintiff alleged sufficient details to

8   demonstrate that ActiveProspect is an independent third party that collects and stores the

9   recordings at issue. (*See id.* ¶¶ 5–12, 29) ("All TrustedForm videos are hosted on

10  ActiveProspect's servers, and to access the videos one must follow a hyperlink provided by

11  ActiveProspect. Moreover, ActiveProspect independently collects and stores information

12  provided by web users on the websites of its clients.") Taken as true, these factual allegations are

13  sufficient to state a claim that ActiveProspect is liable as an independent third party that

14  intercepted Plaintiff's communications (in violation of § 631(a)'s second clause) and WIH is

15  liable for agreeing or conspiring with ActiveProspect to do so (in violation of § 631(a)'s fourth

16  clause).

17       Defendants cite *Graham* in support of their contention that ActiveProspect is not a third

18  party wiretapper but "simply a vendor" of software "equivalent [to] a tape recorder," and that

19  "ActiveProspect merely provides a 'tool'" and does not use the information for its own purposes."

20  (Dkt. 25 at 17; Dkt. 26 at 8–9) (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal.

21  2021). These contentions are flawed in several ways. First, the notion that a third party can

22  secretly record communications as long as it does not "use the information for its own purposes"

23  contradicts the several bases of liability established by the plain text of CIPA—Section 631(a)

24  imposes liability "for three distinct and mutually independent patterns of conduct: [1] intentional

25  wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in

26  transit over a wire, and [3] attempting to use or communicate information obtained as a result of

27

28  RESPONSE IN OPPOSITION TO MOTIONS        16
    TO COMPEL ARBITRATION, DISMISS

1    engaging in either of the previous two activities," with a fourth basis of liability for agreeing or

2    conspiring with another to do any of the above. *See Tavernetti v. Superior Ct.*, 22 Cal. 3d 187,

3    192, 583 P.2d 737 (1978). While the use of Plaintiff's intercepted communications could provide

4    for another, independent basis of liability under the third clause, Plaintiff need not plead usage of

5    the information to state a claim under the second or fourth clauses of Section 631(a).

6          Second, *Graham* is distinguishable because the Court therein found that the plaintiff had

7    not alleged that the third party "intercepted and used the data itself." *Graham*, 533 F. Supp. at

8    823. Here, Plaintiff need not plead usage to state a claim for interception, but she has alleged that

9    ActiveProspect tapped her communications and that it "independently collects and stores

10   information provided by web users on the websites of its clients," like WIH. (Dkt. 1 at ¶ 29.)

11   Williams has alleged sufficient facts to state claims for relief under two clauses of Section 631(a),

12   regardless of whether ActiveProspect "used" her information in some unknown way; if it did, she

13   could assert an additional claim for liability, but it is not required for the claims she has set forth.

14         Defendants' theory that § 631(a) should permit website owners like WIH to hire third

15   parties to secretly record user communications would "vitiate the statute's protections" if adopted:

16   the statute plainly assigns liability to third parties who record a conversation, as well as to parties

17   to a conversation that engage the third party to do so. *See, e.g.*, *Saleh v. Nike, Inc.*, 562 F. Supp.

18   3d 503, 520 (C.D. Cal. 2021) (rejecting defendants' argument "that any third party who

19   surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as

20   it was recording the conversation at the direction and for the benefit of a party"). An eavesdropper

21   who is employed or authorized by one party to intercept or record a communication is always

22   doing so at the direction of said party—this does not prevent liability. *Id.* at 520–21 (citing

23   *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct.

24   23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications

25   with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling [a

26   third party's] wrongdoing."); *Ribas v. Clark*, 38 Cal. 3d 355, 358–62, 696 P.2d 637 (1985)

27

28   RESPONSE IN OPPOSITION TO MOTIONS          17
     TO COMPEL ARBITRATION, DISMISS

1    (holding attorney liable for eavesdropping on conversation at the direction of his client).

2        The California Supreme Court has often emphasized the "express objective" of CIPA—to

3    protect a person making communications from a situation where the person on the other end of

4    the line "permits an outsider to . . . listen in." *Ribas*, 38 Cal. 3d at 364; *see also Smith v. LoanMe,*

5    *Inc.*, 11 Cal. 5th 183, 200 (2021) (noting distinction between secondhand repetition of a

6    conversation and "simultaneous dissemination to an unannounced second auditor, whether that

7    auditor be a person or mechanical device"). The Ninth Circuit has similarly held that wiretapping

8    statutes are designed "to prevent the acquisition of the contents of a message by an unauthorized

9    third-party or 'an unseen auditor.'" *In re Facebook*, 956 F.3d 589, 608 (9th Cir. 2020). The Court

10   in *Graham* found that the plaintiff lacked allegations to suggest that the third party was an

11   eavesdropper, rather than a provider of a tool akin to a tape recorder. *Graham*, 533 F. Supp. at

12   832–33. Here, Plaintiff has alleged that ActiveProspect is an independent third party that recorded

13   her communications with WIH's website (at the behest of WIH) and collected and stored such

14   information—these allegations support the reasonable inference that ActiveProspect was a third

15   party eavesdropping on a conversation, not a tape recorder.

