**KELLEY DRYE & WARREN LLP**
Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
Victor J. Sandoval (SBN 344461)
vsandoval@kelleydrye.com
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile:  (213) 547-4901

**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*Pro Hac Vice*)
lmazzuchetti@kelleydrye.com
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile:  (973) 503-5950

*Attorneys for Defendant ActiveProspect, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LORETTA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WHAT IF HOLDINGS, LLC d/b/a C4R Media Corp., and ACTIVEPROSPECT, INC.,<br><br>Defendants. | Case No. 3:22-cv-03780-WHA<br><br>Assigned to Hon. William Alsup<br><br>**ACTIVEPROSPECT, INC.'s REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing: December 14, 2022<br>Time: 11:00 a.m.<br>Location: Courtroom 12, 19th Floor |

## **Table of Contents**

I.      INTRODUCTION ................................................................................................ II

II.     PLAINTIFF'S CIPA CAUSE OF ACTION SHOULD BE DISMISSED.............1

        A.      Plaintiff Has Not Adequately Pled That ActiveProspect Functioned as
                a Third-Party Eavesdropper Making an Unauthorized Interception ...........2

                1.      It is not "eavesdropping" when a party records its own
                        communications...................................................................................2

                2.      Caselaw from this District Illustrates Why Dismissal Is
                        Required. ............................................................................................4

                3.      Plaintiff's CIPA Caselaw Supports ActiveProspect's Motion to
                        Dismiss. ..............................................................................................5

        B.      Plaintiff Has Not Adequately Alleged That ActiveProspect
                Intercepted Plaintiff's Website Interactions while in Transit......................8

        C.      Plaintiff Did Not Adequately Allege That Her Communications
                Involved Content (Instead of Record Information)....................................10

        D.      Plaintiff Consented To The Recording Of Her Submitted Data ................11

        E.      Plaintiff Should Not Be Permitted An Opportunity To Amend Her
                Complaint .................................................................................................12

III.    PLAINTIFF'S UCL CAUSE OF ACTION SHOULD BE DISMISSED.............13

IV.     PLAINTIFF'S PRIVACY CAUSE OF ACTION SHOULD BE
        DISMISSED. .............................................................................................13

V.      ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE COMPELLED
        TO ARBITRATION......................................................................................14

VI.     CONCLUSION ................................................................................................15

ACTIVEPROSPECT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 2

*Brown v. General Steel Domestic Sales, LLC*,
    2008 WL 2128057 (C.D. Cal. May 19, 2008) ........................................................ 15

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
    2020 WL 3869186 (N.D. Cal. July 9, 2020) .......................................................... 15

*In re Facebook*,
    956 F. 3d 589 (9th Cir. 2020) ......................................................................... 5, 6, 8, 14

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (Cal. App. 2011) ............................................................... 14

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................... *passim*

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................ 14

*Johnson v. Blue Nile, Inc.*,
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................................................. 3, 4, 8, 12

*Johnson v. Blue Nile, Inc.*,
    2021 WL 3602214 (N.D. Cal. Aug. 13, 2021), appeal dismissed, 2022
    WL 510374 (9th Cir. Feb. 11, 2022) .................................................................. 12

*Konop v. Hawaiian Airlines, Incorporated*,
    302 F.3d 868 (9th Cir. 2002) ............................................................................ 9, 10

*Kramer v. Toyota Motor Corp.*,
    705 F.3d. 1122 (9th Cir. 2013) ............................................................................ 15

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................................... 7, 14

*Mireskandari v. Daily Mail*,
    2013 WL 12129559 (C.D. Cal. Jul. 30, 2013) ....................................................... 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT ACTIVEPROSPECT, INC.'S REPLY IN SUPPORT OF MOTIONS TO DISMISS

*Phillips v. Archstone Simi Valley LLC*,
    2016 WL 400100 (C.D. Cal. Feb. 1, 2016)................................................................. 14

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..............................................5, 6, 8, 14

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985).................................................................................................... 2, 6

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975)......................................................................................2, 3, 8

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ................................................................... 6, 7, 8

*Smith v. LoanMe, Inc.*,
    11 Cal. 5th 183 (2021) ........................................................................................................ 6

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................... 9, 10

*Yale v. Clicktale, Inc.*,
    2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ......................................................... 3, 4

*Yale v. Clicktale, Inc.*,
    2021 WL 4025797 (N.D. Cal. Aug. 24, 2021)............................................................. 12

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................... 5, 7

**Statutes**

California Penal Code § 631 ...........................................................................*passim*

California Penal Code § 632.7 ............................................................................... 6, 7

California Privacy Act ................................................................................................ 9

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 1

Federal Rule of Civil Procedure 41 ..................................................................... 7

Telephone Consumer Protection Act.................................................................. 5

DEFENDANT ACTIVEPROSPECT, INC.'S REPLY IN SUPPORT OF MOTIONS TO DISMISS

## I.    **INTRODUCTION**

In her Opposition, Plaintiff concedes that her UCL claim fails because she suffered no economic harm.  *See* Opp. [Dkt. 36] at 8 n.2 ("Plaintiff concedes that she did not experience a loss of money or property to support standing for said claim.").  Thus, Plaintiff agrees that her Second Cause of Action should be dismissed, and with prejudice.

