```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN FRANCISCO DIVISION


 4


 5      LORETTA WILLIAMS, INDIVIDUALLY   )   C-22-03780 WHO
        AND ON BEHALF OF ALL OTHERS      )
 6      SIMILARLY SITUATED,              )   SAN FRANCISCO, CALIFORNIA
                                         )
 7                      PLAINTIFFS,      )   DECEMBER 14, 2022
                                         )
 8               VS.                     )   PAGES 1-47
                                         )
 9      WHAT IF HOLDINGS, LLC D/B/A C4R  )
        MEDIA CORP., AND                 )
10      ACTIVEPROSPECT, INC.,            )
                                         )
11                      DEFENDANTS.      )
        _____    )
12


13


14                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE WILLIAM H. ORRICK
15                UNITED STATES DISTRICT JUDGE


16


17      A P P E A R A N C E S :

18      FOR THE PLAINTIFF:      WOODROW & PELUSO, LLC
                                BY:  PATRICK H. PELUSO
19                              3900 EAST MEXICO AVENUE, SUITE 300
                                DENVER, COLORADO  80210

20


21              APPEARANCES CONTINUED ON THE NEXT PAGE

22


23      OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                    CERTIFICATE NUMBER 9595

24


25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

APPEARANCES (CONTINUED)


FOR DEFENDANT          SHEPPARD MULLIN RICHTER & HAMPTON LLP
WHAT IF:               BY:  JAY T. RAMSEY
                       1910 AVENUE OF THE STARS, SUITE 1600
                       LOS ANGELES, CALIFORNIA  90067


FOR DEFENDANT          KELLEY DRYE & WARREN LLP
ACTIVEPROSPECT:        BY:  LAURI A. MAZZUCHETTI
                       ONE JEFFERSON ROAD, 2ND FLOOR
                       PARSIPPANY, NEW JERSEY  07054

                       BY:  BECCA J. WAHLQUIST
                       350 SOUTH GRAND AVENUE, SUITE 3800
                       LOS ANGELES, CALIFORNIA  90071

```
1      SAN FRANCISCO, CALIFORNIA              DECEMBER 14, 2022

2                        P R O C E E D I N G S

3          (COURT CONVENED AT 11:03 A.M.)