16       Ultimately, whether ActiveProspect is more akin to a tape recorder or an eavesdropper "is

17   a question of fact for a jury, best answered after discovery into the storage mechanics of" its

18   system. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). At this stage

19   of the pleadings, Plaintiff has met her burden to allege and elevate her right to relief above the

20   speculative level. Taken in a light most favorable to the Plaintiff, as must be done a motion to

21   dismiss, Plaintiff's allegations adequately state claims for relief under CIPA, and Defendants'

22   motions to dismiss should be denied.

23              **3.    Plaintiff has stated a claim for relief for invasion of privacy pursuant**

24                      **to the California Constitution.**

25       Finally, Defendants argue that Plaintiff has not adequately stated a claim for invasion of

26   privacy under the Constitution of California. To plead a privacy violation under the California

27

28   RESPONSE IN OPPOSITION TO MOTIONS          18
     TO COMPEL ARBITRATION, DISMISS

Constitution, a plaintiff must allege (1) a legally protected privacy interest, (2) a reasonable expectation of privacy, and (3) an intrusion constituting an egregious breach of social norms. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (quoting *In re Facebook*, 956 F.3d at 601 (9th Cir. 2020)). These elements are simplified as: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Hart*, 526 F. Supp. 3d at 600. A reasonable expectation of privacy depends on "examination of customs, practices, and physical settings," as well as "the opportunity to be notified in advance and consent to the intrusion." *Id.* Expectations of privacy are not absolute, but nuanced—for example, "[t]he mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." *Id.* (quoting *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 916, 85 Cal.Rptr.2d 909, 978 P.2d 67 (1999)). The degree of intrusion is a similarly nuanced question, but while the bar may be set high to qualify as "highly offensive" or "egregious," the ultimate question of whether practices 'could highly offend a reasonable person is an issue that cannot be resolved at the pleading stage.'" *Hart*, 526 F. Supp. 3d at 602 (quoting *In re Facebook*, 956 F.3d at 606).

Here, Plaintiff has alleged a reasonable expectation of privacy surrounding her browsing activities and dissemination of personal information, including the expectation that she may do so "without observation or interference" and "without being subjected to secret wiretaps." (Dkt. 1 at ¶ 59.) The fact that she elected to share her information with WIH in order to take advantage of an offering does not mean that it is reasonable for such information to be shared with unknown third parties that WIH may employ to record keystrokes and mouse movements on its website. Further, WIH could have notified Williams of its intent and properly obtained consent before her communications were wiretapped, but, as explained above, WIH's failed to provide adequate notice or obtain consent by hiding its terms and policies on an ineffective "sign in wrap" agreement page. Likewise, Plaintiff has alleged that the practice engaging unknown auditors to secretly monitor her activity on a website and record her personal information is "serious in

nature" and should be seen as an egregious breach of social norms. (*See id.* ¶ 61.) Defendants cite to several cases in which certain internet privacy invasions did not amount to a violation of the California Constitution, but there are likewise several cases in this District where allegations of surreptitious monitoring of various internet browsing activity and history were sufficient to state a claim for invasion of privacy. *See, e.g.*, *Hart*, 526 F. Supp. 3d at 600–03 (monitoring of location data by weather app); *Revitch*, 2019 WL 5485330, at *3 (monitoring of mouse clicks, keystrokes, identity and browsing data); *In re Facebook*, 956 F.3d at 601–06 (compiling of personalized profiles from browsing histories and habits).

Defendants may disagree that the alleged wiretapping of Williams' communications, including monitoring her keystrokes and mouse movements and recording her identity information, constitutes an "egregious" breach of social norms, but the issue cannot and should not be resolved at the pleadings stage. *In re Facebook*, 956 F.3d at 606. Plaintiff has met her burden to plead her claims above the speculative level, and, when taken as true, her factual allegations support the reasonable inference that Defendants' conduct amounts to an invasion of privacy actionable under the California Constitution. As such, the Court should deny Defendants' motions to dismiss and permit this matter to proceed.

## IV.   CONCLUSION

Defendants' motions to compel arbitration and dismiss Plaintiff's claims should be denied. Plaintiff was not given adequate notice of—and did not manifest assent to—WIH's website privacy policy and terms, including the purported arbitration mandate, and thus there is no agreement to arbitrate to enforce against Plaintiff. Likewise, Plaintiff cannot be said to have consented to the wiretapping at issue because she did not have notice of or manifest assent to WIH's privacy policy, and the policy itself states that consent is established when TCPA consent is given, which is after Defendants began intercepting Williams' communications and activity. Further, Plaintiff has met her burden in pleading claims for relief under both Section 631(a) of CIPA and the California Constitution. Accordingly, the Court should deny Defendants' motions,

permit the parties to proceed, and award any such relief as it deems necessary and just.

Respectfully submitted,

Dated: October 3, 2022

**LORETTA WILLIAMS**, individually and on behalf of all others similarly situated,

By: /s/  *Patrick H. Peluso*

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison, Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Attorneys for Plaintiff and the Class*

* *Pro Hac Vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on October 3, 2022.

*/s/ Patrick H. Peluso*