Plaintiff's Opposition focuses instead on attempting to salvage her First and Third Causes of Action, brought under Section 631(a) of CIPA and the California Constitution.  However, as detailed in ActiveProspect's Motion [Dkt. 26], her Complaint fails to allege adequate facts to survive a Rule 12(b)(6) challenge.  Indeed, Plaintiff admits that she knew information was being captured (since she was electing to provide that information on the Website), but alleges that she did not know that it was being captured in a manner that kept track of the *timing* of her provision of information and her progress through the web form.  Plaintiff's theory that recording of pauses, keystrokes, and clicks constitutes illegal "wiretapping" under the California penal code seeks an improper extension of CIPA, which does not apply to a software tool used by a Website operator to **record activity on its own website** that Plaintiff opted to provide in a web form.[1]  Given the facts alleged, and the on-point case law that Plaintiff fails to address, Plaintiff cannot assert a viable CIPA claim of surreptitious wiretapping by ActiveProspect's TrustedForm web tool.

Finally, because Plaintiff had no reasonable expectation of privacy in the information she provided on the Website, and there is no egregious breach of privacy rights here, the Constitutional privacy claims also fail as a matter of law.

## II.    **PLAINTIFF'S CIPA CAUSE OF ACTION SHOULD BE DISMISSED**

Plaintiff concedes that she has no claim under CIPA's first clause (which only applies

---

[1] Further, as What If Holdings, LLC ("WIH" or the "Website Owner") points out in its Motion, the Website's Privacy Policy that Plaintiff accepted before entering any information contained an express provision providing: "you understand and agree that we may use a third party vendor **to record and store your registration and consent for compliance purposes**."  *See* WIH MTD [Dkt. 25] at 12-13.  This prior consent alone dooms her CIPA and Constitutional privacy claims.

to communications made over telegraph or telephone), *see* Opp. [Dkt. 36] at 12, and instead banks on CIPA's second clause, which makes it unlawful to eavesdrop by "willfully and without consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state."  Cal. Penal Code § 631(a). However, Plaintiff has not adequately alleged a primary violation of CIPA's second clause for the reasons detailed in ActiveProspect's Motion and further addressed below.  This failure means that her CIPA claims fail, even if her factual allegations are taken as true, because it is not plausible that ActiveProspect would be liable under this statute given the facts alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## A.    Plaintiff Has Not Adequately Pled That ActiveProspect Functioned as a Third-Party Eavesdropper Making an Unauthorized Interception

### 1.    It is not "eavesdropping" when a party records its own communications.

A party to a communication "does not violate § 631 by recording the communication." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897–99 (1975) (party using a tape recorder did not violate section 631); *Ribas v. Clark*, 38 Cal. 3d 355, 360 n.3 (1985) (*Rogers* "held, correctly, that section 631 does not penalize the secret recording of a conversation by one of the participants.").  "[A] party to a communication can record it (and is not eavesdropping when it does)." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).  Plaintiff does not contest this black-letter law.  Instead, Plaintiff repeatedly argues that because she says ActiveProspect is a "third-party" "independent" of any websites that use TrustedForm, Defendants' reliance on the "party exception" is defeated. *See* Opp. [Dkt. 36] at 15-18. She is wrong.

ActiveProspect's TrustedForm is not an "independent third-party" in the same way

that a tape recorder or security camera is not an independent third-party: the TrustedForm program is a tool that offers the Website Owner a way to record an objective, neutral verification of what happened when a user filled out a web form on the Website Owner's webpage. *See* MTD [Dkt. 26] at 3. ActiveProspect is not "independent" because it does not use the consumer data collected for its own purposes, and Plaintiff does not allege otherwise. *See id.* (citing Compl. [Dkt. 1] ¶¶ 5, 7, 8-11, 12; RJN Exs. 2, 4).  Indeed, Plaintiff recognizes that ActiveProspect works solely on behalf of the websites to which it provides services. *See* Compl. [Dkt. 1] ¶¶ 5-10; *see also* MTD [Dkt. 26] at 3-4.  Plaintiff's own allegations show that ActiveProspect's recording tool functioned as an extension of the Website and helped the Website Owner monitor activity on its own website, *see, e.g.,* Compl. [Dkt. 1] ¶¶ 5–12, 29; MTD [Dkt. 26] at 7-9, i.e., it was acting analogously to the tape recorder in *Rogers* in the online context. *See Rogers*, 52 Cal. App. 3d at 898–99.  Thus, Plaintiff has failed entirely to allege facts making it more likely than not that ActiveProspect was eavesdropping on her communications.  *See Graham*, 533 F. Supp. 3d at 832 (a legally independent service provider was not a "third party that [was] liable for eavesdropping" under § 631).