4              THE COURT:  GOOD MORNING.  EVERYONE BE SEATED,

5      PLEASE.

6              OKAY.  LET'S CALL THE CASE.

7              THE CLERK:  CALLING CIVIL ACTION 22-3780, WILLIAMS

8      VERSUS WHAT IF HOLDINGS LLC, ET ALL.

9              COUNSEL, PLEASE APPROACH THE PODIUM AND STATE YOUR

10     APPEARANCES FOR THE RECORD, BEGINNING WITH COUNSEL FOR

11     PLAINTIFF.

12             MR. PELUSO:  GOOD MORNING, YOUR HONOR.

13             PATRICK PELUSO APPEARING ON BEHALF OF PLAINTIFF AND THE

14     ALLEGED CLASS.

15             THE COURT:  THANK YOU.

16             MS. MAZZUCHETTI:  GOOD MORNING, YOUR HONOR.

17     LAURI MAZZUCHETTI FOR DEFENDANT, ACTIVEPROSPECT.

18             THE COURT:  LAURI, SAY IT AGAIN.

19             MS. MAZZUCHETTI:  MAZZUCHETTI.

20             THE COURT:  OKAY.  THANK YOU.

21     AND?

22             MR. RAMSEY:  AND GOOD MORNING, YOUR HONOR.

23     JAY RAMSEY ON BEHALF OF WHAT IF HOLDINGS.

24             THE COURT:  THANK YOU.

25     WHO IS THAT?
```

1          MS. MAZZUCHETTI:  MY COLLEAGUE, MY CALIFORNIA-BASED

2     COLLEAGUE, BECCA WAHLQUIST, IS PRESENT AS WELL.

3          THE COURT:  THANK YOU.

4     OKAY.  THIS IS A MOTION BY YOUR SIDE.

5          MS. MAZZUCHETTI:  YES, YOUR HONOR.

6     THERE ARE TWO MOTIONS, A MOTION TO COMPEL ARBITRATION AND

7     A MOTION TO DISMISS.

8          THE COURT:  LET'S DEAL WITH THE MOTION TO DISMISS

9     FIRST.

10          MS. MAZZUCHETTI:  SURE, YOUR HONOR.

11     MAY I PROCEED WITHOUT A MASK?

12          THE COURT:  YEAH.  TAKE IT OFF SO I CAN HEAR YOU

13     BETTER.

14          MS. MAZZUCHETTI:  THANK YOU, YOUR HONOR.

15     IN THE COMPLAINT, PLAINTIFF HAS ASSERTED THREE CAUSES OF

16     ACTION:  ONE UNDER SECTION 631 OF THE CALIFORNIA INVASION OF

17     PRIVACY ACT; THE SECOND CAUSE OF ACTION IS A UCL CLAIM; AND THE

18     THIRD IS A CALIFORNIA INVASION OF PRIVACY ACT CLAIM.

19     PLAINTIFF HAS CONCEDED THE UCL CLAIM AND, THEREFORE, A

20     DISMISSAL ON THAT COUNT IS APPROPRIATE.

21     WITH RESPECT TO THE 631 CLAIM UNDER CIPA, THAT IS A CLAIM

22     OF WIRETAPPING.

23     THIS CASE INVOLVES A TECHNOLOGY, A SOFTWARE SERVICE

24     OFFERED BY MY CLIENT, ACTIVEPROSPECT, THAT THIRD PARTY WEBSITE

25     OWNERS UTILIZE ON THEIR WEBSITES FOR PURPOSES OF CAPTURING AND

1      DOCUMENTING RECORDS PERTAINING TO CONSENT USED FOR COMPLIANCE

2      WITH THE TELEPHONE CONSUMER PROTECTION ACT.

3            ESSENTIALLY, WHEN A WEBSITE VISITOR IS COMMUNICATING WITH

4      A WEBSITE AND PROVIDING INFORMATION, THE WEBSITE OWNER CAN RUN

5      ACTIVEPROSPECT'S SCRIPT, PRODUCTS REFERRED TO AS TRUSTEDFORM,

6      WHICH WILL CAPTURE ON THE WEBSITE OWNER'S SIDE MOUSE CLICKS AND

7      MOVEMENTS AND KEYSTROKES.

8            THE COURT:  BUT DOES IT -- OKAY.  SO IT'S KEYSTROKES

9       THAT IT CAPTURES; IS THAT RIGHT?

10           MS. MAZZUCHETTI:  YES, YOUR HONOR, KEYSTROKES, IN

11      ADDITION TO OTHER MOVEMENTS.

12           THE COURT:  BUT WHAT OTHER MOVEMENTS?

13           MS. MAZZUCHETTI:  MOUSE MOVEMENTS AND CLICKS.

14           THE COURT:  HOW ABOUT WHAT -- DOES IT OVERHEAR AND

15      RECORD WHAT PEOPLE ARE SAYING?

16           MS. MAZZUCHETTI:  NO, IT DOES NOT, YOUR HONOR.

17           THE COURT:  DOES IT TAKE PHOTOGRAPHS?

18           MS. MAZZUCHETTI:  IT DOES NOT TAKE PHOTOGRAPHS, YOUR

19      HONOR.

20           THE COURT:  ALL RIGHT.  SO WHAT IT DOES IS -- THE

21      ONLY THING IT RECORDS ARE KEYSTROKES AND MOUSE MOVEMENTS?

22           MS. MAZZUCHETTI:  YES, YOUR HONOR.

23           THE COURT:  OKAY.

24        ALL RIGHT.  PLEASE CONTINUE.

25           MS. MAZZUCHETTI:  SURE.

1          THIS IS SOMETHING THAT, AS I INDICATED, WEBSITE OWNERS CAN

2     UTILIZE ON THEIR WEBSITE.  THEY DO IT FOR THEIR OWN COMPLIANCE

3     PURPOSES.  ESSENTIALLY IT'S JUST A TOOL, AND IN THIS DAY AND

4     AGE, ALL WEBSITES OPERATE, MOST OPERATE USING A VARIETY OF

5     THIRD PARTY TOOLS THAT ARE RUNNING ON WEBSITES THAT, YOU KNOW,

6     SUPPORT THEIR FUNCTIONALITY AND THE WEBSITE OWNER'S ABILITY TO

7     COLLECT INFORMATION.

8          HERE --

9          THE COURT:  BUT WHAT -- WHAT INFORMATION WOULD BE

10    TYPICALLY COLLECTED IN THIS CASE?

11         MS. MAZZUCHETTI:  WELL, WITH RESPECT TO

12    ACTIVEPROSPECT'S PRODUCT, THE INFORMATION THAT ACTIVEPROSPECT

13    IS COLLECTING IS THIS IS THE WEB FORM AS IT APPEARED AS THE

14    WEBSITE VISITOR VIEWED IT, AND THESE ARE THE INTERACTIONS THAT

15    THE WEBSITE VISITOR HAD WITH THAT WEBSITE FORM.

16         THE COURT:  BUT WHAT -- WHAT DOES THE FORM -- DOES

17    THE FORM ASK FOR -- WHAT DOES IT ASK FOR?

18         MS. MAZZUCHETTI:  IN THIS PARTICULAR INSTANCE, THE

19    FORM WAS ASKING FOR INFORMATION, NAME, ADDRESS, PHONE NUMBER.

20         THE COURT:  THAT'S IT?

21         MS. MAZZUCHETTI:  YES.

22         THE COURT:  NAME, ADDRESS, AND PHONE NUMBER?  THAT'S

23    IT?

24         MS. MAZZUCHETTI:  YES, YOUR HONOR.

25         THE COURT:  IS THERE A BOX WHERE THEY CHECK TO SAY,

1        "I AGREE TO THIS, I AGREE TO THAT"?

2              MS. MAZZUCHETTI:  THERE IS A DISCLOSURE LANGUAGE, YOU

3        KNOW, SIMILAR TO MANY WEBSITE FORMS THAT INDICATE THAT BY

4        COMPLETING THE FORM AND HITTING SUBMIT, THAT THE WEBSITE

5        VISITOR IS AGREEING TO THE WEBSITE OWNER'S TERMS OF USE AND

6        PRIVACY POLICY.  THAT IS FEATURED AT AN EARLIER STAGE OF THIS

7        PARTICULAR WEBSITE FLOW, WHICH I'M SURE THE WEBSITE OWNER'S

8        COUNSEL, C4R MEDIA, CAN ADDRESS.

9              BUT BY THE TIME THE USER GETS TO THE FORM IN QUESTION

10       WHERE TRUSTEDFORM, MY CLIENT'S PRODUCT, WOULD BE RUNNING, THAT

11       USER HAS ALREADY BEEN PRESENTED WITH THE TERMS OF USE AND THE

12       PRIVACY POLICY.

13             WHAT'S MOST CRITICAL HERE, FOR A WIRETAP CLAIM, YOU KNOW,

14       A WIRETAP INVOLVES AN UNAUTHORIZED CONNECTION TO EAVESDROP ON

15       THIRD PARTY COMMUNICATIONS.

16             BUT WHAT'S A CRITICAL ELEMENT OF THAT IS INTERCEPTING THE

17       COMMUNICATION WHILE IT'S IN TRANSIT.

18             ACTIVEPROSPECT'S PRODUCT DOES NOT DO THAT, AND PLAINTIFF

19       DOES NOT ALLEGE THAT IT DOES.

20             THERE HAVE BEEN A COUPLE DECISIONS IN THE NORTHERN

21       DISTRICT OF CALIFORNIA IN CASES BEFORE JUDGE BEELER, A CASE

22       GRAHAM VERSUS NOOM, YALE VERSUS CLICKTALE, AND JOHNSON VERSUS

23       BLUE NILE, THAT ALL INVOLVED SIMILAR TYPES OF PRODUCTS.

24             IN THOSE INSTANCES, IT WAS MORE OF A WEBSITE OPTIMIZATION

25       TOOL LOOKING FOR HICCUPS AND BUGS.  WHEN USERS ARE INTERACTING

1    WITH THE WEBSITE, IF SOMETHING IS GOING WRONG, THESE TOOLS WILL

2    PICK THAT UP.

3         BUT IT'S VERY SIMILAR TO THE TYPE OF THIRD PARTY SOFTWARE

4    TOOL THAT ACTIVEPROSPECT PROVIDES.

5         AND IN THOSE CASES, JUDGE BEELER DISMISSED AT THE PLEADING

6    STAGE, FINDING IN EACH INSTANCE THAT MERELY USING A THIRD PARTY

7    TOOL FOR A WEBSITE OWNER'S OWN PURPOSES IS NOT THE TYPE OF

8    UNAUTHORIZED CONNECTION OR EAVESDROPPING THAT COULD SUPPORT A

9    WIRETAP CLAIM.

10        THE COURT:  HELP ME UNDERSTAND.  THAT'S SOMETHING YOU

11    KEEP SAYING, BUT I DON'T THINK -- I'M NOT SURE YOU REALLY MEAN

12    FOR IT TO MAKE A DIFFERENCE.

13        YOU KEEP SAYING THAT IT'S A THIRD, THIRD PARTY WHAT, THIRD

14    PARTY?

15            MS. MAZZUCHETTI:  TOOL.

16        THE COURT:  TOOL.  ALL RIGHT.  WELL, WHAT IF WHAT IF

17    HAD COME UP WITH THIS TOOL ON ITS OWN AS OPPOSED TO PURCHASING

18    IT FROM A THIRD PARTY, LIKE YOU?  ARE YOU SAYING, SUGGESTING

19    THAT IT WOULD BE WIRETAPPING?

20        MS. MAZZUCHETTI:  NO, YOUR HONOR, IT WOULD NOT BE.

21        IN FACT, IF THERE WASN'T THE INVOLVEMENT OF A TOOL

22    PROVIDED BY A THIRD PARTY, THERE COULDN'T BE ANY CLAIM AT ALL.

23    I DON'T BELIEVE THAT PLAINTIFF WOULD EVEN TAKE THE POSITION

24    THERE IS --

25            THE COURT:  BUT WHAT DIFFERENCE DOES IT MAKE IF IT'S

1    A THIRD PARTY?

2              MS. MAZZUCHETTI:  WELL, THAT'S WHERE THEY SAY THAT