Plaintiff argues that in collecting and storing recordings via TrustedForm, ActiveProspect is somehow providing more than a tape recorder.  *See* Opp. [Dkt. 36] at 16 (citing Compl. [Dkt. 1] ¶¶ 5–12, 29). Under this logic, if the tape recorder in *Rogers* were offered online and recordings were stored on the cloud using another party's servers, the service storing the recording for the website user would have violated CIPA.  That makes no sense.  Plaintiff provides no legal (or logical) rationale for basing CIPA liability on a company's choice of which functionally-equivalent tool it uses to accomplish the same result. It is unsurprising, therefore, that the well-reasoned decisions from this district have not found the "independent third-party" label dispositive.  Courts instead have looked to what that software is alleged to do. *See Graham*, 533 F. Supp. 3d at 832-33; *see also, e.g.*, *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) ("Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at

\*1 (N.D. Cal. Apr. 8, 2021) ("The plaintiff does not plausibly plead that FullStory eavesdropped on her communications with Blue Nile and pleads only that FullStory is Blue Nile's vendor for software services.").

**2.      Caselaw from this District Illustrates Why Dismissal Is Required.**

This Court should decline Plaintiff's invitation to expand California's wiretapping laws and, should instead, follow the well-reasoned opinions from this district that also rejected attempts to shoehorn Internet technologies into wiretapping statutes so as to put the $5,000 per communication statutory damages at issue. [2] *See Graham*, 533 F. Supp. 3d at 832; *Yale*, 2021 WL 1428400, at \*3; *Johnson*, 2021 WL 1312771, at \*3.

Plaintiff's Opposition does not mention, let alone distinguish, *Yale* or *Johnson*. She does address *Graham*, arguing that case is distinguishable because she alleges that ActiveProspect is an "independent third party" and that ActiveProspect "collected and stored" recordings of her interactions with the Website. Opp. [Dkt. 36] at 18 (citing *Graham*, 533 F. Supp. 3d at 832-33). However, just like Plaintiff here, the *Graham* plaintiff claimed the service provider was an "independent" third party, and the *Graham* Court correctly found the CIPA cause of action meritless on its face. *Graham*, 533 F. Supp. 3d at 831-33. And just like ActiveProspect's TrustedForm in this case, the software in *Graham* operated solely for the website owner's benefit. *Compare id*. at 828 *with* Compl. [Dkt. 1] ¶¶ 5–12, 29. The *Graham* Court thus held that the provider was not a third party for purposes of Section 631.

---

[2] Indeed, as this Court may be aware, starting with this June 7, 2022, CIPA complaint, there has been a recent explosion of litigation claiming "wiretapping" on websites, and seeking class-wide section 631(a) CIPA damages of $5,000 per communication for alleged website "eavesdropping".   These litigations target companies in all industries:  just in the past month, putative class action CIPA claims have been brought in California federal courts against Meta Platforms (N.D. Cal. Case no. 3:22-cv-05267), Uniqlo USA (S.D. Cal. Case no. 3:22-cv-01490, Papa John's (S.D. Cal. 3:22-cv-01492), Dickey's BBQ Pit Inc. (S.D. Cal. Case no. 3:22-cv-01502), Bath and Body Works (S.D. Cal. 3:22-cv-01528), Alaska Airlines (S.D. Cal. Case no. 3:22-cv-01525), and American Airlines (S.D. Cal. Case no 3:22-cv-01524).  In all, as of the date of this filing, there appear to have been at least forty-five (45) CIPA putative class actions filed after this Complaint asserted its novel theory of purported liability under CIPA.

*Graham*, 533 F. Supp. 3d at 832-33. As in *Graham*, Plaintiff here fails to allege that ActiveProspect "used" her data. *See id*. Plaintiff's allegation that ActiveProspect "record[s]" website activity and "collects and stores the recordings at issue", *see, e.g.*, Opp. [Dkt. 36] at 15, 16 (citing Compl. [Dkt. 1] ¶¶ 5-12, 29), only confirms that TrustedForm is an internet-era recording device that helps clients document TCPA compliance. *See* MTD [Dkt. 26] at 2-3 (citing RJN Ex. 2; Compl. [Dkt. 1] ¶ 5).