3    THE WIRETAP IS COMING IN, THAT BECAUSE THE WEBSITE OWNER IS

4    USING THIS TOOL THAT IS NOT OF ITS OWN MAKING, THAT THAT'S THE

5    THIRD PARTY THAT'S SOMEHOW INVADING THE COMMUNICATION.

6              THE COURT:  WELL, IS IT BECAUSE -- ALL RIGHT.  MAYBE

7    I -- IS IT BECAUSE THE USER GOES ONTO THE WHAT IF WEBSITE --

8    AND I'M MAKING THE ARGUMENT NOW FOR THE PLAINTIFF AND TO SEE IF

9    THIS IS THE ARGUMENT -- THE USER GOES ONTO THE WHAT IF WEBSITE,

10   AND THERE THEN IS A SCREEN THAT COMES IN OUT OF LEFT FIELD FROM

11   ACTIVEPROSPECT AND IT DEMANDS TO KNOW THE NAME AND ADDRESS AND

12   PHONE NUMBER.  AND THEN, INSTEAD OF GIVING THAT INFORMATION TO

13   WHAT IF, ACTIVEPROSPECT CARRIES THAT INFORMATION OFF TO ITS OWN

14   SERVER AND THEN SOMEHOW THAT'S THE WIRETAP, IS THAT THE

15   ARGUMENT?

16        I'M TRYING TO UNDERSTAND WHAT THE ARGUMENT HERE IS AND WHY

17   A THIRD PARTY MAKES A DIFFERENCE.

18              MS. MAZZUCHETTI:  IT'S A LITTLE --

19              THE COURT:  A POSSIBLE DIFFERENCE.

20              MS. MAZZUCHETTI:  APOLOGIES.

21        IT'S A LITTLE DIFFERENT THAN THAT, YOUR HONOR.  THE FORM

22   IS ACTUALLY WHAT IF'S FORM, AND WHAT IF ELECTED TO USE THIS

23   SCRIPT PROVIDED BY ACTIVEPROSPECT THAT SIMPLY ALLOWS WHAT IF TO

24   COLLECT INFORMATION ABOUT THOSE MOUSE MOVEMENTS, THE

25   INFORMATION -- THE KEYSTROKES.  IT ALLOWS WHAT IF TO USE A TOOL

1    THAT I DON'T THINK WHAT IF WAS ABLE TO COME UP WITH ON ITS OWN

2    TO CAPTURE THOSE ELEMENTS AND THOSE EVENTS.

3         AND YES, ACTIVEPROSPECT DOES STORE IT FOR WHAT IF, BUT

4    IT'S NOT MAKING ANY OTHER COMMERCIAL PURPOSE OR USE OF IT.

5         THE REASON I MENTIONED THE THIRD PARTY PIECE IS BECAUSE

6    THAT'S THE ESSENTIAL PIECE TO PLAINTIFF'S CLAIM THAT THERE IS

7    THIS THIRD PARTY THAT THEY ARE ARGUING IS RECORDING THE

8    CONVERSATION -- THE COMMUNICATION.

9         BUT, BY THE WAY, 631 DOESN'T ADDRESS RECORDINGS.  IT'S

10   ONLY WIRETAPS.  IT'S NOT THE RECORDING PIECE OF THE STATUTE.

11        BUT THAT IS PLAINTIFF'S ARGUMENT, THAT BECAUSE

12   ACTIVEPROSPECT IS BEING USED AT ALL, THAT THAT TRANSFORMS

13   ORDINARY INTERNET FUNCTIONING AND USING THE THIRD PARTY TOOLS

14   THAT ARE AT ISSUE IN MANY OF THESE CASES INTO A WIRETAP.

15        AND FOR A VARIETY OF REASONS, MOST NOTABLY THERE'S NO

16   INTERCEPTION IN TRANSIT, THERE'S NONE ALLEGED IN THE COMPLAINT,

17   THAT'S SOMETHING THAT YOUR HONOR COULD DECIDE QUITE EASILY AT

18   THE PLEADING STAGE, THAT THEY DIDN'T ALLEGE A CRITICAL ELEMENT.

19             THE COURT:  HOLD ON.  I WANT TO HEAR FROM THE

20   PLAINTIFF.  WE'RE TRYING TO SAY WHAT THE PLAINTIFF'S ARGUMENT

21   WAS.  LET ME FIND OUT FROM THE PLAINTIFF.

22        WHAT EXACTLY IS THE WIRETAP AND WHAT IS THE ROLE OF THE

23   THIRD PARTY VERSUS THE FIRST PARTY SO I CAN UNDERSTAND YOUR

24   THEORY BETTER?

25             MR. PELUSO:  SURE, YOUR HONOR.

1          I THINK DEFENSE COUNSEL ACCURATELY SUMMARIZED OUR CLAIM,

2     THAT ACTIVEPROSPECT IS THE THIRD PARTY THAT IS INTERCEPTING THE

3     COMMUNICATION HERE.

4          ACTIVEPROSPECT LIKES TO MAKE THE ARGUMENT THAT IT'S MERELY

5     A TOOL THAT'S BEING USED TO, I GUESS, CAPTURE SORT OF NOT

6     REALLY PERTINENT INFORMATION.

7          BUT WITH THIS PARTICULAR WEBSITE, THE NAME, THE ADDRESS,

8     THE PHONE NUMBER, THAT IS THE KEY CONTENT THAT WHAT IF IS

9     TRYING TO GET.  IT'S A VERY SIMPLE WEBSITE, LEAD GENERATION

10    WEBSITE THAT THEY'RE TRYING TO CAPTURE THIS INFORMATION SO THAT

11    THEY CAN LATER ON --

12          THE COURT:  THE "THEY" IS WHO NOW?  WHAT IF?  WHO IS

13     THE --

14          MR. PELUSO:  SO THE LEAD GENERATOR IS WHAT IF.

15          AND A LEAD GENERATOR IS A COMPANY THAT OPERATES THESE VERY

16    BARE BONES WEBSITES, AND THEIR ENTIRE GOAL IS TO GET PEOPLE TO

17    GO ON THE WEBSITE, SUBMIT THEIR NAME, PHONE NUMBER, VERY BASIC

18    INFORMATION, AND TO THEN CAPTURE THAT INFORMATION AND CALL THEM

19    FOR TELEMARKETING PURPOSES, RIGHT?

20          SO ACTIVEPROSPECT COMES IN AS A THIRD PARTY THAT A LOT OF

21    LEAD GENERATORS IN THIS DAY AND AGE USE.

22          THE COURT:  WHAT DO YOU CALL IT, LEAD GENERATORS?

23          MR. PELUSO:  LEAD GENERATORS.

24          THE COURT:  L-E-A-D?

25          MR. PELUSO:  CORRECT, YOUR HONOR.

1          THE COURT:  WHAT DOES THAT MEAN, LEAD GENERATOR?

2          MR. PELUSO:  SO IN THE TELEMARKETING WORLD, THERE ARE

3     THESE COMPANIES THAT I REFER TO AS LEAD GENERATORS, AND THEIR

4     ENTIRE EXISTENCE IS CAPTURING NAMES AND PHONE NUMBERS TO THEN

5     TURN AROUND AND EITHER CALL THEM DIRECTLY OR TO SELL THAT

6     INFORMATION TO OTHER TELEMARKETERS.

7          SO THE WHOLE PURPOSE IS TO JUST GET SOMEONE'S PHONE

8     NUMBER, NAME, AND THEN SUPPOSED CONSENT.

9          THE COURT:  NOW, WAIT A MINUTE.  COUNSEL, THOUGH,

10    TOLD ME THE PURPOSE WAS FOR TELEMARKETING COMPLIANCE, OR

11    SOMETHING LIKE THAT.

12         SO -- THAT THIS WAS STATUTORILY REQUIRED.

13         MR. PELUSO:  NOT STATUTORILY REQUIRED.

14         BUT UNDER THE FEDERAL TELEPHONE CONSUMER PROTECTION ACT,

15    WHICH IS A, I WOULD SAY, HOTLY LITIGATED STATUTE IN --

16         THE COURT:  YEAH, WE GET OUR SHARE OF THOSE CASES.

17         MR. PELUSO:  CORRECT.  SO UNDER THE TCPA, IF A

18    PLAINTIFF FILES SUIT AND SAYS, "HEY, YOU CALLED ME USING AN

19    AUTO DIALER, THAT WAS ILLEGAL," A COMMON DEFENSE IS TO SAY,

20    "WELL, YOU PROVIDED YOUR PRIOR EXPRESS WRITTEN CONSENT TO BE

21    CALLED, SO WE CAN'T BE LIABLE UNDER THE TCPA IF YOU CONSENTED

22    TO BEING CALLED IN THE FIRST PLACE," AND THAT'S WHERE

23    ACTIVEPROSPECT COMES IN WHERE THE LEAD GENERATION WEBSITES, THE

24    WEBSITES THAT ARE SELLING NAMES AND PHONE NUMBERS TO

25    TELEMARKETERS, THEY WANT TO HAVE PROOF THAT THE PERSON WHO WENT

1      TO THE WEBSITE PROVIDED PRIOR EXPRESS CONSENT.

2           IT'S ESSENTIALLY ACTIVEPROSPECT'S ENTIRE BUSINESS MODEL,

3      AS I UNDERSTAND IT ANYWAY, IS TO SERVICE THE TELEMARKETING --

4      TELEMARKETING SIDE OF THE -- THE TELEMARKETER SIDE OF THE

5      TELEMARKETING INDUSTRY TO PROVIDE THEM WITH AN ARGUMENT THAT

6      THEY CAN MAKE IF THEY'RE SUED FOR VIOLATING THE TCPA.

7                THE COURT:  WHERE IS THE CONSENT?  IS IT IN THE TERMS

8      AND CONDITIONS SOMEWHERE?

9                MR. PELUSO:  I THINK IN THIS CASE THAT'S RIGHT, YOUR

10     HONOR.

11          YOU KNOW, WHETHER -- AND THAT SORT OF GOES TO OUR ARGUMENT

12     ABOUT WHETHER THERE'S AN ARBITRATION AGREEMENT IN THE FIRST

13     PLACE.

14          I THINK THE WAY THIS WEBSITE IS LAID OUT IS, IS NOT

15     SUFFICIENT -- PERTINENT IN THIS CASE, NOT SUFFICIENT TO HAVE

16     THE WEBSITE VISITOR AGREE TO ARBITRATE.

17          BUT IF THIS WERE A TCPA CASE, I WOULD BE ARGUING THAT THAT

18     CONSENT IS, IS INVALID BECAUSE IT'S JUST BURIED IN THESE TERMS

19     THAT NO ONE ACTUALLY MANIFESTS ASSENT TO.

20                THE COURT:  BUT HERE'S WHAT I'M STILL NOT GETTING.

21     YOU'RE HELPING ME UNDERSTAND BETTER, BUT I DON'T EVEN KNOW WHAT

22     WHAT IF HOLDINGS IS.  WHAT IS WHAT IF HOLDINGS?

23                MR. PELUSO:  AS I UNDERSTAND IT, IT IS A LEAD

24     GENERATION COMPANY.  THEY HAVE A WHOLE BUNCH OF DIFFERENT

25     WEBSITES.  YOU KNOW, THIS ONE IS CALLED "CLAIM MY CASH" OR

1       SOMETHING LIKE THAT.

2           THEY HAVE VERY BARE BONES WEBSITES THAT PEOPLE JUST CLICK

3       A LINK OR, YOU KNOW, MAYBE THERE'S A LINK ON FACEBOOK OR

4       THERE'S A BANNER AD THAT MAYBE THEY CLICK ON, THEY'RE ENTICED

5       BY THE PROMISE OF A GIFT CARD OR SOMETHING LIKE THAT.

6           THEY GET ON THE WEBSITE, THERE'S A VERY SIMPLE LANDING

7       PAGE WHERE PEOPLE ARE ASKED TO INPUT THEIR PHONE NUMBER, NAME,

8       MAYBE EMAIL ADDRESS, MAYBE MAILING ADDRESS, AND THEN CLICK, YOU

9       KNOW, A BIG GREEN BUTTON ON THE PROMISE THAT MAYBE THEY'RE

10      GOING TO GET SOME CASH OR THEY'RE GOING TO GET A GIFT CARD OR

11      SOMETHING.