Notably, after the *Graham* dismissal, the plaintiff there was given leave to attempt to amend the class action complaint to plead a viable CIPA cause of action. The judge again dismissed the complaint—this time with prejudice.  The *Graham* Court noted, "[i]n short, Noom uses FullStory's 'session replay' software to watch what its users are doing," and found that "FullStory is not a third-party wiretapper because it is not an outsider and instead is a software vendor that provides a service that allows Noom to analyze its own data." *See Graham v. Noom*, Case No. 3:20-cv-06903-LB, Dkt. 79 (8/13/21 Order) at 2.  There are no allegations here (nor could there be) that ActiveProspect is recording communications in order to sell data or use data in any way other than to allow the Website Owner to review the submission of data on its webforms.  Instead, as Plaintiff recognizes, ActiveProspect is a software vendor that provides a service that allows the Website Owner to review "session replays" to protect itself against claims that data was not actually provided by consumers; indeed, the Complaint specifically acknowledges that the TrustedForm product is designed to allow businesses such as the Website Owner here "to attempt compliance with the federal Telephone Consumer Protection Act by documenting alleged evidence of prior express consent to receive telemarketing calls provided on websites."  Compl. [Dkt. 1], ¶ 5.  Thus, ActiveProspect is not an eavesdropper.

### 3.   Plaintiff's CIPA Caselaw Supports ActiveProspect's Motion to Dismiss.

The primary cases that Plaintiff relies on to argue that ActiveProspect is an independent third-party eavesdropper instead cuts against her claim.  *See* Opp. [Dkt. 36] at 17 (citing *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021);

1    *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019); *In re*

2    *Facebook*, 956 F. 3d 589, 608 (9th Cir. 2020); *Ribas*, 38 Cal. 3d at 358–62; *Smith v. LoanMe,*

3    *Inc*., 11 Cal. 5th 183, 200 (2021); *Saleh v. Nike, Inc*., 562 F. Supp. 3d 503, 520–21 (C.D.

4    Cal. 2021)).

5        For example, although Plaintiff argues that there is no requirement that the alleged

6    independent third-party "use the information for its own purposes" to have CIPA liability

7    (*see* Opp. [Dkt. 36] at 16-18), Plaintiff cites authority that found otherwise.  Plaintiff relies

8    on *In re Facebook* to argue that she need not plead "use" of the wiretapped data, but in

9    finding viable CIPA allegations there, the court specifically noted that Facebook was alleged

10   to have "compile[d] [users'] browsing histories into personal profiles which are sold to

11   advertisers to generate revenue." 956 F. 3d at 596.  Similarly, in *Revitch*, the plaintiff's

12   theory was that the alleged eavesdropper "captured [his] data, de-anonymized it, and

13   matched it with other databases, thereby creating marketing databases of identified website

14   visitors." *Graham*, 533 F. Supp. 3d at 832 (citing *Revitch*, No. 18-cv-06827-VC, Second

15   Am. Compl., Dkt. 43 at 2 (¶ 1), 4–17 (¶¶ 9–46).).   There are no such allegations of

16   transmission to third-party marketers here as in *In re Facebook* or *Revitch*, nor could there

17   be, given Plaintiff's knowledge of the purpose of TrustedForm's recordings, which is to

18   assist the Website Owner with establishing ***its own*** compliance with federal laws.  *See*

19   Compl. [Dkt. 1] at ¶¶ 5-12.

20        Similarly, *Smith v. LoanMe, Inc*.'s discussion of the "distinction between secondhand

21   repetition of a conversation and 'simultaneous dissemination to an unannounced second

22   auditor, whether that auditor be a person or mechanical device'" is irrelevant here. Opp.

23   [Dkt. 36] at 18 (quoting 11 Cal. 5th at 200 (in turn quoting *Ribas*, 38 Cal. 3d  at 360-61)).

24   The *Smith* case concerned the proper interpretation of Section 632.7—not Section 631—and

25   Section 632.7 is limited in reach to communications between "two cellular radio telephones,

26   a cellular radio telephone and a landline telephone, two cordless telephones, a cordless

27   telephone and a landline telephone, or a cordless telephone and a cellular radio telephone".

28   *Compare* i*id. with* Cal. Penal Code § 631 ("any telegraph or telephone wire, line, cable, or

instrument, including the wire, line, cable, or instrument of any internal telephonic communication system"). Section 632.7, like the first clause of Section 631, is limited in scope to telephones and similar devices and, as discussed below, Plaintiff concedes she is not alleging wiretapping of a telephone or similar device. *See* Section II.B.1; *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021).

Plaintiff's reliance on *Yoon* to argue that ActiveProspect's tool is less like a tape recorder than an eavesdropper fares no better. Opp. [Dkt. 36] at 18. In *Yoon*, the plaintiff alleged that Quantum Metric's software "interpret[ed plaintiffs'] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081. The court there found this allegation sufficiently distinguishable from the software tool at issue *Graham*, where the defendant merely captured and stored, and did not otherwise use, analyze or resell, the user's data. *Id.* (citing *Graham*, 533 F. Supp. 3d at 833–34).[3] Unlike *Yoon*, there is no allegation here that ActiveProspect interprets or analyzes the data its tool captures and stores. Thus, unlike in *Yoon*, Plaintiff has not made sufficient allegations to survive a motion to dismiss—nor has she indicated how she might amend her complaint in order to do so.