12          ONCE SOMEONE DOES THAT, WHAT IF HAS THAT INFORMATION AND

13      THEY THEN SELL THAT INFORMATION TO TELEMARKETERS.

14              THE COURT:  ALL RIGHT.  OKAY.  I JUST -- I

15       MISUNDERSTOOD A FEATURE HERE.

16          I THOUGHT THAT WHAT IF WAS SOMETHING LIKE FACEBOOK OR

17      GOOGLE AND THAT ACTIVEPROSPECT WAS A WHOLLY DIFFERENT OUTFIT

18      AND THAT ACTIVEPROSPECT -- THAT WHAT IF WAS RUNNING A MAJOR,

19      BIG TIME WEBSITE AND THAT ACTIVEPROSPECT WAS COMING IN WITH ITS

20      WINDOW COLLECTING THIS INFORMATION.

21          BUT WHAT YOU'RE TELLING ME IS, NO, WHAT IF IS THE HOLDING

22      COMPANY FOR ACTIVEPROSPECT.

23              MR. PELUSO:  NO, THAT'S -- THAT'S NOT CORRECT, YOUR

24       HONOR.

25              THE COURT:  ALL RIGHT.

1          MR. PELUSO:  THEY'RE DEFINITELY TWO COMPLETELY

2     SEPARATE ENTITIES.

3          SO WHAT IF OPERATES THESE WEBSITES, "CLAIM MY CASH,"

4     WHATEVER THIS PARTICULAR ONE IS CALLED, AND I'M SURE DOZENS OR

5     HUNDREDS OF OTHER WEBSITES THAT ARE VERY SIMILAR.

6          THEY ARE A LEAD GENERATION COMPANY.  WHAT IF IS A LEAD

7     GENERATION COMPANY.  THEIR BUSINESS MODEL IS GETTING PEOPLE TO

8     GO TO THE WEBSITE, ENTER THEIR PHONE NUMBER AND NAME, CLICK THE

9     GREEN BUTTON, AND ONCE THEY DO THAT, WHAT IF THEN TURNS AROUND

10    AND SELLS THAT LEAD, THAT PHONE NUMBER, AND SUPPOSED CONSENT TO

11    BE CALLED TO OTHER TELEMARKETERS.

12         BECAUSE NO ONE -- I DON'T KNOW.  I DON'T MEAN TO DISPARAGE

13    THE COMPANY, BUT NO ONE REALLY KNOWS WHO WHAT IF IS, RIGHT?

14    LIKE, SOMEONE GOES TO THIS WEBSITE, THEY CLICK ON IT, MAYBE

15    THREE DAYS LATER THEY START GETTING CALLS ABOUT CAR INSURANCE

16    OR CAR WARRANTIES OR WHATEVER IT MAY BE.

17         PEOPLE AREN'T GOING TO REMEMBER, OR ARE NOT GOING TO

18    CONNECT THAT PHONE CALL TO THIS WEBSITE THEY WENT TO THREE DAYS

19    BEFORE ON THE PROMISE OF A GIFT CARD, RIGHT?

20         SO THAT'S WHERE ACTIVEPROSPECT COMES IN.  WHAT IF HIRES,

21    PARTNERS WITH ACTIVEPROSPECT TO MONITOR THE ACTIVITY ON ITS

22    WEBSITE SO THAT WHEN SOMEONE TURNS AROUND AND SUES FOR

23    RECEIVING THE TELEMARKETING CALL, WHAT IF AND WHAT IF'S

24    PARTNERS ARE ARMED WITH A DEFENSE OF PRIOR EXPRESS WRITTEN

25    CONSENT.

1     SO ACTIVEPROSPECT IS THE SOFTWARE THAT ALLOWS THEM TO HAVE

2    THAT SUPPOSED PROOF THAT, 'HEY, YOU WENT TO THIS WEBSITE, YOU

3    ENTERED YOUR INFORMATION, YOU CLICKED 'SEARCH FOR CASH' OR

4    WHATEVER THE BUTTON MAY SAY, AND BECAUSE OF THAT, YOU AGREED TO

5    RECEIVE THIS CALL, THEREFORE, THAT CALL DOESN'T VIOLATE THE

6    TCPA."

7     ACTIVEPROSPECT ESSENTIALLY RUNS A, A TCPA DEFENSE

8    BUSINESS, IN A SENSE.  IT ALLOWS COMPANIES TO TRACK THE

9    INFORMATION THAT HAPPENS ON THE WEBSITE SO THAT THEY CAN THEN

10   TURN AROUND AND SHOW THE COURT AND PLAINTIFF'S ATTORNEYS THAT,

11   "HEY, YOUR CLIENT ACTUALLY WENT TO THIS WEBSITE AND AGREED TO

12   BE CONTACTED."

13     SO -- BUT IN ORDER TO DO THAT, THE WHAT IF'S OF THE WORLD

14   WANT TO HAVE A RECORD OF EXACTLY WHAT HAPPENED DURING THE TCPA

15   PLAINTIFF'S INTERACTION ON THE WEBSITE.

16     THE COURT:  WHAT ARE SOME OTHER LEAD -- WHAT DID YOU

17   CALL THEM? -- LEAD GENERATORS, ASIDE FROM WHAT IF?  GIVE ME

18   SOME EXAMPLES OF OTHERS THAT I MIGHT HAVE HEARD OF.

19     MR. PELUSO:  OH, GOSH, YOUR HONOR.  I THINK

20   MR. RAMSEY MAY BE ABLE TO PROVIDE SOME NAMES OF HIS CLIENTS.

21     I'M BLANKING ON SOME NAMES OF COMMON PLAYERS IN THIS

22   FIELD.

23     THEY'RE NOT -- THEY'RE NOT HOUSEHOLD NAMES, SO IT'S NOT

24   GOING TO BE FACEBOOK OR TWITTER OR, YOU KNOW, SOME VERY POPULAR

25   WEBSITE THAT YOU WOULD HAVE HEARD OF.

1    ALL OF THESE COMPANIES OPERATE SORT OF THESE BARE BONES

2    SORT OF WEBSITES THAT DON'T REALLY DO ANYTHING OTHER THAN

3    GENERATE LEADS.

4         THE COURT:  ALL RIGHT.  OKAY.  I GOT IT.

5    SO SOMEBODY GOES -- WANTS TO GET A FREE GIFT CARD, THEY

6    CLICK THE LINK, THE LINK TAKES THEM TO WHAT IF, AND THEN

7    THERE'S A PAGE THERE THAT SAYS, NAME, ADDRESS, EMAIL.  WHY IS

8    THAT WIRETAPPING?

9         MR. PELUSO:  SO WHEN SOMEONE IS TYPING THAT, THAT

10   NAME -- YOU GO TO A WEBSITE, YOU'RE TYPING IN YOUR NAME, YOUR

11   EMAIL ADDRESS, YOUR -- WHATEVER INFORMATION IS PROVIDED ON

12   THERE, YOU'RE NOT EXPECTING THAT ACTIVEPROSPECT IS MONITORING

13   EVERYTHING YOU'RE DOING, YOU KNOW?  MY NAME IS PATRICK, SO

14   EVERY TIME I TYPE P-A-T-R-I-C-K, YOU'RE NOT EXPECTING THAT

15   THOSE KEYSTROKES ARE BEING SECRETLY RECORDED BY A THIRD PARTY

16   THAT DOESN'T OWN THE WEBSITE.  YOU'RE SITTING AT THE WEBSITE,

17   YOU TYPE YOUR NAME, YOU CLICK SUBMIT.

18   OBVIOUSLY WHEN YOU DO THAT, THE UNDERSTANDING IS THAT YOU

19   ARE PROVIDING THAT INFORMATION TO THE WEBSITE OPERATOR.

20   BUT YOU'RE NOT -- YOU DON'T HAVE A REASONABLE

21   UNDERSTANDING THAT THERE'S A THIRD PARTY OUT THERE THAT'S

22   MONITORING WHERE YOUR MOUSE IS GOING AROUND THE SCREEN AND

23   MONITORING ALL THE STROKES THAT YOU'RE HITTING ON YOUR

24   KEYBOARD.

25        THAT'S THE WIRETAP.  SOMEONE IS GOING TO A WEBSITE,

1    INTERACTING WITH THAT WEBSITE WITHOUT ANY KNOWLEDGE THAT

2    THERE'S A THIRD PARTY OUT THERE THAT'S TRACKING EVERYTHING

3    YOU'RE DOING WHILE YOU'RE ON THAT WEBSITE.

4         AND, YOU KNOW, THIS IS A VERY SIMILAR FACT PATTERN TO --

5              THE COURT:  OKAY.  SO IF ACTIVEPROSPECT IS THE

6    WIRETAPPER HERE, WELL, THEN, WHY ARE YOU SUING WHAT IF?

7              MR. PELUSO:  SO THEY'RE BOTH WIRETAPPING.  SO BOTH

8    THE -- THE WEBSITE OPERATOR, BEFORE SOMEONE HITS "SUBMIT," IS

9    TRACKING THEIR ACTIVITY ON THE WEBSITE.  SO YOU'RE NOT

10   EXPECTING THAT SOMEONE'S MONITORING YOUR ACTUAL ACTIVITY.

11        ONCE YOU HIT "SUBMIT" OR SOMETHING, "OKAY, I'VE SUBMITTED.

12   I'VE SENT THAT TO YOU."

13        BUT YOU'RE NOT -- THERE'S NO CONCEPT OR UNDERSTANDING THAT

14   WHILE YOU'RE INTERACTING WITH THE WEBSITE, SOMEONE'S TRACKING

15   YOUR MOVEMENTS.  SO --

16             THE COURT:  YOU MEAN EVEN BEFORE "SUBMIT" IS HIT --

17             MR. PELUSO:  EXACTLY.

18             THE COURT:  -- IT'S MONITORING IT?

19             MR. PELUSO:  EXACTLY.  SO IF I GO TO THE WHAT IF

20   WEBSITE AND I START TYPING IN PATRICK, I'M NOT EXPECTING THAT

21   SOMEONE IS MONITORING AS I'M TYPING IN P-A-T-R-I-C-K.

22             THE COURT:  LET'S SAY YOU DON'T TYPE IN ANYTHING YET

23   AND YOUR LITTLE ARROW AND CURSOR JUST WANDERS AROUND THE

24   SCREEN, LEFT TOP, RIGHT TOP, BOTTOM RIGHT, AND JUST WHIMSICALLY

25   GOES AROUND THE SCREEN.  AND BEFORE ANYTHING IS WRITTEN IN THE

1    BOXES, IS IT RECORDING THEN, TOO?

2          MR. PELUSO:  THAT'S CERTAINLY OUR ALLEGATION, YOUR

3    HONOR, THAT, YES, THE SECOND SOMEONE IS GETTING ON THIS WEBSITE

4    AND STARTING INTERACTING WITH IT, IT'S RECORDING THE

5    KEYSTROKES, THE MOUSE MOVEMENTS, EVERYTHING THAT'S GOING ON ON

6    THAT PAGE.

7          THE COURT:  HANG ON.

8       IS THAT TRUE THAT'S HOW IT WORKS, IT RECORDS IT EVEN

9    BEFORE THE "SUBMIT" BUTTON.

10          MS. MAZZUCHETTI:  TO USE THE WORD "RECORD," THAT'S

11    PLAINTIFF'S WORD OF "RECORD."

12       BUT IT'S CAPTURING EVENTS, BUT IT'S CAPTURING THEM ON THE

13    WEBSITE OWNER'S WEBSITE.  IT DOESN'T -- IT'S NOT AN

14    INTERCEPTION IN TRANSIT.  IT IS JUST CAPTURING THE FACT THAT

15    THOSE EVENTS OCCURRED, YES.

16          THE COURT:  WELL, BUT BEFORE -- WHAT IF THE PERSON

17    DOESN'T HIT "SUBMIT"?  THEN THIS -- BUT IT STILL IS CAPTURED?

18          MS. MAZZUCHETTI:  IT WOULD NOT MAINTAIN THOSE EVENTS,

19    BUT IT HAS TO OBVIOUSLY CAPTURE THEM.  WHEN THEY HIT "SUBMIT,"

20    IT WILL THEN CREATE THE VERIFICATION RECORD THAT WOULD BE USED

21    FOR THE TCPA COMPLIANCE PURPOSES I MENTIONED EARLIER.

22          THE COURT:  OKAY.

23          MR. PELUSO:  I WOULD JUST POINT OUT, YOUR HONOR, THAT

24    THIS FACT PATTERN IS, I BELIEVE, COMPLETELY ANALOGOUS WITH THE

25    NINTH CIRCUIT OPINION IN JAVIER.  ACTIVEPROSPECT IS ONE OF THE