Finally, Plaintiff relies on *Saleh v. Nike, Inc.*—a decision that ActiveProspect respectfully submits was wrongly decided. 562 F. Supp. 3d 503. In *Saleh*, a recently-appointed Central District judge reasoned that interpreting the statute as *Graham* did "would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party," thereby "vitiat[ing] the statute's protections." *Id.* at 520; *see also* Opp. [Dkt. 36] at 17 (arguing the same). After the motion to dismiss was denied, the defendant, Nike, asked the judge to stay the action pending a Ninth Court decision and while the court was considering that motion to stay, the plaintiff dismissed the action pursuant to

---

[3] In *Graham*, FullStory's session replay services "allow[ed] the clients to analyze their data", but FullStory was not alleged to have analyzed the data itself. *Id.*

Rule 41, so that the *Saleh* decision was never reviewed.  *See Saleh v. Nike, Inc.*, No. 2:20-cv-09581 (C.D. Cal. Feb 2, 2022), Dkt. 81.[4]

Moreover, the *Saleh* Court's reasoning is not the logical conclusion of the argument. Section 631 operates where the alleged eavesdropper is actually acting independently of a party (*e.g.*, acting not just "for the benefit of a party," *Saleh*, 562 F. Supp. 3d at 520, but also for its own benefit)—as *Revitch* and *In re Facebook* demonstrate. But where, as here, the alleged third party (ActiveProspect) is doing only what the party to the communication (the Website Owner) directs, then that purported third party is nothing more than "an extension" of the party and cannot be liable under a statute concerned only with non-party recording. *Graham*, 533 F. Supp. 3d at 832.  ActiveProspect's TrustedForm tool helps users document consent for purposes of complying with the TCPA and other regulations—it is not alleged to be tracking consumers across the internet or making its own use of consumer data.  *See, e.g.,* Compl. [Dkt. 1] ¶ 5.  In sum, ActiveProspect's alleged actions are simply "different than the acts that courts hold plausibly support a claim of surreptitious wiretapping by a third party."  *Graham*, 533 F. Supp. 3d at 832.  Thus, dismissal under 12(b)(6) is required.

## B.   Plaintiff Has Not Adequately Alleged That ActiveProspect Intercepted Plaintiff's Website Interactions while in Transit

As to another required element of a Section 631 claim—interception of the communication—Plaintiff claims that because she alleges that ActiveProspect records her interactions with the Website "in real time", she has alleged an unlawful "interception".  Opp. [Dkt. 36] at 13 (citing Compl. [Dkt. 1] at ¶ 2).  This assertion, again, misreads CIPA's requirements.  As discussed below, courts in this district have dismissed identical allegations involving session replay tools, and Plaintiff has failed to plausibly allege interception in transit.

A business does not intercept a communication "in transit" when it records and stores

---

[4] The *Johnson* decision dismissing CIPA claims regarding session replay had been appealed by plaintiff to the Ninth Circuit; however, that appeal was dismissed.  *See Johnson v. Blue Nile, Inc.*, No. 3:20-cv-08183 (N.D. Cal. Feb. 11, 2022), Dkt. No. 75.

certain pieces of data being supplied by the consumer. *Rogers*, 52 Cal. App. 3d at 898 ("a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received."); *Konop v. Hawaiian Airlines, Incorporated*, 302 F.3d 868, 878 (9th Cir. 2002) (interception require acquisition "during transmission, not while it is in electronic storage.")  As Plaintiff's Complaint acknowledges, ActiveProspect's TrustedForm simply records and stores an interaction as it is taking place on a website at the behest of the website owner. *See* Compl. [Dkt. 1] ¶¶ 5-12, 29.  This is done for the purpose of assisting the Website Owner to prove what took place during the web session, so that the Website Owner may comply with the TCPA and other consumer protection statutes that require proof of consent.  *See* MTD [Dkt. 26] at 3; RJN Ex. 2; Compl. [Dkt. 1] ¶ 5.  As ActiveProspect explained in its motion, this is not the "interception of communications in transit" that the statute is meant to reach.

If Plaintiff could allege that ActiveProspect had agents truly listening in to the "communication"—i.e., watching the website visit—she then might be able to plausibly allege a Section 631 violation.  But merely recording and storing information is not reading or learning or listening—it is storing. [5]  *See, e.g., Mireskandari v. Daily Mail*, 2013 WL 12129559, at *10 n.44 (C.D. Cal. Jul. 30, 2013).  Plaintiff does not (and cannot) allege that ActiveProspect is performing simultaneous computational assessment of the communication, or that ActiveProspect is gathering anything from the information that TrustedForm is recording.  Because Plaintiff's own website interactions are only alleged to have been recorded and stored—not intercepted in transit—that should be the end of this CIPA claim. *See* Section II.A.1.a; MTD [Dkt. 26] at 10-11 (citing Compl. [Dkt. 1] ¶¶ 2,7; RJN Ex. 4 at Figures 1-4).