```
1        DEFENDANTS IN THAT CASE.

2            SO IT'S A VERY SIMILAR FACT PATTERN WHERE SOMEONE GOES TO

3    A WEBSITE, IS INTERACTING WITH THE WEBSITE.  THAT INTERACTION

4    IS, IS INTERCEPTED, RECORDED, CAPTURED, AND IT'S VERY SIMILAR,

5    THAT THERE WAS A WEBSITE OPERATOR THERE, AS WELL AS --

6            THE COURT:  JAVIER VERSUS WHO?

7            MR. PELUSO:  YOUR HONOR, IT'S JAVIER VERSUS ASSURANCE

8    IQ, LLC, AS WELL AS ACTIVEPROSPECT, INC.

9            SO ACTIVEPROSPECT WAS A DEFENDANT IN THAT CASE.

10           THE COURT:  WAS THAT IN YOUR BRIEF?

11           MR. PELUSO:  I BELIEVE SO, YOUR HONOR.

12       ALSO, I HAVE A COPY OF IT HERE, IF YOU'D LIKE.

13           THE COURT:  WOULD YOU HAND THAT UP, PLEASE?

14           MR. PELUSO:  (HANDING.)

15           THE COURT:  THANKS.

16       WHAT DO YOU SAY TO THE JAVIER CASE?

17           MS. MAZZUCHETTI:  WELL, YOUR HONOR, THE JAVIER CASE

18   WAS INITIALLY DECIDED BY JUDGE WHITE ON A MOTION TO DISMISS

19   WHERE THE "SUBMIT" BUTTON THAT OCCURRED AT THE VERY END OF THE

20   FLOW HAD A LINK TO THE POLICY, THE PRIVACY POLICY.  SO AFTER

21   THE ALLEGED RECORDING ALREADY BEGAN, AT THE END OF THE FLOW,

22   THERE WOULD BE A CLICK THAT AGREED TO THE PRIVACY POLICY.

23           JUDGE WHITE, ON THAT BASIS ALONE, DISMISSED THE CASE,

24   FINDING THAT THE PLAINTIFF HAD CONSENTED TO THE ALLEGED

25   RECORDING, IF THERE WAS ONE, OR THE ALLEGED WIRETAP.
```

1          THAT CASE WAS REMANDED AND IS NOW PRESENTLY BEFORE

2     JUDGE BREYER, AND ON FRIDAY, JUDGE BREYER IS GOING TO HEAR A

3     MOTION TO DISMISS AT THE PLEADING STAGE MOTION, AGAIN,

4     ADDRESSING THESE TYPES OF ARGUMENTS THAT WE'RE MAKING BEFORE

5     YOUR HONOR, BECAUSE THOSE WERE NOT ADDRESSED BY JUDGE WHITE OR

6     THE NINTH CIRCUIT, AND UPON REMAND, NOW THE COURT WILL ADDRESS

7     WHETHER INTERCEPTION -- INTERCEPTION IN TRANSIT WAS

8     SUFFICIENTLY ALLEGED, WHETHER THERE WAS IMPLIED CONSENT, AND A

9     VARIETY OF OTHER ARGUMENTS.

10          THE COURT:  SO JUDGE WHITE HAD SAID, IN JAVIER, THAT

11     THE -- THAT HITTING THE "SUBMIT" BUTTON WAS CONSENT?

12          MS. MAZZUCHETTI:  CORRECT.

13          THE COURT:  AND THEN THE NINTH CIRCUIT SAID, NO, IT'S

14     NOT CONSENT?

15          MS. MAZZUCHETTI:  WELL, THE NINTH CIRCUIT SAID THAT

16     THE CONSENT COULDN'T BE RETROACTIVE BECAUSE IF THE RECORDING AS

17     ALLEGED HAD STARTED, HAD BEGUN EARLIER, THAT THAT WOULDN'T BE

18     SUFFICIENT CONSENT.

19          AND THAT WAS THE ONLY HOLDING REACHED BY THE NINTH

20     CIRCUIT.

21          THE COURT:  ALL RIGHT.  AND BOTH JUDGE WHITE AND THE

22     NINTH CIRCUIT DID OR DID NOT REACH THE ISSUE OF WHETHER IT

23     CONSTITUTED WIRETAPPING AT ALL?

24          MS. MAZZUCHETTI:  DID NOT REACH IT, YOUR HONOR.

25          THE COURT:  IS THAT RIGHT?

1          MR. PELUSO:  THAT'S MY UNDERSTANDING, YOUR HONOR.

2          BUT TO SOME EXTENT IT SEEMS LIKE A THRESHOLD MATTER, TO ME

3     ANYWAY.  IF IT'S NOT WIRETAPPING IN THE FIRST PLACE, THAT'S AN

4     EASY WAY TO GET RID OF THE CASE.  YOU DON'T HAVE TO GET INTO

5     THE WEEDS OF WHETHER OR NOT THE CONSENT CAN BE RETROACTIVE

6     CONSENT.

7          THE COURT:  SOMETIMES THE JUDGE SEES THE EASIEST WAY

8     TO GET OUT OF THE WEEDS IS TO GO AGAIN, AND IT MUST BE THAT

9     JUDGE WHITE THOUGHT THE CONSENT ISSUE WAS THE EASIEST WAY.

10    SO -- HMM.

11         MR. PELUSO:  I WOULD JUST -- THAT'S ACCURATE IS THE

12    BOTTOM LINE.

13         I WOULD JUST SAY THAT THE ISSUE OF RETROACTIVE CONSENT NOT

14    BEING A VALID DEFENSE UNDER THE STATE STATUTE, THAT WAS THE

15    HEART OF JAVIER.

16         WHETHER IT WAS WIRETAPPING IN THE FIRST PLACE, TO ME

17    ANYWAY, THAT SEEMS LIKE A THRESHOLD ISSUE THAT THE CONSENT

18    DOESN'T MATTER IF IT WASN'T WIRETAPPING IN THE FIRST PLACE.

19         THE COURT:  ALL RIGHT.

20         I NEED TO MOVE TO THE OTHER MOTION, BUT LET ME GIVE EACH

21    OF YOU A CHANCE TO MAKE ONE OTHER POINT ON THIS ISSUE OF

22    WIRETAPPING.

23         YOU GET TO GO FIRST, PLEASE.

24         MS. MAZZUCHETTI:  THANK YOU, YOUR HONOR.

25         ONE OTHER POINT ON JAVIER.  THE FLOW HERE IS VERY

1    DIFFERENT THAN WHAT WAS PRESENTED IN JAVIER.  HERE THE PRIVACY

2    POLICY IS PRESENTED AT THE OUTSET BEFORE ANY ALLEGED RECORDING

3    BEGINS.

4         I WOULD ENCOURAGE THE COURT TO REVIEW JUDGE BEELER'S

5    DECISIONS IN NOOM, BLUE NILE, AND YALE V. CLICKTALE.  IN THOSE

6    INSTANCES, THE COURT FOUND, BECAUSE WE'RE DEALING WITH A

7    SERVICE PROVIDER WHO IS DOING WHATEVER DATA COLLECTION IS

8    OCCURRING FOR THE WEBSITE OWNER, THERE CAN'T POSSIBLY BE A

9    THIRD PARTY EAVESDROPPER THAT COULD SUPPORT A WIRETAP.

10        BUT EVEN AN EASIER WAY, THE EASIEST WAY OUT OF THE WEEDS

11   IN THIS CASE IS THERE'S NO INTERCEPTION IN TRANSIT ALLEGED.

12        THE NINTH CIRCUIT, IN KONOP VERSUS HAWAIIAN AIRLINES, HAD

13   RECOGNIZED THAT WHEN YOU'RE DEALING WITH INTERNET

14   COMMUNICATIONS, LIKE THE ONE AT ISSUE HERE, AS WELL AS EMAIL,

15   THERE IS SUCH A NARROW WINDOW WHERE THERE COULD EVER BE AN

16   INTERCEPTION IN TRANSIT THAT THE WIRETAP LAWS DON'T REALLY

17   APPLY TO THESE TYPES OF COMMUNICATIONS BECAUSE, BY DEFINITION,

18   NOTHING IS HAPPENING WITH AN INTERCEPTION IN TRANSIT.

19        THERE WAS A CASE DECIDED BY --

20          THE COURT:  WHAT DO YOU MEAN, INTERCEPTION IN

21   TRANSIT?

22          MS. MAZZUCHETTI:  IT HAD -- THE INTERCEPTION OF THE

23   COMMUNICATION -- THE CONTENT OF THE COMMUNICATION HAS TO OCCUR

24   IN BETWEEN THE LEAD -- THE TIME THE COMMUNICATION LEAVES

25   PLAINTIFF'S COMPUTER AND REACHES THE WEBSITE OWNER'S WEBSITE.

1          THAT IS NOT HOW ACTIVEPROSPECT'S TECHNOLOGY WORKS.

2     PLAINTIFFS DON'T ALLEGE THAT IT IS.  WE'VE ATTACHED THE PATENT

3     THAT DOESN'T SHOW ANY SORT OF INTERCEPTION IN TRANSIT FEATURE.

4          AND THE WORD "INTERCEPT" ONLY APPEARS ONE PLACE IN

5     PLAINTIFF'S COMPLAINT, AND THAT'S IN THE CLASS DEFINITION.

6          WHAT THEY COMPLAIN ABOUT IS A RECORDING, WHICH ISN'T

7     COVERED BY SECTION 631.

8          AND IF YOUR HONOR WERE TO TAKE A LOOK AT THE DECISION THAT

9     JUDGE STANTON -- JUDGE STATON ISSUED OUT OF THE CENTRAL

10    DISTRICT OF CALIFORNIA IN IN RE: VIZIO, AT THE PLEADING STAGE,

11    A WIRETAP CLAIM WAS DISMISSED BECAUSE THE PLAINTIFF HADN'T

12    SUFFICIENTLY ALLEGED INTERCEPTION IN TRANSIT.  THE PLAINTIFF

13    EVEN TRIED TO MAKE THE ALLEGATION THERE, BUT JUDGE STATON SAID

14    IT WASN'T SUFFICIENT BECAUSE THERE WEREN'T ENOUGH FACTUAL

15    ALLEGATIONS ABOUT THE TIMING OF THE PURPORTED INTERCEPTION.

16         AND THIS IS ALSO CONSISTENT WITH THE DECISION REACHED BY

17    JUDGE ORRICK OUT OF THE NORTHERN DISTRICT IN NOVELPOSTER VERSUS

18    JAVITCH, WHICH IS CITING THAT NINTH CIRCUIT CASE LAW AND

19    ACKNOWLEDGING THAT WIRETAP JUST DOESN'T FIT THESE INTERNET

20    COMMUNICATIONS BECAUSE YOU'RE NEVER GOING TO HAVE THAT

21    INTERCEPTION IN TRANSIT.  IT'S TYPICALLY, ALMOST ALWAYS, COMING

22    OUT OF STORAGE, WHICH TAKES IT OUT OF THE SCOPE OF A

23    WIRETAPPING CLAIM.

24         NOW, THIS WASN'T AN ISSUE THAT WAS REACHED BY JUDGE BEELER

25    IN THE DECISIONS I MENTIONED, BECAUSE IN THAT -- THE COURT HAD

1      FOUND IN THOSE CASES THAT IT'S NOT A THIRD PARTY EAVESDROPPER.

2          SO THERE ARE A VARIETY OF WAYS TO GET TO A DISMISSAL HERE

3      OF THE CIPA CLAIM, BUT I THINK IT'S VERY CLEAR THAT THIS TYPE

4      OF TECHNOLOGY -- WHICH, BY THE WAY, ISN'T IN THE BUSINESS OF

5      CREATING TCPA DEFENSE, IT'S CREATING LEGITIMACY FOR THE LEAVE

6      FORMS, CREATING THE RECORD -- THE TCPA REQUIRES A RECORD OF

7      CONSENT THAT'S GOING TO SAY, THIS IS WHAT A CONSUMER SAW.

8          WHETHER IT'S SUFFICIENT OR NOT IS NOT IN ACTIVEPROSPECT'S

9      BUSINESS.  IT'S JUST CAPTURING FOR A COMPLIANCE RECORD OF WHAT

10     A CONSUMER SAW AND WHAT THEY INTERACTED WITH.

11         AND WHATEVER THE ANSWER WILL BE UNDER THE TCPA, IT IS WHAT

12     IT IS.  BUT IT'S CERTAINLY NOT A BUSINESS THAT'S INTENDED TO,

13     YOU KNOW, HELP BREAK THE LAW.  IN FACT, IT'S SUPPOSED TO --

14     IT'S INTENDED TO SUPPORT CONSUMERS AND MAKE SURE THAT FOLKS WHO

15     ARE NOT WANTING TO RECEIVE THESE TYPES OF PHONE CALLS THAT

16     PLAINTIFF'S COUNSEL MENTIONED DON'T RECEIVE THEM.  IT'S TRYING

17     TO BRING LEGITIMACY, AS I SAID.

18         THE COURT:  ALL RIGHT.

19         WHAT DO YOU SAY TO THE INTERCEPTION IN TRANSIT POINT?

20         MR. PELUSO:  WHAT I SAY IS THAT AT THIS STAGE OF THE

21      CASE, OUR ALLEGATIONS HAVE TO BE TAKEN AS TRUE.

22         AND IT SEEMS TO -- IT SEEMS TO ME THAT THE ARGUMENT BOILS

23     DOWN TO A MAGIC WORD DEFENSE AT THIS POINT, THAT, YOU KNOW, WE

24     DON'T SPECIFICALLY SAY "INTERCEPT" ENOUGH FOR ACTIVEPROSPECT'S

25     LIKING.

1          I MEAN, IF YOU LOOK AT THE COMPLAINT, WE SAY THAT WILLIAMS

2     VISITED THIS WEBSITE.  DURING THAT VISIT, THE TRUSTEDFORM

3     REPLAY FUNCTION CREATED A VIDEO THAT CAPTURED WILLIAMS'S

4     KEYSTROKE AND CLICKS.  TRUSTEDFORM ALSO RECORDED WILLIAMS'S

5     NAME.

6          SO WHETHER WE SAY "CAPTURED" OR "RECORDED" OR

7     "INTERCEPTED," I DON'T SEE HOW THE ALLEGATIONS OF THE

8     COMPLAINT, YOU KNOW, WOULD FAIL --

9          THE COURT:  WELL, BUT THE ANALOGY -- I FIND THIS

10    PRETTY INTERESTING.  I THINK I'M RIGHT ABOUT THIS.  LET'S

11    SAY -- LET'S GO BACK TO THE ELIOT NESS DAYS, YOU KNOW.  DO YOU

12    KNOW WHO HE WAS, ELIOT NESS?  PROBABLY NOBODY KNOWS.

13          MR. PELUSO:  I'VE HEARD THE NAME.

14          THE COURT:  HE WAS THE -- HE WAS A FEDERAL AGENT BACK

15    IN THE AL CAPONE DAYS.  BUT THEY DID HAVE TELEPHONES THEN, AND

16    THEY DID HAVE THE ABILITY TO WIRETAP IN THOSE DAYS.

17          ALL RIGHT.  SO LET'S GO BACK TO THAT SIMPLER ERA THAT I

18    CAN UNDERSTAND.  AND SO AL CAPONE CALLS UP HIS FRIEND IN

19    DETROIT AND THE -- I'LL GIVE YOU TWO SCENARIOS.

20          SCENARIO NUMBER 1 IS THAT THE FRIEND IN DETROIT HAS GOT IT

21    ON SPEAKER PHONE -- THEY DIDN'T HAVE SPEAKER PHONES THEN -- BUT

22    THEY'VE GOT IT ON SPEAKER PHONE AND, UNBEKNOWNST TO

23    MR. DETROIT, THE GOVERNMENT HAD PUT AN EAVESDROPPING WIRE --

24    NOT A WIRETAP -- EAVESDROPPING MICROPHONE IN THE ROOM, AND SO

25    EVERYTHING IS RECORDED.

1          BUT IT'S NOT INTERCEPTED BECAUSE THE TELEPHONE LINE,

2     THE --

3               MR. PELUSO:  I THINK I UNDERSTAND.

4               THE COURT:  THE COMMUNICATION IS ACTUALLY AN

5     ELECTRICAL COMMUNICATION.  IT'S REACHING DETROIT AND THEN BEING

6     PUT OVER THE SPEAKER, AND THEN IT'S FROM THE SPEAKER THAT THE

7     RECORDING IS MADE.  SO I CAN SEE THAT THAT WOULD NOT BE A

8     WIRETAP.

9          ON THE OTHER HAND, IF THE -- IF THEY WENT DOWN TO THE

10    SERVICE BOX ON THE STREET OUTSIDE THE HOUSE OF THE GANGSTER AND

11    THEN THEY WIRED THEMSELVES INTO THAT SERVICE BOX, THAT WOULD BE