---

[5] The words "store" or "record" do not appear in the portion of Section 631 as prohibited behavior that qualifies as eavesdropping, although those words feature prominently in other portions of the California Privacy Act. *See also e.g., In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226 (C.D. Cal. 2017) ("Access to information maintained in electronic storage is governed by the Stored Communications Act, while the Wiretap Act regulates access to information acquired contemporaneously to its transmission.") (citing *Konop*, 302 F.3d at 878).

1   Tellingly, while ActiveProspect discussed in depth the "interception" analysis from

2   *Konop*, *In re Vizio*, and other cases (*see* MTD [Dkt. 26] at 9-12), all of which decisions held

3   that finding interception in transit claims requires more than holding recordings in storage,

4   Plaintiff **simply ignores** this caselaw and does not address or distinguish it.  Two of the

5   cases Plaintiff failed to rebut are key: first, *Konop* dismissed transmission interception

6   allegations where contemporaneously recorded data was stored and that data was later

7   accessed and disclosed.  302 F.3d at 872–75, 876, 878-89.  Plaintiff alleges that the Website

8   Owner uses ActiveProspect to contemporaneously recorded user interactions with its own

9   website and the Website Owner accesses it later. Compl. [Dkt. 1] ¶¶ 2, 5-12.  As in *Konop*,

10  this alleged conduct cannot sustain a claim for interception of communications in transit.

11  Second, *In re Vizio* dismissed transmission interception allegations where plaintiff made

12  "vague allegations about how Vizio's data collection occurs 'in real time.'"  238 F. Supp.

13  3d at 1228.  Here, Plaintiff also makes vague allegations that the Website owner records the

14  interactions with its own webpage "in real time".  *See* Opp. [Dkt. 36] at 13 (citing Compl.

15  [Dkt. 1] ¶ 2).  Her allegations should fare no better than the plaintiff's in *In re Vizio*.

16  With no way to distinguish such "interception" caselaw (that she decided to simply

17  ignore), Plaintiff posits that if she was allowed to amend her complaint and simply add the

18  word "intercept" throughout, she could satisfy pleading requirements in an Amended

19  Complaint.  *See* Opp. [Dkt. 36] at 14.  However, given the facts that Plaintiff has alleged

20  (and judicially noticeable facts from the websites to which the Complaint cites), it is clear

21  that Plaintiff cannot plausibly allege "interception" with adequate factual support.

22  Accordingly, this court should dismiss with prejudice, and should not allow Plaintiff the

23  chance to throw the word "intercept" into an Amended Complaint with no factual basis for

24  a claim of interception.

25  **C.    Plaintiff Did Not Adequately Allege That Her Communications Involved
           Content (Instead of Record Information)**

26  Plaintiff argues that that even if she did consent at some point to have

27  communications recorded, her interactions with the Website recorded before her consent

28

1  support a CIPA claim.  *See* Opp. [Dkt. 36] at 10 ("Plaintiff's contention is that her
2  communications with WIH's TCPA page were wiretapped—the page on which she would
3  provide TCPA consent.  That is, before she provided any TCPA consent (and thus before
4  the purported consent to recording would occur), Defendants began recording her keystrokes
5  and wiretapping her communications with WIH's website."); *see also* Compl. [Dkt. 1] ¶ 28.
6  However, recordings of Plaintiff's own interaction with the Website are not **contents** of
7  communications— the information here is the same information that other courts have found
8  to be **record information** in analogous cases.  *See, e.g., Graham*, 533 F. Supp. 3d at 833.
9  Again, Plaintiff has not explained why this case should be treated differently—nor can she.
10  Accordingly, this court should follow *Graham*'s well-reasoned analysis, find that the
11  complained-of recordings are record information, and dismiss on this ground as well.

12  **D.**    **Plaintiff Consented To The Recording Of Her Submitted Data**

13         Consent is another reason that Plaintiff's CIPA claim fails.  ActiveProspect explained
14  in its Motion to Dismiss that judicially noticeable documents established that Plaintiff
15  accepted the Website Owner's privacy policy at the Website landing page before she began
16  entering any information into web form fields.  *See* MTD [Dkt. 26] at 14-15.  The Website
17  Owner's Motion to Dismiss detailed further the consent process on its website that led to
18  Plaintiff accepting the terms of the Privacy Policy before she entered the web form where
19  TrustedForm recorded her provision of information (WIH MTD [Dkt. 25] at 8-9, 12-13);
20  Plaintiff has little response to the fact that she affirmatively accepted a Privacy Policy that
21  disclosed that "we may use a third party vendor to record and store your registration and
22  consent for compliance purposes" (*id.* at 12) other than to claim that she was not adequately
23  notified of the terms and to speculate that the recording may have commenced earlier than
24  she thought.  *See* Opp. [Dkt. 36] at 10-11.  But it would be improper for her CIPA claim to
25  be based on speculation, particularly when that is refuted by information provided by the
26  Website Owner, which made clear in the context of the Motion to Compel Arbitration that
27  a consumer would not reach the TCPA consent page (where TrustedForm was employed)
28  without first accepting the Website Terms and Conditions and Privacy Policy.  *See* WIH

MTD [Dkt. 25] at 7.  Given this information provided in that Motion to Compel, it is clear that Plaintiff cannot amend her Complaint to allege that her session was recorded before she consented to that recording.  Thus, amendment to allege lack of consent should not be allowed.