12    WIRETAPPING.

13         NOW, IN -- I THINK THIS ILLUSTRATES WHAT I'M GOING TO COME

14    TO, AND THAT IS IN OUR CASE, IN YOUR CASE, WHAT IS THE -- ARE

15    THE SIGNALS THAT ARE COMING FROM KEYSTROKES FROM THE POTENTIAL

16    CUSTOMER, ARE THEY BEING -- ARE THEY BEING CAPTURED WHILE

17    THEY'RE IN TRANSIT TO THE WEBSITE, OR THEY HIT THE WEBSITE

18    SERVER SOMEWHERE -- I DON'T KNOW WHERE IT WOULD BE -- AND THEN

19    THEY GET RECORDED?  HOW DOES IT WORK?

20              MR. PELUSO:  OUR UNDERSTANDING, YOUR HONOR, AND HOW

21    WE ALLEGED IS THAT THE KEYSTROKES AND THE MOUSE MOVEMENTS ARE

22    BEING CAPTURED, RECORDED, INTERCEPTED, WHATEVER WORD YOU WANT

23    TO USE, AT THE TIME THEY'RE BEING MADE.

24         SO IT IS MORE ANALOGOUS TO THE POINT WHERE SOMEONE IN

25    DETROIT IS OUT AT THE PHONE BOX TAPPING INTO THE LINE THAN IT

1    IS THAT THERE'S, YOU KNOW, A MICROPHONE IN AL CAPONE'S LIVING

2    ROOM.

3         I THINK THE OVERARCHING POINT HERE IS THAT THIS IS A

4    12(B)(6) MOTION AND OUR PLEADINGS HAVE TO BE ACCEPTED AS TRUE

5    AT THIS STAGE.

6         SO SOME OF THESE OTHER ISSUES THAT MAY BE SUMMARY JUDGMENT

7    ISSUES THAT NEED TO GET WORKED OUT THROUGH DISCOVERY ARE

8    RELEVANT POINTS, BUT I FEEL LIKE WE'RE WAY TOO PREMATURE AT

9    THIS POINT TO, YOU KNOW, BEFORE ANY DISCOVERY, TO BE SORT OF

10   TALKING ABOUT PRECISELY HOW THIS WORKS.

11        THE COURT:  OKAY.  LET ME ASK THE OTHER SIDE.

12        HOW DO YOU -- AND COUNSEL MAY BE RIGHT ABOUT BEING STUCK

13   WITH WHAT'S IN THE COMPLAINT, BUT HOW DOES IT WORK IN YOUR

14   VIEW?  HOW DOES IT ACTUALLY WORK?

15        MS. MAZZUCHETTI:  AS I UNDERSTAND IT, YOUR HONOR,

16   EVERYTHING COMES OUT OF STORAGE.  IT'S LIKE ANY OTHER INTERNET

17   COMMUNICATION.  IT'S NOTHING -- YOU KNOW, IT -- NOTHING IS --

18        THE COURT:  WHAT DID YOU MEAN, STORAGE?

19        MS. MAZZUCHETTI:  THERE'S NO INTERCEPTION IN TRANSIT.

20        THE COURT:  IT COMES OUT OF WHAT STORAGE?

21        MS. MAZZUCHETTI:  SO, FOR EXAMPLE, A LOT OF --

22   SOMETIMES THESE TYPES OF ISSUES COME UP IN THE CONTEXT OF

23   EMAIL, CAN AN EMAIL BE INTERCEPTED IN TRANSIT, AND THE ANSWER

24   IS ALMOST ALWAYS NO, BECAUSE EVEN IF YOU WERE TO BE CAPTURING

25   THE CONTENT OF THE EMAIL, YOU'RE EITHER GETTING IT ON THE

1    PERSON SENDING'S SIDE OR THE RECIPIENT'S SIDE.  EVEN IF YOU GET

2    IT -- EVEN IF YOU'RE ABLE TO INVADE THAT COMMUNICATION A

3    MILLISECOND LATER, IT HAPPENS SO QUICKLY, IT'S ALREADY ARRIVED.

4         AND HERE THE PLAINTIFF'S INTERACTION WITH THE WEBSITE,

5    IT'S ALREADY ARRIVED BY THE TIME ACTIVEPROSPECT'S GATHERING

6    THOSE DATA POINTS.

7         BUT I THINK MOST IMPORTANTLY HERE, PLAINTIFF IS STUCK WITH

8    THEIR COMPLAINT.  THEY DON'T ALLEGE IT.  THERE'S NOTHING

9    ALLEGED ABOUT AN INTERCEPTION IN TRANSIT.  AS I SAID, THEY

10   DON'T EVEN USE THE WORD "INTERCEPTION."  THEY USE THE WORD

11   "RECORDING" WHERE THERE'S ANOTHER -- THERE ARE OTHER PROVISIONS

12   OF THE STATUTORY SCHEME THAT RELATE TO RECORDING THAT I THINK

13   PLAINTIFF DIDN'T PLEAD BECAUSE THOSE ARE NOT APPLICABLE HERE.

14        BUT THIS PARTICULAR -- THIS PROVISION IS ABOUT

15   WIRETAPPING, AND THEY USE THE WORD "RECORDING."  RECORDING

16   ISN'T A WIRETAP.

17        THE COURT:  ALL RIGHT.  ALL RIGHT.  OKAY.  WE'VE GOT

18   TO MOVE ON.

19        SO LET'S GO TO THE ARBITRATION MOTION FOR A SECOND.

20        MS. MAZZUCHETTI:  THIS IS -- WE ARE -- WE FILED A

21   JOINDER TO THE ARBITRATION MOTION, BUT THIS IS MY

22   CO-DEFENDANT'S MOTION IN THE FIRST INSTANCE.

23        THE COURT:  ALL RIGHT.

24   OKAY.  THANK YOU.

25        MR. RAMSEY:  THANK YOU, YOUR HONOR.

1          THE COURT:  LET'S HEAR FROM ARBITRATION.

2          MR. RAMSEY:  SURE.  AND IF YOUR HONOR WOULDN'T MIND,

3     WHAT IF ALSO MOVED TO DISMISS, AND THERE'S SOME THINGS ABOUT

4     OUR WEBSITE THAT I'D LIKE TO CLARIFY AND MAKE A FEW POINTS.

5          THE COURT:  YOU CAN TAKE YOUR MASK OFF IF YOU WISH.

6          MR. RAMSEY:  I'M SORRY.

7          THE COURT:  THAT'LL ALLOW ME TO HEAR YOU A LITTLE

8     BETTER.

9          MR. RAMSEY:  NO PROBLEM.  I GET USED TO IT, RIGHT?

10        WHAT IF ALSO MOVED TO DISMISS ON SIMILAR GROUNDS, AND

11    THERE WERE SOME THINGS ABOUT THE WEBSITE THAT I'D LIKE TO

12    EXPLAIN.

13         THE COURT:  ARE THESE THINGS THAT ARE IN THE

14    COMPLAINT, OR IS THIS JUST YOUR SUMMARY JUDGMENT MATERIAL,

15    WHICH COULD CAUSE ME TO DENY YOUR MOTION, WHICH WILL MEAN

16    DISCOVERY?  SO DON'T GO OUTSIDE THE FOUR CORNERS OF THE

17    COMPLAINT.

18         MR. RAMSEY:  NO, NO, NO.  WE MOVED TO DISMISS ON

19    SIMILAR GROUNDS AS ACTIVEPROSPECT.

20         THE COURT:  BUT DID YOU MOVE OUTSIDE THE COMPLAINT?

21         MR. RAMSEY:  NO, NOT WITH RESPECT TO WHAT I'M TALKING

22    ABOUT.

23         THE COURT:  ALL RIGHT.  OKAY.  GO AHEAD AND MAKE YOUR

24    POINT.

25         MR. RAMSEY:  OKAY.  SO WHAT IF -- IT'S WHAT IF'S

1    WEBSITE.  THE FIRST THING THAT HAPPENS IS SOMEONE LANDS ON IT

2    IN ONE SCREEN.  THEY ENTER THEIR EMAIL ADDRESS, AND THEN THEY

3    ARE ASKED TO CLICK A BUTTON TO CONTINUE WITH THE REGISTRATION

4    PROCESS.

5         IT'S ON THAT PAGE, THAT VERY FIRST PAGE, THAT YOU GET THE

6    NOTICE OF ARBITRATION AND THE PRIVACY POLICY.  AND I'M GOING TO

7    COME BACK TO THAT.

8         THERE'S NO ALLEGATION THAT ON THAT FIRST PAGE THERE'S ANY

9    RECORDING OR INTERCEPTION GOING ON.

10        THE PERSON THEN CLICKS THE BUTTON TO REGISTER TO MOVE ON,

11   AND THEY GO THROUGH DIFFERENT STEPS OF THE WEBSITE.  IT'S LIKE

12   MAKING A PURCHASE ON AMAZON.  YOU CLICK -- YOU MIGHT ENTER YOUR

13   BILLING INFORMATION, YOUR SHIPPING ADDRESS, YOU CLICK THROUGH A

14   FEW SCREENS, AND THEN EVENTUALLY YOU GET TO THE LAST PAGE,

15   WHICH IS A SEPARATE PAGE FROM THE EARLIER SCREEN WITH THE

16   ARBITRATION PROVISION AND THE PRIVACY POLICY.

17        AND IT IS ON THAT SCREEN WHERE WE ASK FOR TCPA CONSENT,

18   AND IF THEY CHECK THE BOX THAT SAYS, "I CONSENT UNDER THE

19   TCPA," THEN WHAT IF MAY SELL THAT INFORMATION TO ONE OF ITS

20   CLIENTS FOR MARKETING PURPOSES.

21        UNDER THE TCPA, AS I THINK YOU RECOGNIZED, THERE'S AN

22   OBLIGATION, OBVIOUSLY, TO GET CONSENT, BUT ALSO TO KEEP RECORDS

23   OF THAT CONSENT AND TO MAKE SURE THAT THE CONSENT IS VALID.

24        WE GET CHALLENGES ALL THE TIME UNDER THE TCPA, "I DIDN'T

25   CONSENT."

1          SO NOW, WELL, HOW DO I GO ABOUT PROVING IT?

2          SO IF WHAT IF WERE ABLE TO WRITE ITS OWN CODE TO HAVE RUN

3    ON ITS OWN WEBSITE TO CAPTURE INFORMATION SHOWING THAT THAT

4    PERSON AT THIS TIME FROM THIS I.P. ADDRESS, ET CETERA, CHECKED

5    THE BOX ON THE TCPA CONSENT PAGE AND CLICKED "YES," IT WOULD

6    HAVE DONE SO.

7          INSTEAD, IT HIRES A THIRD PARTY SOFTWARE -- IT'S LIKE

8    GOING TO -- IN THE OLDEN DAYS, YOU WOULD GO TO TARGET MAYBE AND

9    GET MICROSOFT WORD AND JUST BUY THE SOFTWARE, IT INSTALLS IT ON

10   ITS WEBSITE, AND NOW A VENDOR, WHO'S ACTIVEPROSPECT --

11   "RECORDS" IN THE WRONG WORD IN MY OPINION -- BUT RECORDS THE

12   INFORMATION THAT THE WEBSITE, THE PERSON ON THE WEBSITE INPUTS

13   ON THAT PAGE.

14         I THINK THAT'S RELEVANT FOR A FEW REASONS.  NUMBER ONE,

15   WITH RESPECT TO CONSENT, THE CONSENT ARGUMENT WE'RE MAKING IS

16   THAT THE CONSENT HAPPENED ON PAGE 1 WHERE THE TERMS AND

17   CONDITIONS AND PRIVACY POLICY WAS.

18         THAT MAKES IT DIFFERENT THAN THE JAVIER CASE THAT YOU

19   TALKED ABOUT WHERE THE RECORDING STARTS ON PAGE 1 AND THEY

20   CLICK THROUGH TO PAGE 2, 3, 4, AND IT'S ONLY ON PAGE 4 WHERE

21   THEY GET TO CONSENT, AND THE BASIS OF THE NINTH CIRCUIT'S

22   RULING WAS, "WELL, NO, YOU CAN'T -- YOU RECORDED OVER HERE.

23   YOU CAN'T GO THROUGH THE WHOLE PROCESS AND GET CONSENT AND HAVE

24   THAT APPLY RETROACTIVELY."

25         SO THAT'S WHY JAVIER, IN OUR VIEW, IS COMPLETELY

1      IRRELEVANT AND DOESN'T GET TO OUR CONSENT ISSUE OR THE WIRETAP

2      ISSUE.  SO THAT'S ONE POINT I WANT TO MAKE.

3           ON THE WIRETAPPING ISSUE --

4              THE COURT:  WAIT A MINUTE.  I ASKED YOU TO TALK ABOUT

5      ARBITRATION.  YOU HAVEN'T TALKED ABOUT ARBITRATION, AND I -- I

6      TELL YOU, WE'VE BEEN GOING 45 MINUTES, I'M BRINGING THE HEARING

7      TO A CLOSE VERY SOON.

8              MR. RAMSEY:  SURE.

9              THE COURT:  SO IF YOU WANT TO SAY SOMETHING ABOUT

10     THAT ARBITRATION MOTION -- WE CAN'T GO OVER EVERYTHING ON THE

11     WIRETAPPING.  THERE'S JUST TOO MUCH.  THAT'S WHY WE HAVE

12     BRIEFS.

13             MR. RAMSEY:  I UNDERSTAND.  WE HAD ALSO MOVED TO

14     DISMISS.  I WILL SPEND ONE MORE MINUTE ON THIS AND THEN I'LL BE

15     DONE.

16          THERE'S TWO THINGS THAT I THINK THEY FAILED TO ALLEGE WITH

17     RESPECT TO WIRETAPPING.  ONE IS WHAT SHE SAID ABOUT

18     INTERCEPTION IN TRANSIT.  I THINK IT'S EXACTLY LIKE THE

19     MICROPHONE IN THE ROOM.  THE WAY WEBSITES WORK IS YOU CANNOT

20     RECORD ANYTHING UNTIL IT'S ALREADY COMMUNICATED TO THE WEBSITE.

21     SO THAT'S LIKE THE MICROPHONE IN THE ROOM.

22          THE SECOND PIECE IS WHEN YOU HIRE A, A VENDOR LIKE THIS TO

23     DO SOMETHING FOR YOU, THE CASES HOLD THAT THAT IS NOT

24     WIRETAPPING.  YOU'RE BASICALLY ONE AND THE SAME.  BECAUSE IF I

25     DID IT MYSELF, THERE WOULD NEVER BE ANY WIRETAPPING.  IT'S ONLY

1    BECAUSE WE HAVE A VENDOR COME IN AND WE INSTALL THAT VENDOR'S

2    SOFTWARE THAT THEY'RE ALLEGING WE HAVE WIRETAPPING, AND THE

3    ONLY WAY THEY GET OUT OF THAT IS IF THEY CAN ALLEGE, UNDER

4    RULE 11, THAT THE THIRD PARTY VENDOR THAT WE HIRED TO DO THIS

5    TAKES THE DATA AND USES IT FOR ITS OWN PURPOSES.

6         THAT'S WHAT HAPPENS IN FACEBOOK.  FACEBOOK GOES AROUND, IT

7    DOESN'T JUST PROVIDE SOME SERVICE FOR ANOTHER WEBSITE.  IT

8    TAKES ALL THE INFORMATION FOR ITS OWN PURPOSES AND THEN SELLS

9    IT.

10        NOTHING LIKE THAT HAPPENED HERE.  THERE'S NO ALLEGATION

11   ABOUT THAT.  FRANKLY, THEY COULD NEVER MAKE THAT ALLEGATION,

12   AND I THINK THEY KNOW THAT.

13        SO I'LL BE DONE.

14        THAT'S A REASON, TOO, TO DISMISS THE WIRETAPPING.

15        WITH RESPECT TO ARBITRATION, SO WE'RE BACK ON PAGE 1, AND

16   WE HAVE THE WEB PAGE, I THINK IT'S AT 27-1, PAGE 2, AND YOU

17   LAND ON THE PAGE.  COUNSEL MENTIONED A FEW TIMES THAT IT'S BARE

18   BONES AND A SIMPLE WEBSITE.  I WOULD AGREE.

19        THERE ARE STATEMENTS ABOUT, YOU KNOW, THIS -- YOU KNOW,

20   YOU MIGHT BE ABLE TO WIN A GIFT CARD, ET CETERA.

21        THEN THERE'S A GREY BOX THAT IS SEPARATE FROM THE ENTIRE

22   REST OF THE WEBSITE WHERE YOU ENTER YOUR EMAIL ADDRESS, AND

23   THEN RIGHT BELOW THAT THERE IS, "BY SIGNING UP, I AGREE TO THE

24   PRIVACY POLICY AND THE TERMS AND CONDITIONS," WHICH ARE BLUE

25   AND HYPERLINKED, AND THEN YOU CLICK THE BUTTON UNDERNEATH THEM.