**E.**     **Plaintiff Should Not Be Permitted An Opportunity To Amend Her Complaint**

Finally, Plaintiff should not be allowed to amend her CIPA claim and make frivolous allegations that ActiveProspect used the data at issue here, or intercepted data, or eavesdropped in some other way.  Similar plaintiffs have tried to amend session replay complaints and have failed.  After the courts in the Northern District initially dismissed the complaints in *Graham*, *Blue Nile*, and *Clicktale*, the plaintiffs amended their complaints to allege that the defendants had the right to use consumers' data for their own purposes, and thus could be presumed to be using it.  *Graham v. Noom, Inc.*, No. 3:20-cv-06903-LB (N.D. Cal. Apr. 29, 2021), Dkt. 58 (FullStory's "Terms and Conditions … permitted [it] to use and disclose anonymized data for product improvement"); *Johnson v. Blue Nile, Inc.*, 3:20-cv-08183-LB (N.D. Cal. Apr. 29, 2021), ECF No. 53, Second Am. Compl. ¶ 54 (same); *Yale v. Clicktale, Inc.*, No. 3:20-cv-07575-LB (N.D. Cal. May 6, 2021), Dkt. 32, Second Am. Compl. ¶ 41 (Clicktale's "master service agreement" gave it the right "to compile and use Customer Data, strictly in order to research, develop, modify, improve or support the services provided").  In all three cases, the amended allegations made no difference; the courts dismissed the amended complaints with prejudice.  *Graham v. Noom, Inc.*, 2021 WL 3602215, at *1–2 (N.D. Cal. Aug. 13, 2021); *Johnson v. Blue Nile, Inc.*, 2021 WL 3602214, at *1–2 (N.D. Cal. Aug. 13, 2021), appeal dismissed, 2022 WL 510374 (9th Cir. Feb. 11, 2022); *Yale v. Clicktale, Inc.*, 2021 WL 4025797, at *1 (N.D. Cal. Aug. 24, 2021).

Given that Plaintiff has not identified a means by which she can amend to sufficiently allege use here, or can remedy any of the other significant failings with the First Cause of Action, the CIPA claim not only should be dismissed, but also should be dismissed with prejudice.

### III.   PLAINTIFF'S UCL CAUSE OF ACTION SHOULD BE DISMISSED

As noted above, Plaintiff concedes that her Second Cause of Action asserted under the UCL fails because she suffered no economic harm. *See* Opp. [Dkt. 36] at 8 n.2 ("Plaintiff concedes that she did not experience a loss of money or property to support standing for said claim."). Thus, given Plaintiff's concession that she has no economic harm, as required to have standing to assert UCL claims, there is no dispute that her Second Cause of Action should be dismissed with prejudice.

### IV.   PLAINTIFF'S PRIVACY CAUSE OF ACTION SHOULD BE DISMISSED.

Finally, as to Plaintiff's third cause of action, the Complaint fails to identify a highly offensive intrusion into a legally cognizable privacy interest at stake, as required to assert a viable privacy claim. Therefore, her invasion of privacy claims must fail. And, because she has not identified a way to amend her complaint (nor can she, given the facts here), the court should dismiss the Third Cause of Action with prejudice as well.

Although Plaintiff alleges that the privacy interest at stake is that her "browsing activities" on the Website were "observ[ed] and interfere[d]" with and that she was subjected to "wiretaps", *see* Opp. [Dkt. 36] at 19, all she alleges is that ActiveProspect's tool allows the Website Owner to monitor portions of its own website, *see, e.g.*, Section II.A.1. It is commonly understood that website owners can record a consumer's use of their own websites—it appears that Plaintiff would argue that each website owner must develop its own technology to effect that recording. But the fact that a vendor, ActiveProspect, manages the recording and storage of information that the Website Owner directs it to record does not create a "highly offensive" or "egregious" violation of privacy so as to support Plaintiff's claim.