```
 1              THE COURT:  WELL, BUT DOES THE -- DOES IT SAY

 2     ANYTHING ABOUT ARBITRATION THERE?  IT SAYS TERMS AND

 3     CONDITIONS, BUT DOES IT SPECIFICALLY CALL OUT ARBITRATION?

 4              MR. RAMSEY:  THE NOTICE -- NO, THE NOTICE ON THE

 5     LANDING PAGE DOES NOT USE THE WORD "ARBITRATION."  THE

 6     HYPERLINK TO THE TERMS AND CONDITIONS INCLUDE THE ARBITRATION.

 7              THE COURT:  WELL, IF YOU CLICK ON THE HYPERLINK,

 8     IT'LL TAKE YOU TO, WHAT, TERMS AND CONDITIONS?

 9              MR. RAMSEY:  CORRECT.

10              THE COURT:  AND SOMEWHERE IN THE TERMS AND THE

11     CONDITIONS, IS THE ARBITRATION REQUIRED?

12              MR. RAMSEY:  CORRECT.

13              THE COURT:  OKAY.  HOW FAR INTO THE TERMS AND

14     CONDITIONS DO YOU HAVE TO GO?

15              MR. RAMSEY:  YOU JUST SCROLL DOWN A LITTLE BIT.  I

16     CAN GET THAT INFORMATION FOR YOU.  IT'S NOT -- SORRY.  IT'S NOT

17     A LENGTHY TERMS AND CONDITIONS.

18              THE COURT:  ALL RIGHT.

19              MR. RAMSEY:  I MEAN, IT'S IN OUR BRIEFING.  IT'S IN

20     THE DECLARATION.

21              THE COURT:  LET ME HEAR FROM THE OTHER SIDE.

22          WHY ISN'T THAT ENFORCEABLE?

23              MR. PELUSO:  YOUR HONOR, AS WE SPELLED OUT IN THE

24     BRIEFING, WE THINK THIS IS VERY SIMILAR TO THE NINTH CIRCUIT

25     CASE OF BERMAN.  THERE'S ALSO A CASE OF NGUYEN VERSUS
```

1    BARNES & NOBLE THAT WE CITE.

2         VERY SIMILAR SITUATIONS WHERE PEOPLE ARE JUST NOT PUT ON

3    SUFFICIENT NOTICE.  THERE'S NO CLEAR MANIFESTATION OF ASSENT.

4    YOU KNOW, YOU'VE GOT A GIANT FLASHING BANNER AND THEN ANOTHER

5    GREEN, LARGE BUTTON, AND SOMEWHERE IN BETWEEN THERE, YOU KNOW,

6    IF YOU GET YOUR MAGNIFYING GLASS OUT, MAYBE YOU CAN MAKE OUT

7    EXACTLY WHAT IT SAYS.

8         BUT THE -- THE LANGUAGE IS JUST SO SMALL --

9              THE COURT:  WAIT.  IN THE VERY FIRST SCREEN, WITH THE

10   HYPERLINK, DOES IT CALL OUT ARBITRATION?

11             MR. PELUSO:  NO, YOUR HONOR.  AND THAT'S --

12             THE COURT:  NOW, THAT -- THAT LEADS TO MY NEXT

13   QUESTION.  THE LAST TIME I HAD ONE OF THESE ISSUES WAS A FEW

14   MONTHS BACK, MAYBE A YEAR AGO, AND THERE IS SOME LAW IN THE

15   NINTH CIRCUIT NOW, THE COURT OF APPEALS, THAT ADDRESSES THE

16   EXTENT TO WHICH THE OPENING PAGE HAS TO CALL OUT ARBITRATION.

17        I'VE FORGOTTEN WHAT THE ANSWER TO THAT IS.  BUT DO YOU

18   KNOW WHAT LAW I'M TALKING ABOUT?

19             MR. PELUSO:  I THINK YOUR HONOR MAY BE REFERRING TO

20   THE BERMAN CASE.

21             THE COURT:  I DON'T KNOW.  WHAT DID IT HOLD?

22             MR. PELUSO:  TO THE EXTENT -- SO THE BERMAN CASE SORT

23   OF PAINSTAKINGLY GOES THROUGH THIS EXACT SORT OF ISSUE ABOUT

24   HOW OBVIOUS THE TERMS AND CONDITIONS NEED TO BE IN ORDER FOR IT

25   TO BE A VALID MANIFESTATION OF ASSENT.

1    HERE THERE'S NO "I AGREE" BUTTON.  THERE'S NOTHING THAT

2    DRAWS THE VIEWER'S, THE WEBSITE VISITOR'S ATTENTION TO THE FACT

3    THAT THERE'S ARBITRATION.  EVEN THE BUTTON THAT YOU CLICK TO

4    KEEP GOING DOESN'T SAY "I AGREE" OR SOMETHING IN THIS CASE.  IT

5    JUST SAYS "SEARCH FOR YOUR CASH."

6         THE COURT:  WHAT DOES THE -- WHAT DOES THE BUTTON

7    SAY?

8         MR. PELUSO:  IT SAYS "SEARCH FOR YOUR CASH."

9         THE COURT:  SEARCH FOR YOUR WHAT?

10        MR. PELUSO:  CASH.

11        THE COURT:  LIKE MONEY?

12        MR. PELUSO:  LIKE MONEY, CASH.

13   YOU ENTER YOUR INFORMATION, THEN THERE'S VERY FINE PRINT

14   WHICH, I GUESS, SAYS, YOU KNOW, THAT YOU'RE -- BY USING THIS

15   WEBSITE, YOU'RE AGREEING TO THE TERMS OF USE, AND UNDER THAT IS

16   A BIG GREEN BUTTON THAT SAYS "SEARCH FOR YOUR CASH."

17   AND THE DEFENDANT IS ARGUING THAT BY CLICKING "SEARCH FOR

18   YOUR CASH," YOU ARE AGREEING TO ARBITRATE THIS CLAIM.

19        THE COURT:  IF YOU DO GO TO THE HYPERLINK, HOW MANY

20   PAGES OR SCREENS WORTH OF PRINT IS THERE?

21        MR. PELUSO:  I DON'T WANT TO TALK OUT OF HAND, YOUR

22   HONOR.  I'M NOT SURE.  I HAVEN'T PRINTED IT OUT.

23        THE COURT:  ALL RIGHT.  SO A DIFFERENT QUESTION THEN.

24   WHERE -- IS IT TRUE THAT THERE'S A SEPARATE THING AT THE END

25   WHERE YOU CONSENT TO THE TCPA?

1          MR. PELUSO:  SO I -- I WANTED TO GET TO THAT POINT.

2          SO WE HAVE NO REASON TO DISPUTE THAT WHAT WHAT IF IS

3     SAYING ON THAT POINT IS TRUE, THAT THE RECORDING DOES NOT START

4     UNTIL YOU GET TO THE ACTUAL TCPA CONSENT LANGUAGE PAGE.

5          BUT BY THE VERY TERMS OF ITS OWN AGREEMENT, ITS OWN TERMS

6     OF USE THAT IT'S TRYING TO SAY ARE APPLICABLE HERE, THE TERMS

7     SAY, "WHERE YOU PROVIDE PRIOR EXPRESS CONSENT WITHIN THE

8     MEANING OF THE TELEPHONE CONSUMER PROTECTION ACT, YOU

9     UNDERSTAND AND AGREE THAT WE MAY USE A THIRD PARTY VENDOR TO

10    RECORD AND STORE YOUR REGISTRATION AND CONSENT FOR COMPLIANCE

11    PURPOSES."

12         SO BY THE VERY DEFINITION OF ITS OWN TERMS, THE TWO

13    CONSENTS ARE LINKED, THE TCPA CONSENT THAT YOU'RE SUPPOSEDLY

14    PROVIDING BY GOING TO THIS WEBSITE, AND ALSO THE SUPPOSED

15    CONSENT TO BE RECORDED.

16         BUT YOU'RE NOT AGREEING TO BE BOUND BY THAT CONSENT

17    PROVISION UNTIL YOU CLICK ALL THE WAY THROUGH, BY WHICH POINT

18    THEY'VE ALREADY BEEN RECORDING, CAPTURING, INTERCEPTING YOUR

19    INTERACTION ON THE WEBSITE.

20         SO IN THAT RESPECT, IT'S EXACTLY LIKE JAVIER WHERE THEY'RE

21    TRYING TO GET RETROACTIVE CONSENT.  THEIR OWN TERMS ONLY APPLY

22    WHERE YOU PROVIDE PRIOR EXPRESS CONSENT UNDER THE TCPA.  THAT

23    IS WHAT TRIGGERS IT.  THEY'VE ALREADY BEEN RECORDING SINCE YOU

24    GET TO THAT VERY LANDING PAGE.

25              THE COURT:  DO THEY RECORD -- HOW MANY PAGES ARE

1    THERE ALTOGETHER?

2              MR. PELUSO:  I DON'T KNOW, YOUR HONOR.  I DON'T HAVE

3    IT PRINTED OUT AND I DON'T WANT TO --

4              THE COURT:  WELL, IS IT, LIKE, A HUNDRED?  LIKE,

5    THREE?  LIKE, A THOUSAND?

6              MR. PELUSO:  I DON'T THINK IT'S --

7              MR. RAMSEY:  IT'S LIKE THREE OR FOUR.

8              THE COURT:  ALL RIGHT.  SO ARE YOU SAYING THE

9    RECORDING STARTS ON PAGE 1?

10             MR. PELUSO:  THE RECORDING STARTS WHEN SOMEONE GETS

11   TO THE TCPA LANDING PAGE, RIGHT?  SO THEN YOU START ENTERING

12   YOUR INFORMATION ON THAT PAGE.

13        YOU THEN CLICK, YOU KNOW, "SEARCH FOR YOUR CASH" OR

14   WHATEVER AND OFF YOU GO.

15        THEY'RE SAYING THAT YOU CONSENT TO BE RECORDED BY CLICKING

16   THE "SEARCH FOR YOUR CASH" BUTTON AND AGREEING TO THE TERMS OF

17   USE.

18        BUT THEY'VE ALREADY BEEN RECORDING YOU ONCE YOU GET TO

19   THAT PAGE.  IT'S -- THE POINT IS THAT THEY LINK THE TWO TYPES

20   OF CONSENT.

21             THE COURT:  WELL, THE --

22             MR. PELUSO:  SO THEY ONLY CONSENT TO BE RECORDED ON

23   THE WEBSITE WHERE YOU AGREE TO BE CALLED FOR TCPA PURPOSES.

24             THE COURT:  WAIT, WAIT.  OKAY.  LET'S JUST SAY THERE

25   ARE FOUR PAGES.

```
1              MR. PELUSO:  RIGHT.

2              THE COURT:  AND -- BECAUSE I WANT TO UNDERSTAND YOUR

3       POINT BECAUSE I'M GETTING TWO DIFFERENT MESSAGES HERE.

4           SO ON THE FIRST PAGE, THERE IS A BOX THAT YOU SAY HAS FINE

5       PRINT THAT SAYS YOU AGREE -- "BY CLICKING BELOW, YOU AGREE TO

6       BE BOUND BY OUR TERMS AND CONDITIONS," AND THERE'S ONLY A BOX

7       THAT SAYS, WHAT, "SEARCH FOR MONEY," "SEARCH FOR CASH"?

8              MR. PELUSO:  CORRECT.

9              THE COURT:  ALL RIGHT.  THIS IS ON PAGE 1.  SO FAR AM

10      I RIGHT?  IS THAT WHAT YOU'RE TELLING ME?

11             MR. PELUSO:  YES, YOUR HONOR.  I THINK --

12             THE COURT:  WELL, WAIT.  WAIT.  OKAY.  IF THAT'S THE

13      ANSWER, OKAY.

14          AND THEN IF YOU DID CLICK AND WENT THROUGH TO THE LINK,

15      WHAT DOES IT SAY ABOUT TCPA IN THE TERMS AND CONDITIONS?

16             MR. PELUSO:  SO IT'S ONE AND THE SAME.  SO THE

17      PRIVACY POLICY AND THE TERMS AND CONDITIONS THAT ARE LINKED IN

18      THAT FINE PRINT BEFORE YOU SAY, YOU KNOW, "SEARCH FOR YOUR

19      CASH," RIGHT, IF YOU WOULD CLICK ON THE PRIVACY POLICY, THAT

20      PRIVACY POLICY SAYS, "WHERE YOU PROVIDE PRIOR EXPRESS CONSENT

21      WITHIN THE MEANING OF THE TELEPHONE CONSUMER PROTECTION ACT,

22      YOU UNDERSTAND AND AGREE THAT WE MAY USE A THIRD PARTY VENDOR

23      TO RECORD AND STORE YOUR REGISTRATION AND CONSENT FOR

24      COMPLIANCE PURPOSES."

25          SO MY POINT IS SIMPLY THAT THE TCPA CONSENT AND THE
```

1    CONSENT TO BE RECORDED ARE LINKED.

2            THE COURT:  BUT ON THAT FIRST PAGE, IS THE COMPANY --

3    IS ANYBODY RECORDING YOUR MOUSE MOVEMENTS ON PAGE 1?

4            MR. PELUSO:  WE ALLEGE -- AND I DON'T THINK THE

5    DEFENDANTS DISPUTE -- THAT THE KEYSTROKES AND THE MOUSE

6    MOVEMENTS ARE BEING TRACKED ON THE TCPA CONSENT PAGE.  IT'S

7    REALLY THE SAME PAGE THAT'S TRIGGERING BOTH THINGS, WHETHER

8    IT'S PAGE 1 OR PAGE 4.  I DON'T THINK IT'S REALLY IN ANY

9    DISPUTE THAT THE -- THAT THE PAGE THAT'S AT ISSUE HERE IS THE

10   PAGE THAT HAS THE INFORMATION YOU TYPE IN, THEN THE FINE PRINT

11   WITH THE HYPERLINKS TO THE PRIVACY POLICY AND THE TERMS, AND

12   THEN THE GREEN BUTTON THAT SAYS "SEARCH FOR YOUR CASH."

13           SO WHETHER THERE ARE PAGES BEFORE THAT, I DON'T KNOW AND

14   IT'S NOT REALLY AT ISSUE IN THIS CASE.

15           THE RECORDING HAPPENS ON THAT PAGE WHERE THERE'S THE TERMS

16   OF USE AND THE PRIVACY POLICY.

17           IN THAT PRIVACY POLICY, THEY CLAIM THAT THEY HAVE CONSENT

18   TO DO THE RECORDING.

19           BUT THE -- THE CONSENT IS LINKED TO THE TCPA CONSENT.  SO

20   YOU WOULD HAVE TO GO ALL THE WAY THROUGH AND AGREE TO BE CALLED

21   FOR TCPA PURPOSES BEFORE THEIR CONSENT TO BE RECORDED IS

22   TRIGGERED BY THE VERY TERMS OF THEIR OWN AGREEMENT.

23           THE COURT:  ALL RIGHT.

24           MR. PELUSO:  AND BY THAT POINT THEY'VE ALREADY BEEN

25   RECORDING.

1          THE COURT:  ON THE LAST PAGE WHERE THERE'S -- WHAT

2     DOES IT SAY ON THE SCREEN ABOUT CONSENT?

3          MR. PELUSO:  SO I DON'T THINK IT SAYS ANYTHING ON THE

4     SCREEN ABOUT CONSENT.  I THINK YOU WOULD HAVE TO CLICK ON

5     EITHER THE TERMS OF USE OR THE PRIVACY POLICY LINK IN ORDER TO

6     READ ANYTHING ABOUT THE CONSENT THAT THEY'RE TRYING TO ENFORCE.

7          THE COURT:  WELL, WHAT -- I THOUGHT COUNSEL TOLD

8     ME -- I'LL COME BACK TO COUNSEL, BUT I THOUGHT HE TOLD ME THAT

9     THE REASON THAT JAVIER WAS DIFFERENT WAS THAT THE RECORDING

10    DIDN'T EVEN START UNTIL THE LAST PAGE, AND THAT ON THE LAST

11    PAGE, THAT'S WHERE THE CONSENT WAS.

12         AND I -- THAT'S WHAT I THOUGHT HE WAS SAYING.

13         MR. PELUSO:  AND I'M NOT REFUTING THAT.

14    ALL I'M SAYING IS EVEN IF YOU WERE TO FIND THAT SOMEHOW

15    GOING TO THIS WEBSITE, THE WAY THE WEBSITE IS LAID OUT IS

16    SUFFICIENT TO MANIFEST ASSENT TO THE TERMS OF USE AND THE

17    PRIVACY POLICY -- WE DON'T THINK THAT THAT'S TRUE, BUT EVEN IF

18    YOU DO THAT, THE VERY TERMS OF THE PRIVACY POLICY LINK THE

19    CONSENT TO BE RECORDED ON THE WEBSITE WITH THE TCPA CONSENT.

20         SO BY THEIR OWN WORDS, YOU CAN'T PROVIDE CONSENT TO BE

21    RECORDED UNTIL YOU'VE ALREADY PROVIDED THE TCPA CONSENT.

22         SO THEY'VE -- THEY'RE RECORDING YOU BEFORE YOU GET TO THE

23    POINT WHERE YOU GET ALL THE WAY TO THE TCPA PAGE AND CLICK

24    "AGREE" OR, YOU KNOW, WHATEVER, CLICK THE BUTTON AND MOVE ON.

25         THE COURT:  ALL RIGHT.