Much like security cameras and voice recorders, ActiveProspect's TrustedForm tool is a tool used by website owners to record website interactions with their own website. *Id.* This is not like the cases Plaintiff cites where "internet browsing activity and history were sufficient to state a claim for invasion of privacy" because information that was gathered was then shared with third parties **who were using the information for marketing**

**purposes**. Here, Plaintiff only alleges recording and storage.  *See* Compl. [Dkt. 1] ¶¶ 5-12, 27, 29. In the cases Plaintiff relies on — *see* Opp. [Dkt. 36] at 20 (citing *Hart*, 526 F. Supp. 3d at 600–03; *Revitch*, 2019 WL 5485330, at *3; *In re Facebook*, 956 F. 3d at 601-06) — plaintiffs had alleged that users were monitored across webpages and the information they provided was used for the third-party's independent, commercial purpose.  For example, in *Facebook*, the court found that allegations of tracking browsing history across the Internet, even when the user was logged-out of Facebook, plausibly pled an invasion of privacy.  956 F. 3d at 601-06.  But there are no allegations of tracking consumers through the Internet here; only allegations that Plaintiff did not realize that when she was opting to enter information into a webform, the manner in which she entered the information (pauses, keystrokes, clicks) was also being captured.  Plaintiff does not articulate a privacy interest in such information, let alone an egregious invasion of that interest.

Plaintiff has not pled an actionable invasion of privacy under the California Constitution.  *Compare* MTD [Dkt. 26] at 18-19 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *Mastel*, 549 F. Supp. 3d at 1142; *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (Cal. App. 2011); *Phillips v. Archstone Simi Valley LLC*, 2016 WL 400100, at *9 (C.D. Cal. Feb. 1, 2016) and others) *with* Opp. [Dkt. 36] at 18-20 (addressing none of the MTD's case law, and citing only the inapposite cases involving consumer tracking).  Given the facts here, she cannot amend her Complaint to do so.

Plaintiff's Complaint should be dismissed with prejudice.

## V.     ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION

Should the Complaint not be dismissed, then at the least, Plaintiff should be compelled to arbitrate her disputes.  Plaintiff argues that ActiveProspect may not enforce the arbitration agreement because she did not consent to it and, even if she did, her claims against ActiveProspect are not sufficiently connected with any obligations found in the website's terms and conditions for it to enforce the arbitration agreement against her.  *See* Opp. [Dkt.

36] at 6-8.  However, her claims against ActiveProspect are sufficiently connected to the terms and conditions because the complained-of information could only have been gathered after consent to the terms and conditions was provided.  *See Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*, 2020 WL 3869186, at *6-7 (N.D. Cal. July 9, 2020) (citing *Kramer v. Toyota Motor Corp*., 705 F.3d. 1122, 1128-29 (9th Cir. 2013)); *see also Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057, at *6-9 (C.D. Cal. May 19, 2008) (compelling nonsignatory's motion to compel arbitration on equitable estoppel grounds where the complaint "failed to differentiate between signatory and non- signatory defendants when asserting claims" and collecting cases).

Accordingly, if this court finds that Plaintiff consented to WIH's arbitration agreement, it should find that her claims against ActiveProspect are sufficiently connected with the terms and conditions and that ActiveProspect may enforce the arbitration agreement against her as well for all the reasons detailed in ActiveProspect's Joinder to the Motion to Compel.  *See generally* Joinder [Dkt. 29].

## VI.    <u>CONCLUSION</u>

In sum, Plaintiff (i) concedes that her UCL claim is unfounded, (ii) cannot address the flaws inherent to her CIPA claim, and (iii) cannot allege a highly offensive intrusion into a protected privacy interest under the California Constitution.  Accordingly, her Complaint should be dismissed in its entirety with prejudice.

Finally, should this 12(b)(6) Motion to Dismiss not be granted, because Plaintiff's claims against WIH must be arbitrated, ActiveProspect asks the Court to find that Plaintiff's claims against ActiveProspect should be adjudicated in that arbitration as well.  Joinder, Dkt. 29].  But at the least, should Plaintiff be compelled to arbitrate her dispute with WIH, this action should be stayed pending that arbitration to preserve resources and avoid the risk of inconsistent rulings.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED: October 17, 2022

/s/ *Becca Wahlquist*

Becca J. Wahlquist (SBN 215948)
bwahlquist@kelleydrye.com
Victor J. Sandoval (SBN 344461)
vsandoval@kelleydrye.com
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

Lauri A. Mazzuchetti (*Pro Hac Vice*)
lmazzuchetti@kelleydrye.com
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

*Attorneys for Defendant ActiveProspect, Inc.*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that, on October 17, 2022, I electronically filed the foregoing

3

DEFENDANT ACTIVEPROSPECT, INC.'S REPLY IN SUPPORT OF MOTIONS TO

4

DISMISS with the United States District Court for the Northern District of California by

5

using the CM/ECF system, which will send a notice of filing to all registered users, including

6

counsel for all parties.

7

8

DATED: October 17, 2022

9

Respectfully submitted,

10

*/s/ Becca Wahlquist*
Becca J. Wahlquist (SBN 215948)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28