```
 1              IS THAT TRUE?
 2              MR. RAMSEY:  OKAY.  SO PAGE 1 IS "I AGREE TO THE
 3    TERMS AND CONDITIONS AND PRIVACY POLICY."
 4              THE COURT:  YEAH.
 5              MR. RAMSEY:  IN THE PRIVACY POLICY IS WHERE THE
 6    CONSENT LANGUAGE IS, AND OTHER LANGUAGE.  I'LL COME BACK TO
 7    THAT.
 8              THE COURT:  CONSENT TO WHAT THOUGH?
 9              MR. RAMSEY:  CONSENT TO RECORDING.  I'LL COME BACK TO
10    THE SPECIFIC LANGUAGE.
11         THEN THERE'S PAGE 2, PAGE 3, PAGE 4 IS THE TCPA PAGE.
12    THAT'S THE ONLY PAGE WHERE THEY ALLEGE RECORDING HAPPENS, AFTER
13    WE SAY YOU'VE GIVEN CONSENT, AND THAT'S WHERE THE RECORDING
14    HAPPENS.
15              THE COURT:  BUT ON PAGE 1, 2, AND 3, THERE'S NO
16    RECORDING?
17              MR. RAMSEY:  CORRECT.
18              THE COURT:  BUT IF YOU GET TO PAGE 4, IS IT RECORDED
19    BEFORE THEY CLICK ON CONSENT?  OR AT THE MOMENT THEY CLICK ON
20    CONSENT IT STARTS -- IT CAPTURES WHAT'S ON THAT PAGE?
21              MR. RAMSEY:  IT CAPTURES ONCE YOU LAND ON PAGE 4.
22         BUT WE'VE GOTTEN CONSENT ON SCREEN 1 TO RECORD YOU, AND
23    THIS IS WHERE HE GETS IT.  IN THE PRIVACY POLICY, IT SAYS,
24    "WHERE YOU PROVIDE PRIOR EXPRESS CONSENT IN THE TCPA, YOU
25    UNDERSTAND AND AGREE THAT WE MAY USE A THIRD PARTY VENDOR TO
```

1    RECORD AND STORE YOUR REGISTRATION AND CONSENT FOR COMPLIANCE

2    PURPOSES."

3         HE'S READING THAT TO SAY ONLY IF YOU PROVIDE CONSENT MAY

4    WE RECORD YOU, AS OPPOSED TO WHERE, MEANING THE PAGE WHERE YOU

5    DO THIS, WE'RE RECORDING IT.

6         THERE ARE ALSO SEVERAL OTHER PROVISIONS IN THE PRIVACY

7    POLICY THAT DESCRIBE WHAT'S GOING ON AND TALK ABOUT THE

8    WEBSITE'S ABILITY TO USE VENDORS TO COLLECT INFORMATION, ET

9    CETERA.

10        AND IN THIS PARTICULAR CASE, IN MY VIEW, THE WAY THAT

11   PROVISION READS, IT MEANS I GET TO RECORD YOU ON THE PAGE WHERE

12   YOU WOULD PROVIDE YOUR CONSENT.  THAT'S EVIDENT, I THINK, FROM

13   THE LANGUAGE.

14        IT IS ALSO EVIDENT FROM THE VERY FACT THAT YOU'RE GIVING

15   CONSENT TO RECORD YOUR -- I MEAN, YOU'RE RECORDING IT.  IT'S

16   HAPPENING WHILE IT HAPPENS.

17             THE COURT:  ALL RIGHT.

18        ON THE SUBSTANCE OF THE ARBITRATION PROVISION, IS THERE

19   ANYTHING THAT YOU THINK IS UNFAIR, LIKE, FOR EXAMPLE, THE

20   CONSUMER HAS TO PAY FEES OF THE ARBITRATOR?  OR IS THERE

21   ANYTHING LIKE THAT?

22             MR. PELUSO:  WE'RE NOT MAKING ANY UNCONSCIONABILITY

23   ARGUMENTS, YOUR HONOR.  OUR POINT IS SIMPLY THAT THERE'S NOT

24   ENOUGH HERE TO FORM A VALID CONTRACT.

25             THE COURT:  ALL RIGHT.

1          MR. PELUSO:  THERE'S JUST NOTHING THERE.

2          THE COURT:  ALL RIGHT.

3          MR. PELUSO:  SO FOR THE SAME REASON -- JUST VERY

4    BRIEFLY, FOR THE SAME REASON THAT WE BELIEVE THE ARBITRATION

5    AGREEMENT FAILS IS THE EXACT SAME REASON THAT WE BELIEVE THE

6    CONSENT ARGUMENT FAILS.  THEY FAIL IN THE SAME WAY.  THEY'RE

7    CONTAINED IN THE SAME TERMS.

8        SO TO THE EXTENT YOUR HONOR FINDS THAT THERE'S NO

9    AGREEMENT TO ARBITRATE, THIS CONSENT ARGUMENT WOULD ALSO --

10          THE COURT:  LET'S SAY -- I DON'T KNOW IF THIS IS TRUE

11    BECAUSE I HAVEN'T LOOKED AT THIS FORM YET, THIS PAGE YET -- BUT

12    LET'S SAY THERE WAS A FLASHING BOX THAT HAD DOLLAR SIGNS ON IT

13    AND IT SAID, "GET YOUR CASH NOW."  AND THEN IT SAYS IN TINY

14    PRINT, IT SAID, "BUT IF YOU DO, YOU ARE AGREEING TO ALL THESE

15    THINGS."  SO YOU'RE SAYING THAT THAT'S TOO UNFAIR, THAT'S NOT

16    ENOUGH NOTICE?

17          MR. PELUSO:  CORRECT.  AND I WOULD SAY THAT IT'S EVEN

18    WORSE THAN THE SCENARIO YOUR HONOR JUST DESCRIBED BECAUSE

19    THERE'S NOTHING THAT ACTUALLY -- NOTHING IN THE SMALL TEXT THAT

20    WOULD PROVIDE SOMEONE NOTICE THAT, "HEY, THERE'S AN ARBITRATION

21    AGREEMENT IN HERE, YOU BETTER READ IT BEFORE YOU GO ON."

22          THE COURT:  OKAY.

23          MR. PELUSO:  A LOT OF WEBSITES THAT YOU GO TO,

24    THERE'S CHECK BOXES WHERE YOU HAVE TO AFFIRMATIVELY SAY, "I

25    AGREE TO THIS."  SOME WEBSITES REQUIRE YOU TO ACTUALLY OPEN UP

```
1        THE TERMS OF USE BEFORE YOU CAN PROCEED.

2            NONE OF THAT IS THIS CASE.  THIS CASE IS THERE'S, THERE'S

3    TINY PRINT SAYING THAT, YOU KNOW, "BY USING THIS WEBSITE, YOU

4    AGREE TO THE TERMS OF USE AND THE PRIVACY POLICY."  YOU DON'T

5    HAVE TO CLICK THE LINKS TO PROCEED.  THERE'S NO CHECK BOX.  THE

6    BUTTON DOESN'T EVEN SAY "I AGREE."  THE BUTTON SAYS "SEARCH FOR

7    YOUR CASH."

8            AND SOMEHOW THAT MEANS I AGREE TO ARBITRATE THIS CASE.

9            THE COURT:  OKAY MY FRIENDS.  I'M GOING TO BRING YOU

10   TO A CLOSE, BUT I'LL LET EACH OF YOU SAY ONE MINUTE MORE IF

11   THERE'S ANYTHING YOU'RE DYING TO SAY.

12           LET'S HEAR FROM WHAT IF.

13           MR. RAMSEY:  JUST BRIEFLY ON THE ARBITRATION PAGE.

14       THE LAW I THINK THAT YOUR HONOR IS CITING IS FROM THE

15   NGUYEN AND BERMAN CASES.

16           THE COURT:  OKAY.

17           MR. RAMSEY:  I WAS THE LOSING ATTORNEY IN THE BERMAN

18   CASE.  I CAN TELL YOU, SITTING HERE --

19           THE COURT:  SO YOU'RE AN EXPERT.

20           MR. RAMSEY:  -- THAT THIS CASE IS VERY DIFFERENT FROM

21   THE CASES THAT THE BERMAN COURT ADDRESSED.  THE HYPERLINKS ARE

22   BLUE, UNLIKE THE BERMAN CASE.

23       THERE'S ALSO LANGUAGE THAT SAYS, "BY SIGNING UP, YOU AGREE

24   TO," WHICH WAS ABSENT FROM THE BERMAN CASE.

25           AND THE WEBSITE HERE IS MUCH SIMPLER OVERALL.  THERE'S A
```

1   HANDFUL OF LINES OF TEXT, THEN THERE'S A BOX WHICH IS WHERE YOU

2   ARE TO ENTER INFORMATION, AND WITHIN THAT BOX IS WHERE THE KEY

3   LANGUAGE IS PROVIDING NOTICE.

4            THE COURT:  OKAY.

5       YOUR TURN.  YOU GET ONE LAST WORD.

6            MR. PELUSO:  OKAY, YOUR HONOR.

7       I DON'T WANT TO GO OVER OLD GROUND, BUT I WOULD SIMPLY SAY

8   THAT WE DON'T BELIEVE THAT THE LAYOUT OF THIS WEBSITE, UNDER

9   NINTH CIRCUIT PRECEDENT, IS ENOUGH TO MANIFEST ASSENT TO AGREE

10  TO ARBITRATE THIS CASE.  FOR THAT SAME REASON, IT -- THE TERMS

11  OF USE ARE NOT APPLICABLE FOR CONSENT PURPOSES.

12      TO THE EXTENT YOUR HONOR IS CONCERNED THAT WE DIDN'T USE

13  MAGIC LANGUAGE RELATED TO THE WORD "INTERCEPT," THAT CAN BE

14  EASILY CURED WITH AN AMENDMENT.

15           THE COURT:  OKAY.  WE'VE BEEN GOING A LITTLE BIT MORE

16  THAN AN HOUR.  I'M GOING TO BRING IT TO A CLOSE.

17      THANK YOU, COUNSEL.  IT'S UNDER SUBMISSION.

18           MR. RAMSEY:  THANK YOU, YOUR HONOR.

19           MR. PELUSO:  THANK YOU, YOUR HONOR.

20           THE COURT:  ALL RIGHT.

21      (THE PROCEEDINGS WERE CONCLUDED AT 12:04 P.M.)

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  MAY 8, 2023

19

20

21

22

23

24

25